**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

```
------------------------------------------------------- x
                                                        :
In re:                                                  :   Chapter 11
                                                        :
PINE GATE RENEWABLES, LLC, et al.,                      :   Case No. 25-90669 (CML)
                                                        :
                 Debtors.¹                              :   (Jointly Administered)
                                                        :
------------------------------------------------------- x
```

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER
AUTHORIZING THE RETENTION AND EMPLOYMENT OF
LAZARD FRÈRES & CO. LLC AS INVESTMENT BANKER TO THE DEBTORS
<u>AND DEBTORS IN POSSESSION, EFFECTIVE AS OF THE PETITION DATE</u>**

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

The above-captioned debtors in possession (collectively, the "**Debtors**") respectfully state as follows in support of this application (this "**Application**"):

<u>**RELIEF REQUESTED**</u>

1. By this Application, the Debtors seek entry of an order, substantially in the form attached hereto as (the "**Proposed Order**"), authorizing the Debtors to retain and employ Lazard Frères & Co. LLC ("**Lazard**" or the "**Firm**") as the investment banker to the Debtors, effective as of November 6, 2025 (the "**Petition Date**"), in accordance with the terms and conditions set forth in

---

¹ A complete list of the Debtors in these chapter 11 cases (the "**Chapter 11 Cases**") and the last four digits of each Debtor's taxpayer identification number (if applicable) may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/PGR. The Debtors' mailing address for the purposes of the Chapter 11 Cases is 130 Roberts Street, Asheville, North Carolina 28801.

that certain (i) engagement letter dated as of August 1, 2025 (as amended, supplemented, and modified, from time to time, the "***Engagement Letter***");[2] and (ii) indemnification letter dated August 27, 2021 (the "***Indemnification Letter***").[3]   Copies of the Engagement Letter and Indemnification Letter are annexed to the Proposed Order as **Exhibit 1** and **Exhibit 2**, respectively, and incorporated herein by reference.

2.       In support of this Application, the Debtors rely upon and incorporate by reference the *Declaration of Tyler Cowan in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Lazard Freres & Co., LLC as Investment Banker to the Debtors and Debtors in Possession, Effective as of the Petition Date*, attached hereto as **Exhibit A** (the "***Cowan Declaration***").

## JURISDICTION AND VENUE

3.       The United States Bankruptcy Court for the Southern District of Texas (the "***Court***") has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334 and the *Order of Reference to Bankruptcy Judges* from the United States District Court for the Southern District of Texas, entered May 24, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  The Debtors confirm their consent to the Court's entry of a final order in connection with this Application to the extent that it is later determined that the Court, absent consent of the

---

[2]     The Engagement Letter between Lazard, Latham & Watkins LLP ("***Latham***"), and PGR HoldCo GP, LLC and each of its controlled and managed subsidiaries (collectively, the "***Company***") amends and restates the prior agreement between Lazard and the Debtors and its affiliates and subsidiaries dated as of June 23, 2025 (the "***Original Engagement Letter***").

[3]     The Debtors and its affiliates and subsidiaries also previously engaged Lazard on August 27, 2021 in connection with a possible financing or sale transaction (the "Prior Engagement Letter") and included the Indemnification Letter therein. Upon execution of the Original Engagement Letter, all prior engagements between the Debtors and Lazard, including the Prior Engagement Letter, terminated and the Indemnification Letter survived such termination.

parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The bases for the relief requested herein are sections 327(a), 328(a), 330, 331 and 1107 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "***Bankruptcy Code***"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), Rules 1075-1, 2014-1 and 2016-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "***Bankruptcy Local Rules***"), and the Procedures for Complex Cases in the Southern District of Texas (the "***Complex Case Procedures***").

## BACKGROUND

6.      On November 6, 2025 (the "***Petition Date***"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Cases.  On November 19, 2025, the Office of the United States Trustee appointed an official committee of unsecured creditors.  *See* Docket No. 225.

7.      The factual background regarding the Debtors, including their business, their capital structure, and the events leading to the commencement of the Chapter 11 Cases is set forth in the *Declaration of Ray Shem, President and Chief Financial Officer of the Debtors, in Support of Chapter 11 Petitions and First-Day Relief* [Docket No. 19] (the "***First Day Declaration***").[4]

---

[4]     The First Day Declaration and other relevant case information is available on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/PGR.

8.     The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1.

### Lazard's Qualifications

9.     The Debtors require a qualified, experienced investment banker that has knowledge of the Debtors' industry and business as well as experience navigating the chapter 11 process to advise the Debtors with respect to their restructuring and the Chapter 11 Cases.  The Debtors' retained Lazard to serve as the Debtors' investment banker to provide investment banking services in connection with a Sale Transaction, Financing, Amendment, and/or Restructuring (each as defined in the Engagement Letter), in each case pursuant to the terms and conditions of the Engagement Letter.

10.    As set forth in the Cowan Declaration, Lazard and its senior professionals have extensive experience in the reorganization and restructuring of troubled companies, both out-of-court and in chapter 11 cases.  Lazard has been advising clients around the world for more than 175 years.  Lazard is registered as a broker-dealer with the United States Securities and Exchange Commission and the Financial Industry Regulatory Authority, and, since 1990, has advised debtors, creditors, equity constituencies, and government agencies in over 500 restructurings, representing over $1 trillion in debtor assets.  Lazard has dedicated professionals with extensive experience working with financially-troubled companies in complex out-of-court restructurings and chapter 11 proceedings in numerous industries, including power & energy, healthcare, retail, metals & mining, transportation, financial services, oil & gas, telecom, media, and automotive, among others.

11.    In addition, Lazard's investment banking professionals have extensive experience in advising debtors in chapter 11 cases and have served as investment bankers to numerous debtors,

4

creditors' committees and buyers in chapter 11 proceedings, including, but not limited to: *In re Wellpath Holdings, Inc.*, No. 24-90533 (ARP) (Bankr. S.D. Tex. Dec. 13, 2024); *In re Steward Health Care Sys., LLC*, No. 24-90213 (CML) (Bankr. S.D. Tex. June 12, 2024); *In re Rite Aid Corp.*, No. 23-18993 (MBK) (Bankr. D.N.J. Jan. 22, 2024); *In re Inversiones Latin Am. Power Ltda.*, No. 23-11891 (JPM) (Bankr. S.D.N.Y. Jan. 3, 2024); *In re Air Methods Corp.*, No. 23-90886 (MI) (Bankr. S.D. Tex. Dec. 6, 2023); *In re SVB Fin. Grp.*, No. 23-10367 (MG) (Bankr. S.D.N.Y. Aug. 16, 2023); *In re Nat'l Cinemedia, LLC*, No. 23-90291 (DRJ) (Bankr. S.D. Tex. June 6, 2023); *In re SiO2 Med. Prods., Inc.*, No. 23- 10366 (JTD) (Bankr. D. Del. May 25, 2023); *In re Bed Bath & Beyond Inc.*, No. 23-13359 (VFP) (Bankr. D.N.J. June 9, 2023); *In re Endo Int'l plc*, No. 22-22549 (JLG) (Bankr. S.D.N.Y. Jan. 13, 2023); *In re Belk, Inc*, No. 21-30630 (MI) (Bankr. S.D. Tex. March 31, 2021); *In re J. C. Penney Co., Inc.*, No. 20- 20182 (CML) (Bankr. S.D. Tex. March 15, 2021); *In re Basic Energy Servs., Inc.*, No. 21-90002 (DRJ) (Bankr. S.D. Tex. 2021); *In re FTS Int'l, Inc.*, No. 20-34622 (DRJ) (Bankr. S.D. Tex. 2020); *In re 24 Hour Fitness Worldwide, Inc.*, No. 20-11558 (KBO) (Bankr. D. Del 2020); *In re Intelsat S.A.*, No. 20-32299 (KLP) (Bankr. E.D. Va. 2020); *In re Chinos Holdings, Inc.*, No. 20-32181 (KLP) (Bankr. E.D. Va. 2020), *In re J.C. Penney Co.*, No. 20-20182 (DRJ) (Bankr. S.D. Tex. 2020); *In re Neiman Marcus Grp. Ltd.*, No. 20-32519 (DRJ) (Bankr. S.D. Tex. 2020); *In re Gavilan Res., LLC*, No. 20-32656 (DRJ) (Bankr. S.D. Tex. 2020); *In re Forever21*, No. 19-12122 (KG) (Bankr. D. Del. 2019); *In re Weatherford Int'l PLC*, No. 19-33694 (DRJ) (Bankr. S.D. Tex. 2019); *In re Sears Holdings Corp.*, No. 18-23538 (RDD) (Bankr. S.D.N.Y. 2018); *In re Claire's Stores, Inc.*, No. 18-10584 (MFW) (Bankr. D. Del. 2018); *In re Stone Energy Corp.*, No. 16-36390 (MI) (Bankr. S.D. Tex. 2017); *In re RCS Cap. Corp.*, No. 16-10223 (MFW) (Bankr. D. Del. 2016); *In re LINN Energy, LLC*, No.

16-60040 (Bankr. S.D. Tex. 2016); and *In re Chassix Holdings, Inc.,* No. 15-10578 (MEW) (Bankr. S.D.N.Y. 2015).

12.     The Debtors have selected Lazard as their investment banker based upon, among other things: (a) the Debtors' need to retain a skilled investment banking firm to provide advice with respect to the Debtors' complex restructuring activities; (b) Lazard's extensive experience and excellent reputation in providing investment banking services in complex chapter 11 cases such as these; and (c) Lazard's knowledge of the Debtors, as described below.  The resources, capabilities, and experience of Lazard in advising the Debtors are crucial to the Debtors during the Chapter 11 Cases.  A capable and experienced investment banker, such as Lazard, fulfills a critical need that complements the services offered by the Debtors' other restructuring professionals.

13.     Since being retained by the Debtors on June 23, 2025, Lazard has advised and assisted the Debtors in connection with, among other things, (a) evaluating strategic and financial alternatives to improve the Debtors' capital structure, liquidity, and overall financial position; (b) assisting the Debtors in marketing its assets, business units, and the entire Pine Gate business; and (c) negotiating terms and conditions of financings and related transactions, including the debtor-in-possession financing that has been approved by this Court on an interim basis.  *See* Interim DIP Order [Docket No. 132].  As a result of the prepetition work performed on behalf of the Debtors, Lazard has acquired significant insight into and institutional knowledge of the Debtors and their businesses and assets, and has become well-acquainted with the Debtors' capital structure, liquidity needs, and business operations.  Moreover, in providing prepetition services to the Debtors, Lazard has worked closely with the Debtors' senior management and their other advisors and has gained familiarity with the other major stakeholders that will be involved in the Chapter 11 Cases.  Accordingly, Lazard has developed relevant experience and expertise regarding

6

the Debtors that (a) make Lazard a natural selection as the Debtors' investment banker, and (b) will assist Lazard in providing services to the Debtors in an  effective and efficient manner during the Chapter 11 Cases.

## Scope of Lazard's Services

14.     Lazard has agreed to continue to provide services to the Debtors in the Chapter 11 Cases in accordance with the terms and conditions set forth in the Engagement Letter and the Indemnification Letter.  The terms of the Engagement Letter reflect the mutual agreement between the Debtors and Lazard as to the substantial efforts that may be required of Lazard in this engagement.

15.     As stated in the Engagement Letter, subject to the Court's approval, Lazard will provide the following services to the Debtors, to the extent requested by the Debtors, in consideration for the compensation contemplated by the Engagement Letter (collectively, the "*Services*"):[5]

    i.    Reviewing and analyzing the Debtors' business, operations and financial projections;

    ii.    Evaluating the Debtors' potential debt capacity in light of its projected cash flows;

    iii.    Assisting in the determination of a capital structure for the Debtors;

    iv.    Assisting in the determination of a range of values for the Debtors on a going-concern basis;

    v.    Advising the Debtors on tactics and strategies for negotiating with the Stakeholders;

    vi.    Rendering financial advice to the Debtors and participating in meetings or negotiations with the Stakeholders and/or rating agencies or other appropriate parties in connection with any Restructuring;

---

[5]     The description of the Services set forth below is intended to serve as a summary for the convenience of the Court and parties in interest.  In the event of any inconsistency between the description of the Services set forth herein and the Engagement Letter, the Engagement Letter shall control in all respects.  In addition, capitalized terms not otherwise defined in this description of the Services shall have the meanings ascribed to such terms in the Engagement Letter.

vii.     Advising and assisting the Debtors in evaluating any potential Financing transaction by the Debtors, and, if requested by Lazard, subject to execution of customary agreements, with the prior consent and on behalf of the Debtors, contacting potential sources of capital as the Debtors may designate and assisting the Debtors in implementing such Financing;

viii.    Assisting the Debtors in preparing documentation within Lazard's area of expertise that is required in connection with any Restructuring;

ix.     Assisting the Debtors in identifying potential buyers interested in a Sale Transaction, and, with the prior consent of the Debtors, to contacts such buyers on behalf of the Debtors with respect to a Sale Transaction;

x.     Attending meetings of the Board of Directors of PGR Holdco GP, LLC with respect to matters on which Lazard has been engaged;

xi.     Providing testimony, as necessary, with respect to matters on which Lazard has been engaged to advise under the Engagement Letter in any proceeding before the Bankruptcy Court; and

xii.    Providing the Debtors with other financial advice relevant to the foregoing.

16.     The foregoing services are necessary to enable the Debtors to maximize the value of their estates and achieve a successful outcome in the Chapter 11 Cases.  Lazard has indicated a willingness to act on behalf of the Debtors, on the terms described herein and in the Engagement Letter and Indemnification Letter.

## No Duplication of Services

17.     The Debtors believe that the services provided by Lazard will not duplicate the services that other professionals will be providing to the Debtors in the Chapter 11 Cases. Specifically, Lazard will carry out unique functions and will use reasonable efforts to coordinate with the Debtors and the other professionals retained by the Debtors in the Chapter 11 Cases to avoid the unnecessary duplication of services.

## Professional Compensation

18.     Investment bankers such as Lazard do not customarily charge for their services on an hourly basis.  Instead, they charge a monthly advisory fee, plus additional fees contingent on the occurrence of specified transactions or events.  The Engagement Letter follows this fee

structure and provides that Lazard will be compensated for its services as follows (the "***Fee and Expense Structure***"), subject to the Court's approval:[6]

| | |
|---|---|
| **Monthly Fee** | A monthly fee of $250,000 (the "***Monthly Fee***"), commencing on the execution of the Engagement Letter, payable on the first day of each month thereafter until the termination of Lazard's engagement pursuant to Section 10. Fifty percent (50%) of all Monthly Fees paid in respect of any months following the sixth month of engagement shall be credited (without duplication) against any Amendment Fee, Restructuring Fee, Sale Transaction Fee, Partial Sale Transaction Fee or Financing Fee; provided, that, in the event of a Chapter 11 filing, such credit shall only apply to the extent that such fees are approved in their entirety by the Bankruptcy Court, if applicable. |
| **Amendment Fee** | A fee equal to 0.25% of the principal amount of any debt or other commitments or obligations, including any preferred or tax equity or project-level debt, that are amended as part of an Amendment, payable upon the consummation of an Amendment (the "***Amendment Fee***"). |
| **Restructuring Fee** | A fee equal to $17,000,000 payable upon consummation of a Restructuring (the "***Restructuring Fee***"); provided, however, in the event of a Restructuring that is consummated pursuant to a Chapter 11 bankruptcy proceeding, the Restructuring Fee shall be equal to the greater of (i) $17,000,000 and (ii) 0.70% of the aggregate amount of funded debt, tax equity and preferred equity of the entities involved in such chapter 11 proceedings, subject to a cap of $30,000,000. |
| **Sale Transaction Fee** | If the Company consummates a Sale Transaction involving all or a majority of the assets or all or a majority of, or otherwise controlling interest in, the equity securities (a "***Majority Sale***"), Lazard shall be paid a fee (the "***Sale Transaction Fee***") equal to the greater of (A) the fee calculated based on the Aggregate Consideration as set forth in Schedule I of the Engagement Letter, and (B) the Restructuring Fee; provided, however, that in no event shall both a Sale Transaction Fee and a Restructuring Fee be paid.<br><br>If the Company consummates any Sale Transaction that is not a Majority Sale, the Company shall pay a fee (the "***Partial Sale Transaction Fee***") based on the Aggregate Consideration in such Partial Sale set forth in Schedule I of the Engagement Letter, subject to a minimum fee of $2,500,000 for any such Partial Sale.<br><br>Any Sale Transaction Fee or Partial Sale Transaction Fee shall be payable upon consummation of the applicable Sale Transaction.<br><br>No Sale Transaction Fee or Partial Sale Transaction Fee shall be payable if such Sale Transaction or Partial Sale is consummated out-of-court with Generate Capital (or affiliates thereof) on terms substantially similar to those being negotiated by the Debtors and Generate Capital (or affiliates thereof) as of August 19, 2025, provided that, the foregoing shall not apply if such Partial Sale consummated out-of-court involves assets that Lazard marketed as part of an independent sale process pursuant to Lazard's engagement hereunder. |
| **Financing Fee** | A fee, payable upon consummation of a Financing (the "***Financing Fee***"), equal to the applicable percentages of gross proceeds as follows based on the type of Financing: (i) 1.75% for the first $500,000,000 of any senior secured debt financing, and 1.50% of any senior secured debt raised in excess of $500,000,000 plus (ii) 2.75% of any junior |

---

[6]   The description of the Fee and Expense Structure set forth below is intended to serve as a summary for the convenience of the Court and parties in interest.  To the extent there is any inconsistency between the summary of the Fee and Expense Structure set forth in this Application and description of the Fee and Expense Structure set forth in the Engagement Letter, the terms of the Engagement Letter shall control in all respects.

| | secured, last-out, unsecured, or subordinated debt financing, plus (iii) 4.00% of any equity, equity-linked or equity-stapled or similarly bundled equity financing (including, but not limited to, preferred or common equity, convertible debt, debt bundled or stapled with equity or equity-linked financing, options, warrants, or other rights to acquire interests). To the extent that the type of Financing issued (including any "stapled" or similarly bundled securities) would qualify as more than one of the types of Financings listed above, the highest applicable fee percentage shall apply); provided, however, that for any proposed "debtor-in-possession" Financing, the Financing Fee shall be earned and shall be payable upon the earlier of execution of a commitment letter or a definitive agreement with respect to the Financing; and, provided, further, that to the extent that Lazard is paid a fee in connection with a proposed "debtor-in-possession" Financing and the Bankruptcy Court does not provide any required approval with respect thereto or such Financing is not consummated, Lazard shall return such fee to the Company (less any Monthly Fees that have accrued). One half (*i.e.,* 50%) of any Financing Fee shall be credited (without duplication) against any Restructuring Fee or Sale Transaction Fee. |
|---|---|
| **Limitation With Respect to Multiple Fees** | For the avoidance of any doubt, (i) more than one fee may be payable pursuant to each of clauses (b), (d) and (e) of section 2 of the Engagement Letter. |

19.     The Engagement Letter also provides that, in addition to Lazard's fees for professional services and regardless of whether any transaction occurs, the Debtors will reimburse Lazard for its reasonable and documented expenses incurred in connection with any of the services provided pursuant to and in accordance with the Engagement Letter, including, but not limited to, reasonable and documented fees and expenses of counsel, if any, retained by Lazard, travel and lodging, data processing and communications charges, courier services and other expenditures. The Engagement Letter does, however, provide that in no event shall the aggregate amount of expenses reimbursed by the Debtors outside of a bankruptcy proceeding exceed $50,000 without the prior written consent of the Debtors (not to be unreasonably withheld, conditioned or delayed). For the avoidance of doubt, any expense limitation set forth herein shall in no way limit the Debtors' obligations under the Indemnification Letter.

20.     The Fee and Expense Structure described above was negotiated in good faith and at arm's-length, and the Debtors believe that the Fee and Expense Structure constitutes fair and reasonable terms and conditions for the retention of Lazard, as investment banker, by the Debtors pursuant in accordance with sections 327(a) and 328(a) of the Bankruptcy Code. The Debtors and

Lazard negotiated the Fee and Expense Structure to function as and be an interrelated, integrated unit, in correspondence with Lazard's services, which Lazard renders not in parts, but as a whole. It would be contrary to the intention of Lazard and the Debtors for any isolated component of the entire Fee and Expense Structure to be treated as sufficient consideration for any isolated portion of Lazard's services.  Instead, the Debtors and Lazard intend that Lazard's services be considered and be compensated by the Fee and Expense Structure in its entirety.

21.     The Debtors believe that the Fee and Expense Structure is comparable to compensation generally charged by other firms of similar stature to Lazard for comparable engagements, both in and out of bankruptcy.  Lazard has also advised the Debtors that the Fee and Expense Structure is consistent with Lazard's normal and customary billing practices for cases of this size and complexity, which require the level and scope of services outlined above. Additionally, the Fee and Expense Structure was established to reflect the difficulty of the work Lazard expects to undertake, as well as the potential risk that transactions do not close despite Lazard's extensive efforts.  The Debtors, thus, believe that the Fee and Expense Structure is reasonable.

22.     In determining the level of compensation to be paid to Lazard and its reasonableness, the Debtors compared Lazard's proposed fees with the range of investment banking fees in other large and complex chapter 11 cases.  The Fee and Expense Structure was agreed upon by the parties in anticipation that a substantial commitment of professional time and effort would be required of Lazard and its professionals, that such commitment may foreclose other opportunities for Lazard, and that the actual time and commitment required of Lazard and its professionals to perform the services hereunder may vary substantially from week to week or month to month.

23.     The Debtors submit that Lazard has obtained valuable institutional knowledge of the Debtors' businesses, financial affairs, and creditors because of the extensive services Lazard provided to the Debtors before the Petition Date.  Therefore, Lazard is well qualified and uniquely able to perform the Services and assist the Debtors in the Chapter 11 Cases.  Moreover, the Debtors believe that Lazard's services will be of paramount importance to the Debtors achieving a successful outcome of the Chapter 11 Cases.

## Fee Applications and Recordkeeping Requirements

24.     It is not the general practice of investment banking firms—including Lazard—to keep detailed time records similar to those customarily kept by attorneys.  Lazard does not ordinarily maintain contemporaneous time records in tenth-hour increments or provide or conform to a schedule of hourly rates for its professionals.

25.     The Debtors, therefore, request that, notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, other applicable orders of this Court, or any other guidelines regarding the submission and approval of fee applications, Lazard be excused from complying with any such requirements in connection with the services to be rendered pursuant to the Engagement Letter.

26.     Notwithstanding the foregoing, Lazard will apply to the Court for the allowance of compensation for services rendered and reimbursement of expenses incurred.  Such applications will include time records setting forth, in summary format, a description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors in one-half (.5) hour increments.  Lazard will also maintain detailed records of any actual and necessary costs and expenses incurred in connection with the services discussed above.  Lazard's applications for compensation and expenses will be paid by the Debtors pursuant to the terms of the Engagement Letter in accordance with any related

12

procedures established by the Court. Courts in other large chapter 11 cases in this jurisdiction have excused flat-fee professionals from timekeeping requirements under similar circumstances. *See, e.g.*, *In re Glob. Clean Energy.*, No. 25-90113 (ARP) (Bankr. S.D. Tex. May 22, 2025) (Docket No. 160); *In re Wellpath Holdings, Inc.*, No. 24-90533 (ARP) (Bankr. S.D. Tex. Dec. 13, 2024); *In re Steward Health Care Sys. LLC*, Case No. 24-90213 (Bankr. S.D. Tex. June 12, 2024) (CML); *In re Air Methods Corp.*, No. 23-90886 (Bankr. S.D. Tex. Dec. 6, 2023) (Docket No. 314); *In re Envision Healthcare Corp.,* Case No. 23-90342 (Bankr. S.D. Tex. Aug. 17, 2023) (CML); *In re Nat'l Cinemedia, LLC*, No. 23-90291 (Bankr. S.D. Tex. June 6, 2023) (Docket No. 299); *In re Quotient Ltd.*, Case No. 23-90003 (DRJ) (Bankr. S.D. Tex. Feb. 15, 2023); *In re Cineworld Grp. plc*, Case No. 22-90168 (MI) (Bankr. S.D. Tex. Nov. 28, 2022); *In re Talen Energy Supply, LLC*, Case No. 22-90054 (MI) (Bankr. S.D. Tex. July 26, 2022); *In re GWG Holdings, Inc*., Case No. 22-90032 (MI) (Bankr. S.D. Tex. June 17, 2022); *In re Basic Energy Servs., Inc.*, No. 21-90002 (DRJ) (Bankr. S.D. Tex. Oct. 21, 2021) (Docket No. 523); *In re Brazos Elec. Power Coop., Inc.*, No. 21-30725 (DRJ) (Bankr. S.D. Tex. June 17, 2021) (Docket No. 797); *In re Seadrill Ltd*., Case No. 21-30427 (DRJ) (Bankr. S.D. Tex. May 21, 2021); *In re Belk, Inc*, No. 21-30630 (MI) (Bankr. S.D. Tex. March 31, 2021); *In re J. C. Penney Co., Inc.*, No. 20-20182 (CML) (Bankr. S.D. Tex. March 15, 2021); *In re S. Foods Grp., LLC*, No. 19-36313 (DRJ) (Bankr. S.D. Tex. Dec. 6, 2019) (Docket No. 470); *In re EP Energy Corp.,* No. 19-35654 (MI) (Bankr. S.D. Tex. Nov. 7, 2019) (Docket No. 328); *In re Weatherford Int'l plc*, No. 19-33694 (DRJ) (Bankr. S.D. Tex. Oct. 3, 2019) (Docket No. 378); *In re Expro Holdings US Inc.,* No. 17-60179 (DRJ) (Bankr. S.D. Tex. Jan. 19, 2018) (Docket No. 185); and *In re LI1VN Energy, LLC,* No. 16-60040 (DRJ) (Bankr. S.D. Tex. July 12, 2016) (Docket No. 557).

27.     The Debtors also request that, notwithstanding the procedures set forth in sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any other applicable procedures and orders of this Court, the Debtors be authorized to pay the Monthly Fee to Lazard each month in accordance with the terms of, and the at the times specified in, the Engagement Letter, without further order of the Court and without Lazard filing or serving any prior fee application or statement.

## Indemnification

28.     As a material part of the consideration for which Lazard has agreed to provide the services described herein, Debtors and Lazard agreed that the Indemnification Letter remains in full force and effect and applies to the engagement of Lazard under the Engagement Letter.[7] The Indemnification Letter, attached to the Proposed Order as Exhibit 2, provides for certain indemnification, reimbursement, contribution and other obligations (collectively, the "***Indemnification Provisions***") of the Debtors to Lazard and its affiliates and its and their respective officers, directors, members, employees, agents and controlling persons, if any (Lazard and each such other person being an "***Indemnified Person***") from and against any action, claim, proceeding, investigation, or any losses, claims, damages, liabilities or expenses related to, or arising out of or in connection with Lazard's engagement or any matter referred to in the Engagement Letter, and the Debtors will reimburse each Indemnified Person for its legal and other expenses (including the cost of any investigation and preparation) as they are incurred in connection with investigating, preparing, pursuing or defending any action, claim, suit, investigation or proceeding related to, arising out of or in connection with the Engagement Letter,

---

[7]     As discussed above, Lazard was initially engaged by the Debtors on August 27, 2021 pursuant to the Prior Engagement Letter which engagement included the Indemnification Letter. Notwithstanding that the execution of the Original Engagement Letter terminated the Prior Engagement Letter between the Debtors and Lazard, the parties agreed that the Indemnification Letter referenced therein remains in full force and effect.

whether or not pending or threatened and whether or not any Indemnified Person is a party; *provided, however*, that the Debtors will not be responsible for any losses, claims, damages or liabilities (or expenses relating thereto) that are finally judicially determined to have resulted primarily from the gross negligence, fraud, willful misconduct or bad faith of any Indemnified Person.  In the Indemnification Letter, the Debtors also agree that no Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Debtors (or their securityholders or creditors related thereto) for or in connection with the Engagement Letter, except for any such liability for losses, claims, damages or liabilities incurred by the Debtors that are finally judicially determined to have resulted primarily from the gross negligence, fraud, willful misconduct or bad faith of such Indemnified Person.

29.     If the indemnification provided for in the Indemnification Letter is, for any reason, not available to an Indemnified Person or is insufficient to hold an Indemnified Person harmless in respect of any losses, claims, damages, liabilities, or expenses referred to therein, then, in lieu of indemnifying such Indemnified Person thereunder, the Debtors shall contribute to the amount paid or payable by such Indemnified Person as a result of such losses, claims, damages or liabilities (and expenses relating thereto) (a) in such proportion as is appropriate to reflect the relative benefits to Lazard, on the one hand, and the Debtors, on the other hand, of the Engagement Letter or (b) if the allocation provided by clause (a) above is not available, in such proportion as is appropriate to reflect not only the relative benefits referred to in such clause (a) but also the relative fault of each of Lazard and the Debtors, as well as any other relevant equitable considerations; *provided, however*, to the extent permitted by applicable law, in no event shall Lazard's aggregate

contribution to the amount paid or payable exceed the aggregate amount of fees actually received by Lazard under the Engagement Letter.[8]

30.     The indemnification, contribution, reimbursement and other provisions of the Indemnification Letter are customary and reasonable terms of consideration for investment bankers such as Lazard for engagements both out of court and in chapter 11, and, as modified by the Proposed Order, reflect the qualifications and limitations on indemnification provisions that are customary in chapter 11 cases in this district and other jurisdictions.  Such provisions, viewed in conjunction with the other terms of Lazard's proposed retention, are reasonable and in the best interests of the Debtors and their estates, in light of the fact that the Debtors require Lazard's services.  Similar indemnification provisions have been approved and implemented in other large chapter 11 cases in this jurisdiction. *See, e.g.*, *In re Wellpath Holdings, Inc.*, No. 24-90533 (ARP) (Bankr. S.D. Tex. Dec. 13, 2024); *In re Steward Health Care System LLC*, Case No. 24-90213 (Bankr. S.D. Tex. June 12, 2024) (CML); *In re Envision Healthcare Corp.*, Case No. 23-90342 (Bankr. S.D. Tex. Aug. 17, 2023) (CML); *In re Quotient Ltd.*, Case No. 23-90003 (DRJ) (Bankr. S.D. Tex. Feb. 15, 2023); *In re Cineworld Grp. plc*, Case No. 22-90168 (MI) (Bankr. S.D. Tex. Nov. 28, 2022); *In re Talen Energy Supply, LLC*, Case No. 22-90054 (MI) (Bankr. S.D. Tex. July 26, 2022); *In re GWG Holdings, Inc*., Case No. 22-90032 (MI) (Bankr. S.D. Tex. June 17, 2022); *In re Seadrill Ltd*., Case No. 21-30427 (DRJ) (Bankr. S.D. Tex. May 21, 2021); *In re Belk, Inc*, No. 21-30630 (MI) (Bankr. S.D. Tex. March 31, 2021); *In re J. C. Penney Co., Inc.*, No. 20-20182 (CML) (Bankr. S.D. Tex. March 15, 2021).

---

[8]     The Indemnification Letter provides that the relative benefits to Lazard and the Debtors under the Engagement Letter shall be deemed to be in the same proportion as (i) the total value paid or proposed to be paid to Lazard under the Engagement Letter, bears to (ii) the fees paid or proposed to be paid in connection with such engagement; *provided, however*, that to the extent permitted by applicable law, in no event shall we or any other Indemnified Person be required to contribute an aggregate amount in excess of the aggregate fees actually paid to us for such investment banking services.

31.     Accordingly, as part of the Application, the Debtors request that the Court approve the Indemnification Provisions and the obligations contained therein.

### Lazard's Disinterestedness

32.     In the 90 days prior to the Petition Date, the Debtors paid $14,500,000.00 in fees and $22,320.91 in expenses to Lazard for prepetition services rendered and expenses incurred, corresponding to fees and expenses under the Engagement Letter.

33.     Lazard has received no other compensation from the Debtors pursuant to the Engagement Letter.  As of the Petition Date, Lazard was owed nothing by the Debtors in respect of services provided by Lazard prior to the Petition Date.

34.     Pursuant to section 504 of the Bankruptcy Code, Lazard has informed the Debtors that there is no agreement or understanding between Lazard and another entity, other than employees of Lazard, for the sharing of compensation received or to be received for services rendered in connection with the chapter 11 cases.

35.     Lazard has informed the Debtors that Lazard:  (a) does not hold any interest adverse to the Debtors' estates, (b) believes that it is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and (c) has no connection to the Debtors, their creditors or related parties except as disclosed in the Cowan Declaration.  If any new material facts or relationships are discovered or arise, Lazard will inform the Court as required by Bankruptcy Rule 2014(a).

36.     Accordingly, to the best of the Debtors' knowledge, information, and belief that is based in reliance on the representations made to the Debtors by Lazard, including the representations embodied in the Cowan Declaration, Lazard is disinterested and holds no

materially adverse interest as to the matters upon which they are to be retained in the Chapter 11 Cases.

## BASIS FOR RELIEF

37.     The Debtors respectfully request authority to retain Lazard pursuant to section 327(a) of the Bankruptcy Code, which provides that a debtor, subject to court approval, may employ one or more professional persons "that do not hold or represent an interest adverse to the estate," and that are "disinterested persons." 11 U.S.C. § 327(a).  Section 1107(b) of the Bankruptcy Code elaborates upon sections 101(14) and 327(a) of the Bankruptcy Code in cases under chapter 11 of the Bankruptcy Code and provides that "a person is not disqualified for employment under section 327 of the Bankruptcy Code by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b).

38.     A "disinterested person" is a person that (a) is not a creditor, an equity security holder, or an insider of the debtor; (b) is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor; and (c) does not have an interest materially adverse to the interests of the estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.  11 U.S.C. § 101(14).

39.     Further, Bankruptcy Rule 2014(a) requires that a retention application disclose the following:

> [T]he specific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United

18

> States trustee, or any person employed in the office of the United
> States trustee.

Fed. R. Bankr. P. 2014(a).

40. The Debtors submit that for all the reasons stated herein and in the Cowan Declaration, the retention and employment of Lazard as the Debtors' investment banker pursuant to section 327(a) of the Bankruptcy Code and Bankruptcy Rule 2014(a) is warranted.

41. The Debtors seek approval of the terms of the Engagement Letter under section 328(a) of the Bankruptcy Code, which provides that a debtor, "with the court's approval, may employ or authorize the employment of a professional person under section 327… on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed percentage fee basis, or on a contingency fee basis." 11 U.S.C. § 328(a). Accordingly, section 328(a) of the Bankruptcy Code permits compensation of professionals, such as investment bankers, on flexible terms that reflect the nature of their services and market conditions. *See Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum (In re Nat'l Gypsum Co.)*, 123 F.3d 861, 862 (5th Cir. 1997) ("Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee)."); *see also In re Wash. Mut., Inc.*, Case No. 08-12229 (MFW), 2018 WL 704361, at *4 (Bankr. D. Del. Feb. 2, 2018) (stating that "courts 'must protect agreements and expectations' once they have been found reasonable") (quoting *In re Nat'l Gypsum Co.*, 123 F.3d at 862–63).

42. The Debtors submit that the terms of the Engagement Letter were negotiated in good faith and at arm's length between the Debtors and Lazard and reflect the extensive work and substantial commitment undertaken by Lazard before the Petition Date, as well as the Debtors' evaluation of the extensive work and substantial commitment remaining to be completed by Lazard during the Chapter 11 Cases. The Debtors submit that the terms and conditions of the Engagement

Letter, including the fee structure, are fair, reasonable, and market-based under the standards set forth in section 328(a) of the Bankruptcy Code considering (a) the numerous issues that Lazard may be required to address in performing its services for the Debtors pursuant to the Engagement Letter, (b) Lazard's commitment to the variable time requirements and effort necessary to address all such issues as they arise, (c) Lazard's substantial experience with respect to investment banking services, (d) the market prices for Lazard's services for engagements of this nature, and (e) the fee structures typically utilized by Lazard and other investment bankers, which do not bill their clients on an hourly basis, in bankruptcy or otherwise.

43.     Accordingly, the Debtors believe that Lazard's compensation should be subject only to the standard of review in section 328(a) and should not be subject to any additional standard of review under section 330 of the Bankruptcy Code.

44.     Retention of Lazard is appropriate and in the best interest of the Debtors, their estates, and all parties in interest based on:  (a) the necessity of Lazard's services for the successful administration of the Chapter 11 Cases; (b) the necessity of Lazard's services for the benefit of all parties in interest; (c) the complexity, importance, and nature of the problems, issues, and tasks facing the Debtors that Lazard is helping to address; (d) the past experience and successes of Lazard's professionals; and (e) the reputations and demonstrated skill and experience in the bankruptcy field of Lazard's professionals.  For the reasons set forth above, the Debtors believe that Lazard's retention on the terms of the Engagement Letter is fair, appropriate, in line with the market, and reasonable.

45.     Based on the foregoing, the Debtors submit that they have satisfied the requirements of the Bankruptcy Code, Bankruptcy Rules, and the Bankruptcy Local Rules to

support entry of the Proposed Order authorizing the Debtors to retain and employ Lazard in the chapter 11 cases on the terms described herein and in the Engagement Letter.

### **Notice**

46.     Notice of the Application will be given to the parties on the Debtors' Master Service List.  A copy of this Application is available on (a) the Court's website, at www.txs.uscourts.gov, and (b) the website maintained by the Debtors' claims and noticing agent, Omni Agent Solutions, Inc., at https://omniagentsolutions.com/PGR.

*[Remainder of page intentionally left blank.]*

WHEREFORE, the Debtors request that the Court enter the Proposed Order granting the relief requested in this Application and such other relief as the Court deems appropriate under the circumstances.

Dated:  November 20, 2025                    Respectfully submitted,

                                            */s/ Ray Shem*
                                            Name: Ray Shem
                                            Title: President and Chief Financial Officer

## **CERTIFICATE OF SERVICE**

I certify that on November 20, 2025 a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on those parties registered to receive electronic notices.

_/s/ Timothy A. ("Tad") Davidson II_
Timothy A. ("Tad") Davidson II