**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

---------------------------------------------------------- x
                                                           :
In re:                                                     :    Chapter 11
                                                           :
PINE GATE RENEWABLES, LLC, *et al.*,                       :    Case No. 25-90669 (CML)
                                                           :
Debtors.[1]                                                :    (Jointly Administered)
                                                           :
---------------------------------------------------------- x

**ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT
OF LAZARD FRÈRES & CO. LLC AS INVESTMENT BANKER TO THE DEBTORS
AND DEBTORS IN POSSESSION, EFFECTIVE AS OF THE PETITION DATE**

**[Relates to Docket No.    ]**

Upon the application (the "***Application***")[2] of the above-captioned debtors and debtors in possession (collectively, the "***Debtors***") for the entry of an order (this "***Order***") authorizing Debtors to retain and employ Lazard Frères & Co. LLC ("***Lazard***") as the investment banker to the Debtors effective as of November 6, 2025 (the "***Petition Date***"), pursuant to sections 327(a), 328(a), and 1107(b) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "***Bankruptcy Code***"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), and rules 2014-1 and 2016-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "***Bankruptcy Local Rules***"), on the terms and conditions set forth herein and in the Engagement Letter and Indemnification Letter, all as more fully set forth in the

---

[1]   A complete list of each of the Debtors in these chapter 11 cases (the "***Chapter 11 Cases***") and the last four digits of each Debtor's taxpayer identification number (if applicable) may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/PGR. The Debtors' mailing address for the purposes of the Chapter 11 Cases is 130 Roberts Street, Asheville, North Carolina 28801.

[2]   Capitalized terms used but not defined herein have the meanings set forth in the Application.

Application; and upon consideration of the Application and the Cowan Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Order of Reference to Bankruptcy Judges* from the United States District Court for the Southern District of Texas, entered May 24, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. § 1408 and § 1409; and the Court having found that the relief requested in the Application is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Application and opportunity for a hearing on the Application were appropriate and no other notice need be provided; and the Court having found and determined that (A) the terms and conditions of Lazard's employment set forth in the Engagement Letter (including the Fee and Expense Structure) as modified by this Order are reasonable as required by section 328(a) of the Bankruptcy Code and (B) Lazard does not hold any interest adverse to the Debtors' estates and is a "disinterested person" as that term is defined under section 101(14) of the Bankruptcy Code; and the Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before this Court (the "***Hearing***") and this Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY ORDERED THAT**:

1.      The Debtors are authorized pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Bankruptcy Local Rules 2014-1 and 2016-1 to retain and employ Lazard as the investment banker to the Debtors, effective as of the

Petition Date, in accordance with the Engagement Letter, the Indemnification Letter and this Order, to perform the services described in the Engagement Letter.

2.      The terms of the Engagement Letter and the Indemnification Letter, annexed to this Order as **Exhibit 1** and **Exhibit 2**, respectively, are approved in all respects, except as modified by this Order.

3.      All of Lazard's compensation as set forth in the Engagement Letter, including, without limitation, the Fee and Expense Structure and the Indemnification Provisions, is approved pursuant to section 328(a) of the Bankruptcy Code, and the Debtors are authorized to pay, reimburse, and indemnify Lazard in accordance with the terms and conditions of, and at the times specified in, the Engagement Letter, except as modified by this Order.

4.      Lazard shall file interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred pursuant to and in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any other applicable orders and procedures of this Court; *provided, however*, that Lazard shall be compensated and reimbursed pursuant to section 328(a) of the Bankruptcy Code, and Lazard's fees and expenses shall not be subject to review under the standard set forth in section 330 of the Bankruptcy Code.  Notwithstanding the foregoing, the Debtors are authorized to pay the Monthly Fee to Lazard each month in accordance with the terms of the Engagement Letter without filing or serving any fee application or statement; *provided that*, for the avoidance of doubt, the Monthly Fees shall be subject to review and approval in any interim and final fee applications.

5.      Notwithstanding any provision to the contrary in this Order, the United States Trustee for Region 7 (the "*U.S. Trustee*") shall have the right to object to Lazard's request(s) for

interim and final compensation based on the reasonableness standard provided in section 330 of the Bankruptcy Code. This Order and the record relating to the Court's consideration of the Application shall not prejudice or otherwise affect the rights of the U.S. Trustee to challenge the reasonableness of Lazard's fees under the standard set forth in the preceding sentence. Accordingly, nothing in this Order or the record shall constitute a finding of fact or conclusion of law binding the U.S. Trustee, on appeal or otherwise, with respect to the reasonableness of Lazard's fees.

6.      Notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, any order of this Court, or any guidelines established by the U.S. Trustee regarding submission and approval of fee applications, Lazard and its professionals shall be excused from (a) the requirement to maintain or provide detailed time records for services rendered postpetition in one-tenth-hour (0.10) increments and (b) providing or conforming to any schedule of hourly rates. Instead, notwithstanding that Lazard does not charge for its services on an hourly basis, Lazard will be entitled to maintain time records of its services rendered for the Debtors in half-hour (0.50) increments, setting forth, in summary format, a description of the services rendered and the professionals rendering such services, and will present such records together with its fee applications filed with this Court.

7.      None of the fees payable to Lazard shall constitute a "bonus" or fee enhancement under applicable law.

8.      The relief granted herein shall be binding upon any chapter 11 trustee appointed in the Chapter 11 Cases, or upon any chapter 7 trustee appointed in the event of a subsequent conversion of the Chapter 11 Cases to cases under chapter 7.

9.     If Lazard seeks reimbursement for attorneys' fees pursuant to the terms of the Engagement Letter or the Indemnification Letter, the invoices and supporting time records from such attorneys (which may be redacted to protect confidential information and applicable privileges) shall be included in Lazard's own fee applications, and such invoices and time records shall be subject to (a) the guidelines promulgated by the U.S. Trustee for compensation and reimbursement of expenses and (b) approval by the Court under sections 330 and 331 of the Bankruptcy Code, without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

10.     Lazard is authorized without further order of the Court to reserve and apply amounts from Lazard's prepetition payments as are necessary and appropriate to compensate and reimburse Lazard for any outstanding fees or expenses incurred on or prior to the Petition Date, consistent with Lazard's ordinary course billing practices.

11.     To the extent the Debtors and Lazard enter into any supplemental engagement letters, the Debtors will file any such supplemental engagement letters with the Court and serve the same upon the applicable notice parties.  Absent any objection filed within 14 days after the filing and service of any such supplemental engagement letter, Lazard shall be deemed authorized and approved to provide and be compensated for such additional services pursuant to this Order and the terms of such supplemental engagement letter.  To the extent any such parties object to such proposed supplemental engagement letter, the Debtors will promptly schedule a hearing before the Court within ten (10) days of receipt of any such objection or as soon thereafter as is practicable.  All additional services shall be subject to the provisions of this Order.

12.     The Debtors shall be bound by the indemnification, contribution, reimbursement, and other provisions of the Engagement Letter and the Indemnification Letter and will indemnify and hold harmless Lazard and each other Indemnified Person in accordance with the terms of the Engagement Letter and the Indemnification Letter, subject during the pendency of the Chapter 11 Cases to the following:

(a)     subject to the provisions of subparagraphs (b) and (c) below, the Debtors are authorized to indemnify, and to provide contribution and reimbursement to, and shall indemnify, and provide contribution and reimbursement to, the Indemnified Persons (as defined in the Indemnification Letter) in accordance with the Indemnification Letter for any claim arising from, related to, or in connection with the services provided for in the Engagement Letter;

(b)     notwithstanding subparagraph (a) above or any provisions of the Engagement Letter or Indemnification Letter to the contrary, the Debtors shall have no obligation to indemnify an Indemnified Person or provide contribution or reimbursement to an Indemnified Person (i) for any claim or expense to the extent that it is judicially determined (the determination having become final) to have arisen from such Indemnified Person's bad faith, fraud, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct, (ii) for a contractual dispute in which the Debtors allege the breach of an Indemnified Person's contractual obligations if the Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to applicable law, or (iii) for any claim or expense that is settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by this Court, after notice and a hearing pursuant to subparagraph (c) *infra*, to be a claim or expense for which such Indemnified Person should not receive indemnity, contribution or reimbursement under the terms of the Engagement Letter and Indemnification Letter, as modified by this Order; and

(c)     if, before the earlier of (i) the entry of an order confirming a chapter 11 plan in the Debtors' cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing the Debtors' chapter 11 cases, an Indemnified Person believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Indemnification Letter, as modified by this Order, including without limitation the advancement of defense costs, the Indemnified Person must file an application therefore in this Court, and the Debtors may not pay any such

amounts to the Indemnified Person before the entry of an order by this Court approving such payment.  This subparagraph (c) is intended only to specify the period during which the Court shall have jurisdiction over any request by any Indemnified Person for indemnification, contribution or reimbursement and is not a provision limiting the duration of the Debtors' obligation to indemnify.

13.    Notwithstanding anything in the Application or the Engagement Letter to the contrary, to the extent that Lazard uses the services of independent contractors, subcontractors or employees of affiliates or subsidiaries (collectively, the "***Contractors***") in the Chapter 11 Cases and Lazard seeks to pass through, and requests to be reimbursed for, the fees and/or costs of the Contractors to the Debtors, Lazard shall (a) pass through the fees of such Contractors to the Debtors at the same rate that Lazard pays the Contractors, (b) seek reimbursement for actual costs of the Contractors only, and (c) ensure that the Contractors perform the conflicts check required by Bankruptcy Rule 2014 and file with the Court such disclosures as required by Bankruptcy Rule 2014.

14.    To the extent this Order is inconsistent with the Engagement Letter, the Indemnification Letter, the Application, or the Cowan Declaration, the terms of this Order shall govern.

15.    Lazard shall use its reasonable efforts to avoid any duplication of services provided by any of the Debtors' other retained professionals in the Chapter 11 Cases.

16.    The Debtors and Lazard are authorized and empowered to take all actions necessary to effectuate the relief granted in this Order in accordance with the Application.

17.    Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application, and the requirements of the Bankruptcy Local Rules are satisfied by the contents of the Application.

18.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

19.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated: _____, 2025

_____
UNITED STATES BANKRUPTCY JUDGE

<u>Exhibit 1</u>

Engagement Letter

# LAZARD

As of August 1, 2025

Latham & Watkins LLP
1271 Avenue of the Americas
New York, NY 10020

Attention:     Ray Schrock
               Partner

Dear Ladies and Gentlemen:

This letter agreement (the "Agreement") confirms the understanding and agreement among Lazard Frères & Co. LLC ("Lazard"), Latham & Watkins LLP ("Counsel"), counsel to  PGR Holdco GP, LLC ("Pine Gate") and its controlled subsidiaries and managed entities (collectively with any entity formed or used for the purposes set forth herein, the "Company"), and the Company regarding the retention of Lazard by Counsel as the sole investment banker to the Company on the terms and conditions set forth herein.

*Assignment Scope:*

Under this Agreement, Lazard will provide investment banking services to Counsel for the benefit of the Company in connection with any Sale Transaction, Financing, Amendment, and/or Restructuring (each as defined herein and each also a "Transaction", and collectively, the "Transactions"), pursuant to the terms and conditions of this Agreement.

This Agreement supersedes the engagement agreement between Lazard and Pine Gate Renewables, LLC (the "Original Engagement Letter") dated June 23, 2025 (except that Lazard shall remain entitled to any expenses reimbursable pursuant to the Original Engagement Letter that have not yet been reimbursed as of the date hereof).

By signing this Agreement, we hereby accept our appointment as investment banker under the terms hereof.

*Description of Services:*

1.    Lazard agrees, in consideration of the compensation provided in Section 2 below, to perform such of the following investment banking services as Counsel (on behalf of the Company) may reasonably request, including:

(a)     Reviewing and analyzing the Company's business, operations and financial projections;

Lazard Frères & Co. LLC
30 Rockefeller Plaza
New York, NY 10112

(b)     Evaluating the Company's potential debt capacity in light of its projected cash flows;

(c)     Assisting in the determination of a capital structure for the Company;

(d)     Assisting in the determination of a range of values for the Company on a going concern basis;

(e)     Advising the Company on tactics and strategies for negotiating with the Stakeholders;

(f)     Rendering financial advice to the Company and participating in meetings or negotiations with the Stakeholders and/or rating agencies or other appropriate parties in connection with any Restructuring;

(g)     Advising the Company on the timing, nature, and terms of new securities, other consideration or other inducements to be offered pursuant to any Restructuring;

(h)     Advising and assisting the Company in evaluating any potential Financing transaction by the Company, and, if requested by Lazard, subject to execution of customary agreements, with the prior consent and on behalf of the Company, contacting potential sources of capital as the Company may designate and assisting the Company in implementing such Financing;

(i)     Assisting the Company in preparing documentation within our area of expertise that is required in connection with any Restructuring;

(j)     Assisting the Company in identifying potential buyers interested in a Sale Transaction and, with the prior consent of the Company, to contact such buyers on behalf of the Company with respect to a Sale Transaction;

(k)     Attending meetings of the board of managers of Pine Gate (the "Board") with respect to matters on which we have been engaged to advise hereunder;

(l)     Providing testimony, as necessary, with respect to matters on which we have been engaged to advise hereunder in any proceeding before the Bankruptcy Court; and

(m)     Providing the Company with other financial advice related to the foregoing.

*<u>Fees:</u>*

2.  As consideration for the services to be provided, the Company shall pay Lazard the following fees:

(a)     A monthly fee of $250,000 (the "Monthly Fee"), payable on execution of this Agreement and on the 1st day of each month thereafter until the

termination of Lazard's engagement pursuant to Section 10. One half (i.e., 50%) of the Monthly Fees paid in respect of any months following the sixth month of this engagement shall be credited (without duplication) against any Amendment Fee, Restructuring Fee, Sale Transaction Fee, Partial Sale Transaction Fee, or Financing Fee payable hereunder; provided, that, in the event of a Chapter 11 filing, such credit shall only apply to the extent that such fees are approved in entirety by the Bankruptcy Court, if applicable.

(b) A fee, payable upon consummation of an Amendment (each, an "Amendment Fee"), equal to 0.25% of the principal amount of any debt or other commitments or obligations, including any preferred or tax equity or project-level debt, that are amended as part of an Amendment; provided, however, that if the maturity is extended for more than one year, the Amendment Fee shall be equal to 1.00% of the principal amount of such debt or other commitments or obligations that is extended. One half (i.e., 50%) of any Amendment Fee shall be credited (without duplication) against any Restructuring Fee or Sale Transaction Fee.

(c) A fee (the "Restructuring Fee") equal to $17,000,000, payable upon the consummation of any Restructuring"), provided, however, in the event of a Restructuring that is consummated pursuant to a Chapter 11 bankruptcy proceeding, the Restructuring Fee shall be equal to the greater of (i) $17,000,000 and (ii) 0.70% of the aggregate amount of funded debt, tax equity and preferred equity of the entities involved in such chapter 11 proceedings, subject to a cap of $30,000,000.

(d) A fee payable upon consummation of any Sale Transaction (the "Sale Transaction Fee") that:

(i) incorporates all or a majority of the assets or all or a majority of, or otherwise controlling interest in, the equity securities of the Company equal to the greater of (A) the fee calculated based on the Aggregate Consideration as set forth in Schedule I hereto and (B) the Restructuring Fee; provided, however, for the avoidance of doubt, in no event shall both a Sale Transaction Fee and a Restructuring Fee be paid.

(ii) if the Company consummates any Sale Transaction not covered by clauses (i) above (a "Partial Sale"), the Company shall pay Lazard a fee (the "Partial Sale Transaction Fee") based on the Aggregate Consideration in such Partial Sale as set forth in Schedule I hereto, subject to a minimum fee of $2,500,000 for any such Partial Sale.

(iii) Any Sale Transaction Fee or Partial Sale Transaction Fee shall be payable upon consummation of the applicable Sale Transaction.

(iv) Notwithstanding anything to the contrary herein, no Sale Transaction Fee or Partial Sale Transaction Fee shall be payable if such Sale Transaction

or Partial Sale is consummated out-of-court with Generate Capital (or affiliates thereof) on terms substantially similar to those being negotiated by the Company and Generate Capital (or affiliates thereof) as of August 19, 2025, provided that, the foregoing shall not apply if such Partial Sale consummated out-of-court involves assets that Lazard marketed as part of an independent sale process pursuant to Lazard's engagement hereunder.

(e)    A fee, payable upon consummation of a Financing (the "Financing Fee"), equal the applicable percentages of gross proceeds as follows based on the type of Financing: (i) 1.75% for the first $500,000,000 of any senior secured debt financing, and 1.50% of any senior secured debt raised in excess of $500,000,000 plus (ii) 2.75% of any junior secured, last-out, unsecured, or subordinated debt financing, plus (iii) 4.00% of any equity, equity-linked or equity-stapled or similarly bundled equity financing (including, but not limited to, preferred or common equity, convertible debt, debt bundled or stapled with equity or equity-linked financing, options, warrants, or other rights to acquire interests). To the extent that the type of Financing issued (including any "stapled" or similarly bundled securities) would qualify as more than one of the types of Financings listed above, the highest applicable fee percentage shall apply); provided, however, that for any proposed "debtor-in-possession" Financing, the Financing Fee shall be earned and shall be payable upon the earlier of execution of a commitment letter or a definitive agreement with respect to the Financing; and, provided, further, that to the extent that Lazard is paid a fee in connection with a proposed "debtor-in-possession" Financing and the Bankruptcy Court does not provide any required approval with respect thereto or such Financing is not consummated, Lazard shall return such fee to the Company (less any Monthly Fees that have accrued). One half (i.e., 50%) of any Financing Fee shall be credited (without duplication) against any Restructuring Fee or Sale Transaction Fee.

(f)    For the avoidance of any doubt, more than one fee may be payable pursuant to each of clauses (b), (d) and (e) above.

(g)    In addition to any fees that may be payable to Lazard and, regardless of whether any transaction occurs, the Company shall promptly reimburse Lazard for all reasonable and documented expenses incurred by Lazard (including travel and lodging, data processing and communications charges, courier services and other expenditures) and the reasonable and documented fees and expenses of counsel, if any, retained by Lazard; provided that in no event shall the aggregate amount of expenses reimbursed by the Company outside of a bankruptcy proceeding exceed $50,000 without the prior written consent of the Company (not to be unreasonably withheld, conditioned or delayed). For the avoidance of doubt, any expense limitation set forth herein shall in no way limit the Company's obligations under the Indemnification Letter (as defined in the Original Engagement Letter).

(h)     As part of the compensation payable to Lazard hereunder, the Company agrees that the Indemnification Letter (as defined in the Original Engagement Letter), which remains in full force and effect, shall also apply to Lazard's engagement hereunder.

(i)     All amounts referenced hereunder reflect United States currency and shall be paid promptly in cash after such amounts accrue hereunder.

Lazard's investment banking services shall not include serving as a dealer-manager in connection with any debt exchange. Any provision of dealer-manager services would be subject to Lazard's agreement to so act and to the execution of a separate agreement between the parties or an amendment to this agreement, in either case containing terms and conditions to be mutually agreed by the parties addressing such services, including an additional dealer-manager fee.

*Retention in Chapter 11 Proceedings:*

3.     In the event of the commencement of chapter 11 proceedings, the Company agrees that it will use best efforts to obtain prompt authorization from the Bankruptcy Court to retain Lazard on the terms and conditions set forth in this Agreement under the provisions of Section 328(a) of the Bankruptcy Code. Subject to being so retained, Lazard agrees that during the pendency of any such proceedings, it shall continue to perform its obligations under this Agreement and that it shall file interim and final applications for allowance of the fees and expenses payable to it under the terms of this Agreement pursuant to the applicable Federal Rules of Bankruptcy Procedure, and the local rules and order of the Bankruptcy Court. The Company shall supply Lazard with a draft of the application and proposed retention order authorizing Lazard's retention sufficiently in advance of the filing of such application and proposed order to enable Lazard and its counsel to review and comment thereon. Lazard shall be under no obligation to provide any services under this agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless Lazard's retention under the terms of this Agreement is approved under section 328(a) of the Bankruptcy Code by final order of the Bankruptcy Court, which order is acceptable to Lazard. The retention application shall note that in so agreeing to seek Lazard's retention under Section 328(a) of the Bankruptcy Code, the Company acknowledges that it believes that Lazard's general restructuring experience and expertise, its knowledge of the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company in pursuing any Amendment, Restructuring, Sale Transaction or Financing, that the value to the Company of Lazard's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the deferred fees, including the Amendment Fee, Restructuring Fee, Sale Transaction Fee, Partial Sale Transaction Fee and Financing Fee is reasonable regardless of the number of hours to be expended by Lazard's professionals in the performance of the services to be provided hereunder, and that the deferred fees shall not be considered to be "bonuses" or fee enhancements under applicable law.

*Other:*

4.     No fee payable to any third party, by the Company or any other person or entity, shall reduce or otherwise affect any fee payable hereunder to us.

5.   The Company will furnish or cause to be furnished to Lazard such current and historical financial information and other information regarding the business of the Company as Lazard may request in connection with this engagement.  The Company represents and warrants to Lazard that all of the foregoing information will be accurate and complete at the time it is furnished, and agrees to keep Lazard advised of all developments materially affecting the Company or its financial position.  In performing its services pursuant to this Agreement, Lazard shall be entitled to rely upon information furnished to it by Counsel, the Company or any third party and information that is publicly available, may assume the accuracy and completeness of such information and shall not assume any responsibility for independent verification of any such information.  Lazard will not, as part of its engagement, undertake any independent valuation or appraisal of any of the assets or liabilities of the Company or of any third party.

6.   In performing its services pursuant to this Agreement, Lazard is not assuming any responsibility for any services provided by Counsel to the Company or the decision of the Company or any other party to pursue (or not to pursue) any business strategy or to effect (or not to effect) any Amendment, Restructuring, Sale Transaction, Financing or other transaction.  Lazard shall not have any obligation or responsibility to provide "crisis management" for or business consultant services to the Company, and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements; nor shall Lazard be responsible for providing or deemed to have provided any tax, accounting, actuarial, legal or other specialist advice.

7.   It is understood and agreed that nothing contained in this Agreement shall constitute an express or implied commitment by Lazard or any of our affiliates to underwrite, place or purchase any securities in a financing or otherwise, which commitment shall only be set forth in a separate underwriting, placement agency or purchase agreement, as applicable, relating to the financing.

8.   On August 27, 2021, Pine Gate Renewables, LLC and Lazard entered into an indemnification letter (the "Indemnification Letter"), which remains in full force and effect and shall also apply to our engagement hereunder. In addition, Counsel agrees that no Indemnified Person (as defined in the Indemnification Letter) shall have any liability (whether direct or indirect, in contract or tort or otherwise) to Counsel or Counsel's partners related to, arising out of or in connection with our engagement. The Indemnification Letter and this Section 8 shall survive any termination of this engagement.

9.   In order to coordinate our efforts on behalf of the Company during the period of our engagement hereunder, Counsel and the Company will promptly inform Lazard of any discussions, negotiations, or inquiries regarding a potential transaction, including any such discussions or inquiries that have occurred during the six month period prior to the date of this Agreement.  In the event that Lazard receives an inquiry concerning any transaction, we will promptly inform Counsel and the Company of such inquiry.

10.   Our engagement hereunder may be terminated by Counsel (at the direction of the Company) or us only upon written notice by Counsel or us to the other party at any time (and, for the avoidance of doubt, not by any other action, conduct or event), without liability or continuing obligation to Counsel or the Company or us following any termination, except that (a) following any termination of our engagement we shall remain entitled to any fees accrued pursuant to Section

2 but not yet paid prior to such termination or expiration, as the case may be, and to reimbursement of reasonable and documented expenses incurred prior to such termination, and (b) in the case of termination by Counsel (on behalf of the Company), we shall remain entitled to full payment of all fees contemplated by Section 2 hereof in respect of any Transaction announced or for which a definitive agreement is reached during the period from the date hereof until one year following such termination unless the Company terminated this engagement due to a final judicial determination of actual fraud, bad faith, willful misconduct or gross negligence by Lazard.

11.  Lazard has been retained under this Agreement as an independent contractor to Counsel, on behalf of the Company, and nothing herein is intended to confer any rights or remedies as against Lazard upon any person (including Counsel or the management, the Board, employees, securityholders and creditors of the Company) other than Pine Gate.  In addition, it is understood and agreed that this Agreement and our engagement do not create a fiduciary relationship between Lazard and any person, including Counsel, the Company or its management, the Board, employees, securityholders and creditors.  No one, other than senior management or the Board (in their capacities as such) is authorized to rely upon the Counsel's engagement of Lazard, on behalf of the Company, or any statements, advice, opinions or conduct by Lazard.  Without limiting the foregoing, any advice, written or oral, rendered  in the course of the Counsel's engagement of Lazard, on behalf of the Company, are solely for the purpose of assisting senior management or the Board (in their capacities as such) in evaluating any Transaction and does not constitute a recommendation to Counsel or any stakeholder of the Company that such stakeholder might or should take in connection with any Transaction.   Counsel and the Company agree that, notwithstanding any termination of our engagement, any advice, written or oral, rendered by Lazard and the terms of our engagement hereunder may not be disclosed publicly or made available to third parties without the prior written consent of Lazard.  Notwithstanding the foregoing, nothing herein shall prohibit the Company from disclosing to any and all persons the tax treatment and tax structure of any transaction and the portions of any materials that relate to such tax treatment or tax structure.

12.  The Company agrees that upon announcement of a Transaction, the Company will include a statement in the press release relating thereto (if any), in a form reasonably acceptable to Lazard, to the effect that Lazard has acted as sole investment banker to the Company in connection with such Transaction. Lazard shall not issue any press release or other similar public disclosure or communication in connection with the Transaction without the prior written consent of the Company (not to be unreasonably withheld, conditioned or delayed) except that following announcement of a Transaction, Lazard may disclose its role as investment banker to the Company (i) in a deal announcement to employees of the Lazard Group, (ii) in Lazard's transactions list on www.lazard.com and (iii) in customary marketing, case study and "tombstone" materials, provided that neither of the foregoing communications shall contain any reference to any non-public financial terms of the Transaction without prior consent of the Company.

13. In connection with the services to be provided hereunder, Lazard may employ the services of its affiliates and may share with any such entity any information concerning the Company, provided that Lazard and such entities shall hold any nonpublic information confidential in accordance with their respective customary policies relating to nonpublic information.  Any such entity so employed shall be entitled to all of the benefits afforded to Lazard hereunder and

under the Indemnification Letter and shall be entitled to be reimbursed for its expenses on the same basis as Lazard.

14.  The provisions hereof shall inure to the benefit of and be binding upon the successors and assigns of Counsel, the Company, Lazard and any other person entitled to indemnity under the Indemnification Letter.  The Company's obligations pursuant to this Agreement shall be joint and several.  This Agreement and the related Indemnification Letter embody the entire agreement and understanding among the parties hereto and supersede any and all prior agreements, arrangements, and understandings, related to the matters provided for herein.     No waiver, amendment or other modification of this agreement shall be effective unless in writing and signed by each party to be bound thereby.

15.  This Agreement and any claim related directly or indirectly to this Agreement (including any claim concerning advice provided pursuant to our engagement hereunder) shall be governed by and construed in accordance with the laws of the State of New York without regard to the principle of conflicts of law.  No such claim shall be commenced, prosecuted or continued in any forum other than the courts of the State of New York located in the City and County of New York or the United States District Court for the Southern District of New York, and each of the parties hereby submits to the jurisdiction of such courts.  Each of Counsel and the Company hereby waives on behalf of itself and its successors and assigns any and all right to argue that the choice of forum provision is or has become unreasonable in any legal proceeding.  Each of Counsel and the Company waives all right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to or arising out of this Agreement or the engagement of Lazard pursuant to, or the performance by Lazard of the services contemplated by, this Agreement.

16. Notwithstanding anything to the contrary contained in this Agreement or the Indemnification Letter, in no event shall Counsel or any affiliate, attorney, partner, member, or employee thereof be liable in any capacity for any fee or expense reimbursement obligations pursuant to this Agreement or any amounts payable pursuant to the Indemnification Letter.

17. Lazard acknowledges and agrees that the work product produced by Lazard pursuant to this Agreement is intended for the purpose of facilitating the rendering by Counsel of legal advice to the Company and to constitute attorney work product, and that any communication to Counsel, including, without limitation, any correspondence, analyses, reports and related materials that Lazard prepares, is intended to constitute confidential and privileged communications.

*Definitions*

18. The term "Sale Transaction" means any transaction or series of transactions involving (a) an acquisition, merger, consolidation, or other business combination pursuant to which the business or assets of the Company are, directly or indirectly, combined with another company; (b) the acquisition, directly or indirectly, by a buyer or buyers (which term shall include a "group" of persons as defined in Section 13(d) of the Securities Exchange Act of 1934, as amended), of equity interests or options, or any combination thereof constituting a majority of the then outstanding stock of the Company or possessing a majority of the then outstanding voting power of the Company (except as may occur with current Stakeholders pursuant to a Restructuring); (c) any

other purchase, acquisition, agreement or commitment to sell, directly or indirectly, by a buyer or buyers (including, without limitation, any liquidator that participates in a sale process) of significant assets, securities or other interests of the Company or (d) the formation of a joint venture or partnership with the Company or direct investment in the Company for the purpose of effecting a transfer of an interest in the Company to a third party. For purposes hereof, any sale of newly issued securities (including securities held in treasury) shall be deemed a Financing and not a Sale Transaction.

19. The term "Aggregate Consideration" means, without duplication (x) the total amount of cash and the fair market value (as of consummation of the Sale Transaction) of all of the property paid and payable or committed (including amounts paid into escrow) to the Company and its affiliates and its and their respective securityholders in connection with the Sale Transaction (or any related transaction), including amounts paid and payable or committed in respect of convertible securities, preferred equity securities, warrants, stock appreciation rights, options or similar rights, whether or not vested, and, in the case of a "credit bid" or other contribution or exchange of Existing Obligations, the face value of such Existing Obligations. In the case of a sale of a majority of the equity interests of, or an otherwise controlling interest in, the Company, Aggregate Consideration shall also include the value of any interest which are not sold (calculated based on the amount paid for those interests that have been sold). In addition, Aggregate Consideration shall include the amount of all indebtedness and any other liabilities of the Company or relevant affiliate of the Company upon consummation of a Sale Transaction or, in the case of a sale of assets, all indebtedness and any other liabilities assumed or repaid by the Buyer (in each case other than any of the Company's subsidiaries or parent guarantees) including, without limitation, (i) (a) holdco facilities such as the FP Dev Holdco, the NPA 2023 Holdco, the BF Dev Holdco and the Pathward Facility and (b) preferred equity such as the Preferred Equity A and Preferred Equity B and (ii) project-level non-recourse indebtedness and tax equity. Aggregate Consideration shall also be deemed to include pension liabilities and guarantees of monies borrowed assumed, cancelled, exchanged or forgiven directly or indirectly by a third party. If the Aggregate Consideration is subject to increase by contingent payments related to future events, the portion of our fee relating thereto shall be calculated by us in good faith and paid to us upon consummation of the Sale Transaction.

20. The term "Restructuring" means, collectively, any restructuring, reorganization (whether or not pursuant to Chapter 11 of the United States Bankruptcy Code) and/or recapitalization of all or a significant portion of the Company's outstanding indebtedness (including bank debt, bond debt, and other on and off balance sheet indebtedness), trade claims, leases (both on and off balance sheet), and other litigation-related claims and obligations, or other liabilities (collectively, the "Existing Obligations") that is achieved, without limitation, through a solicitation of waivers and consents from the holders of Existing Obligations (collectively, the "Stakeholders"); rescheduling of the maturities of Existing Obligations; a change in interest rates, repurchase, settlement or forgiveness of Existing Obligations; conversion of Existing Obligations into equity or other securities; an exchange offer involving the issuance of new securities in exchange for Existing Obligations; the issuance of new securities, sale or disposition of assets, sale of debt or equity securities or other interests or other similar transaction or series of transactions.

21. The term "Amendment" means any amendment, modification or extension of any material terms of the Company's debt or other commitments or obligations, including any

preferred or tax equity or project-level debt, without limitation, through the execution of an amendment, forbearance, waiver or consent. Notwithstanding the foregoing, an Amendment shall exclude any amendments that are immaterial, technical or non-substantive in nature; provided, however, that for the avoidance of doubt, (i) any execution of an amendment, waiver or forbearance agreement or series of agreements that is in effect for more than 90 days in aggregate constitutes an Amendment, and (ii) any amendment, waiver or modification of covenants, change of control provisions or event of default provisions constitutes an Amendment. For the avoidance of doubt, the implementation of the Generate Capital recapitalization transaction on terms similar to the recapitalization being negotiated by the Company and Generate Capital (or affiliates thereof) as of August 19, 2025 shall constitute an Amendment of the Preferred Equity A and Preferred Equity B.

22. The term "Financing" means any transaction or series of transactions involving the public or private issuance, sale, or placement of newly-issued (including securities held in treasury) equity, equity-linked or debt securities, instruments, or obligations of the Company, as well as any federal, state or local government loan, grant or investment, and including any debtor-in-possession financing or exit financing in connection with a case under the Bankruptcy Code.

[*Signature Pages Follow*]

If the foregoing Agreement is in accordance with your understanding of the terms of our engagement, please sign and return to us the enclosed duplicate hereof.

Very truly yours,

LAZARD FRERES & CO. LLC

By: _____
Tyler Cowan
Global Head of Restructuring & Liability
Management

AGREED TO AND ACCEPTED
as of the date first written above:

LATHAM & WATKINS LLP

By: _____
Ray Schrock
Partner

PGR HOLDCO GP, LLC on behalf of itself
and its controlled subsidiaries and managed entities

By: _____
Ben Catt
Chief Executive Officer

If the foregoing Agreement is in accordance with your understanding of the terms of our engagement, please sign and return to us the enclosed duplicate hereof.

Very truly yours,

LAZARD FRERES & CO. LLC

By: _____
      Tyler Cowan
      Global Head of Restructuring & Liability
      Management

AGREED TO AND ACCEPTED
as of the date first written above:

LATHAM & WATKINS LLP

By: _____
      Ray Schrock
      Partner

PGR HOLDCO GP, LLC on behalf of itself
and its controlled subsidiaries and managed entities

By: _____
      Ben Catt
      Chief Executive Officer

## SCHEDULE I

The following table outlines the Sale Transaction fee schedule. The total fee shall be equal to the applicable percentage of the Aggregate Consideration, and for any transaction involving an Aggregate Consideration between the thresholds set forth below, the fee shall be determined by interpolating between the two closest percentages.

| Aggregate Consideration Threshold ($ in millions) | Applicable Fee % |
|---|---|
| $100 | 2.00% |
| $200 | 1.90% |
| $300 | 1.80% |
| $400 | 1.70% |
| $500 | 1.60% |
| $600 | 1.55% |
| $700 | 1.50% |
| $800 | 1.45% |
| $900 | 1.40% |
| $1,000 | 1.30% |
| $1,250 | 1.25% |
| $1,500 | 1.20% |
| $2,000 | 1.10% |
| $3,000 | 0.95% |
| $4,000+ | 0.85% |

<u>Exhibit 2</u>

Indemnification Letter

129350.0000001 DMS 353565452v4

# LAZARD

August 27, 2021

Pine Gate Renewables, LLC
130 Roberts Street
Asheville, NC 28801

Ladies and Gentlemen:

In connection with our engagement to advise and assist Pine Gate Renewables, LLC ("you") with the matters set forth in the engagement letter of even date herewith, you and we are entering into this letter agreement. It is understood and agreed that in the event that Lazard Frères & Co. LLC or any of our current or future affiliates, or any of our or their respective directors, officers, members, employees, agents or controlling persons, if any (each of the foregoing, including Lazard Frères & Co. LLC, being an "Indemnified Person"), become involved in any capacity in any action, claim, proceeding or investigation brought or threatened by or against any person, including your securityholders, related to, arising out of or in connection with our engagement, you will promptly reimburse each such Indemnified Person for its legal and other expenses (including the cost of any investigation and preparation) as and when they are incurred in connection therewith. You will indemnify and hold harmless each Indemnified Person from and against any losses, claims, damages, liabilities or expenses to which any Indemnified Person may become subject under any applicable federal or state law, or otherwise, related to, arising out of or in connection with our engagement, whether or not any pending or threatened action, claim, proceeding or investigation giving rise to such losses, claims, damages, liabilities or expenses is initiated or brought by you or on your behalf and whether or not in connection with any action, claim, proceeding or investigation in which you or any such Indemnified Person are a party, except to the extent that any such loss, claim, damage, liability or expense is found by a court of competent jurisdiction in a judgment which has become final in that it is no longer subject to appeal or review to have resulted primarily from such Indemnified Person's fraud, bad faith, willful misconduct or gross negligence. You also agree that no Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to you or your securityholders or creditors related to, arising out of or in connection with our engagement except to the extent that any loss, claim, damage or liability is found by a court of competent jurisdiction in a judgment which has become final in that it is no longer subject to appeal or review to have resulted primarily from such Indemnified Person's fraud, bad faith, willful misconduct or gross negligence. If multiple claims are brought against any Indemnified Person in an arbitration related to, arising out of or in connection with our engagement, and indemnification is permitted under applicable law with respect to at least one such claim, you agree that any arbitration award shall be conclusively deemed to be based on claims as to which indemnification is permitted and provided for hereunder, except to the extent the arbitration award expressly states that the award, or any portion thereof, is based solely on a claim as to which indemnification is not available.

If for any reason the foregoing indemnification is held unenforceable or otherwise unavailable, then you shall contribute to the loss, claim, damage, liability or expense for which such indemnification is held unenforceable in such proportion as is appropriate to reflect the relative benefits received, or sought to be received, by you and your securityholders and creditors on the one hand and the Indemnified Persons on the other hand in the matters contemplated by our engagement as well as the relative fault of yourselves and such persons with respect to such loss, claim, damage, liability or expense and any other relevant equitable considerations. You agree that for the purposes hereof the relative benefits received, or sought to be received, by you and your securityholders and creditors and the Indemnified Persons shall be deemed to be in the same proportion as (i) the total value actually paid to you and your securityholders and creditors, as the case may be, pursuant to any transaction for which we have been engaged to perform investment

7

banking services (subject to the terms of our engagement letter) bears to (ii) the fees actually paid to us in connection with such engagement; provided, however, that, to the extent permitted by applicable law, in no event shall we or any other Indemnified Person be required to contribute an aggregate amount in excess of the aggregate fees actually paid to us for such investment banking services. Your reimbursement, indemnity and contribution obligations under this agreement shall be in addition to any liability which you may otherwise have, shall not be limited by any rights we or any other Indemnified Person may otherwise have and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of yourselves, ourselves, and any other Indemnified Persons. In the event of a transaction that is a sale of all or a majority of your assets, you agree to use your commercially reasonable efforts to cause the buyer in such transaction to assume your obligations hereunder; provided, however, that if such buyer does not assume such obligations, you agree to provide us with a substitute indemnitor reasonably acceptable to us.

You agree that, without our prior written consent (which will not be unreasonably withheld), you will not settle, compromise or consent to the entry of any judgment in any pending or threatened claim, action, proceeding or investigation in respect of which indemnification or contribution could be sought hereunder (whether or not we or any other Indemnified Persons are an actual or potential party to such claim, action, proceeding or investigation); provided, that if such settlement, compromise or consent includes an unconditional release of each Indemnified Person from all liability arising out of such claim, action, proceeding or investigation, then our prior written consent shall not be required in connection therewith. No waiver, amendment or other modification of this agreement shall be effective unless in writing and signed by each party to be bound thereby. This agreement and any claim related directly or indirectly to this agreement shall be governed and construed in accordance with the laws of the State of New York (without giving regard to the conflicts of law provisions thereof). No such claim shall be commenced, prosecuted or continued in any forum other than the courts of the State of New York located in the City and County of New York or the United States District Court for the Southern District of New York, and each of us hereby submits to the jurisdiction of such courts. You hereby waive on behalf of yourself and your successors and assigns any and all right to argue that the choice of forum provision is or has become unreasonable. You (on your own behalf and, to the extent permitted by applicable law, on behalf of your securityholders and creditors) waive all right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to, arising out of or in connection with this agreement or our engagement. This agreement shall remain in effect indefinitely, notwithstanding any termination or expiration of our engagement.

*[Signature Page Follows]*

8

Very truly yours,

LAZARD FRERES & CO. LLC

By_____

Gregory Hort
Managing Director

AGREED TO AND ACCEPTED as of the date first above written:

PINE GATE RENEWABLES, LLC

By_____

Name: Ray Shem
Title:  CFO