## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

------------------------------------------------------------ x
                                                             :
In re:                                                       :    Chapter 11
                                                             :
PINE GATE RENEWABLES, LLC, *et al.*,                         :    Case No. 25-90669 (CML)
                                                             :
Debtors[1]                                                   :    (Jointly Administered)
                                                             :
------------------------------------------------------------ x

## ORDER (I) APPROVING THE DISCLOSURE STATEMENT; (II) SCHEDULING A CONFIRMATION HEARING; (III) ESTABLISHING VOTING RECORD DATE, VOTING DEADLINE, AND OTHER DATES; (IV) APPROVING PROCEDURES FOR SOLICITING, RECEIVING, AND TABULATING VOTES ON PLAN AND FOR FILING CONFIRMATION OBJECTIONS; (V) APPROVING FORM AND MANNER OF NOTICE AND OTHER DOCUMENTS; AND (VI) GRANTING RELATED RELIEF
### [Relates to Docket No. ___]

Upon the motion (the "***Motion***")[2] of the Debtors for entry of an order (this "***Order***"):

(a)     approving the adequacy of the *Disclosure Statement for Joint Chapter 11 Plan of Pine Gate Renewables, LLC and Its Debtor Affiliates* (as may be amended, modified, or supplemented from time to time, the "***Disclosure Statement***");

(b)     scheduling a hearing (the "***Confirmation Hearing***") on February 2, 2026, at [●]:00 [a.m./p.m.] (prevailing Central Time) (subject to the Court's availability) to consider confirmation of the *Joint Chapter 11 Plan of Pine Gate Renewables, LLC and Its Debtor Affiliates* (as may be amended, modified, or supplemented from time to time, the "***Plan***");

(c)     establishing January 26, 2026, at 4:00 p.m. (prevailing Central Time) as the deadline for (i) filing objections to the confirmation of the Plan (the "***Confirmation Objection Deadline***") and (ii) voting on the Plan (the "***Voting Deadline***");[3]

---

[1]     A complete list of each of the Debtors in these chapter 11 cases (the "***Chapter 11 Cases***") and the last four digits of each Debtor's taxpayer identification number (if applicable) may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/PGR (the "***Case Website***").  The Debtors' mailing address for the purposes of the Chapter 11 Cases is 130 Roberts Street, Asheville, North Carolina 28801.

[2]     Capitalized terms used but not defined herein have the meanings given to them in the Motion.

[3]     Ballots accepting or rejecting the Plan must be actually received by the Balloting Agent to be counted by the Voting Deadline, unless extended by the Debtors either (i) for any Holder of a Claim in a Voting Class by written

(d)     approving the form and manner of the notice of the Confirmation Hearing;

(e)     establishing the Voting Record Date (as defined below) and approving procedures for temporary allowance of Claims that are subject to an objection filed by the Debtors and the form and manner of the notice related thereto;

(f)     approving the Solicitation Procedures (as defined below) with respect to the Plan, and the forms of Ballots, the Notices of Non-Voting Status, the Opt-Out Release Form, and the Cover Letter (each as defined below); and

(g)     granting related relief.

and the Court having reviewed the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. § 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the record herein; and all objections, if any, to entry of this Order having been withdrawn, resolved, or overruled after due deliberation thereon; and the Court having determined that there is good and sufficient cause for the relief granted in the Order, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.     The Disclosure Statement is approved as containing adequate information within the meaning of section 1125 of the Bankruptcy Code, and the Debtors are authorized to distribute the Disclosure Statement and the Solicitation Packages in order to solicit votes on, and pursue confirmation of, the Plan.

---

(including by email) notice to such Holder or (ii) for an entire Voting Class by notice filed by the Debtors in the Chapter 11 Cases.

2.      The notice of the Disclosure Statement Hearing and the manner of service thereof was proper pursuant to Bankruptcy Rules 2002 and 3017 and Local Rules 2002-1 and 3017-1.

3.      Pursuant to Bankruptcy Rules 3020(b)(2) and 9006(c), the Confirmation Hearing shall be on February 2, 2026, at [●]:00 [a.m./p.m.] **(prevailing Central Time)** (subject to the Court's availability); *provided, however*, that the Confirmation Hearing may be continued from time to time by this Court or the Debtors without further notice to creditors or other parties in interest, other than an announcement at or before the Confirmation Hearing or any adjourned Confirmation Hearing or the filing of a notice or a hearing agenda providing for the adjournment on the docket of the Chapter 11 Cases.

4.      Pursuant to Bankruptcy Rule 3020(b)(1), the deadline to file any objections to confirmation of the Plan (each a "***Confirmation Objection***") shall be **January 26, 2026 at 4:00 p.m. (prevailing Central Time)**, which deadline may be extended, without further order of the Court, by the Debtors.

5.      Any Confirmation Objections shall be: (a) in writing; (b) conform to the Bankruptcy Rules, the Bankruptcy Local Rules, and the Complex Case Procedures; (c) state the name of the objecting party and the amount and nature of the Claim or Interest held by such objecting party; (d) state with particularity the legal and factual basis for the objection; and (e) be filed with the Court and served on the Notice Parties (as defined below) so that it is **actually received** on or before the Confirmation Objection Deadline, by the following parties (the "***Notice Parties***"):

      a.     <u>Pine Gate Renewables, LLC</u>: 130 Roberts Street, Asheville, North Carolina 28801, Attn: (Judith Hall, Chief Legal Officer & General Counsel);

      b.     <u>Co-Counsel to the Debtors</u>: (i) Latham & Watkins, LLP, (a) 1271 Avenue of the Americas, New York, New York 10020 (Attn:  Ray C. Schrock

(ray.schrock@lw.com), Andrew M. Parlen (andrew.parlen@lw.com), and Alexander M. Welch (alex.welch@lw.com)); (b) 330 North Wabash Avenue, Suite 2800, Chicago, IL 60611 (Attn:  Jason B. Gott (jason.gott@lw.com) and Jonathan C. Gordon (jonathan.gordon@lw.com)); and (ii) Hunton Andrews Kurth LLP, 600 Travis Street, Suite 4200, Houston, Texas 77002 (Attn: Timothy A. ("Tad") Davidson II (taddavidson@hunton.com), Philip M. Guffy (pguffy@hunton.com), and Brandon Bell (bbell@hunton.com));

c.  <u>Office of the United States Trustee for Region 7</u>: 515 Rusk Street, Suite 3516, Houston, TX 77002 (Attn: Andrew Jimenez (Andrew.Jimenez@usdoj.gov) and C. Ross Travis (c.ross.travis@usdoj.gov));

d.  <u>Counsel to Brookfield</u>: (i) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, Suite 2400, New York, NY 10019, Attn: Brian S. Hermann (bhermann@paulweiss.com) and Robert A. Britton (rbritton@paulweiss.com) and (ii) Porter Hedges LLP, 1000 Main St., 36th Floor, Houston, Texas 77002, Attn: John F. Higgins (jhiggins@porterhedges.com) and Megan Young-John (myoung-john@porterhedges.com);

e.  <u>Counsel to Carlyle</u>: (i) Milbank LLP, 55 Hudson Yards, New York, NY 10001, Attn: Tyson Lomazow (tlomazow@milbank.com) and Andrew Harmeyer (aharmeyer@milbank.com) and (ii) Haynes and Boone LLP, 1221 McKinney Street, Suite 4000, Houston, TX 77010, Attn: Ian Peck (ian.peck@haynesboone.com) and Charles Beckham (charles.beckham@haynesboone.com);

f.  <u>Counsel to Fundamental</u>: Sidley Austin LLP, 1000 Louisiana Street, Suite 5900, Houston, TX 77002, Attn: Duston K. McFaul (dmcfaul@sidley.com), Maegan Quejada (mquejada@sidley.com), and Ishani Patel (ishani.patel@sidley.com); and

g.  <u>Counsel to Creditors' Committee</u>: [ ● ].

6.  Any Confirmation Objections that fail to comply with the requirements set forth in this Order may, subject to the Court's discretion, not be considered and may be overruled.

7.  The Debtors are authorized to file and serve an initial supplement to the Plan (the "***Plan Supplement***") on or before January 19, 2026, and to further supplement the Plan Supplement as necessary thereafter.  If the Confirmation Objection Deadline is extended, the

Debtors shall be authorized to file the Plan Supplement by seven (7) days before such extended Confirmation Objection Deadline.

8.      The deadline to file any materials in support of confirmation of the Plan shall be January 29, 2026.

9.      Pursuant to Bankruptcy Rule 3017(d), December 18, 2025, shall be the record date (the "***Voting Record Date***") with respect to all Claims.  The Debtors shall use the Voting Record Date to determine which Persons and Entities are entitled to, as applicable, receive Solicitation Packages, vote to accept or reject the Plan, and receive the Notice of Non-Voting Status.

10.     Holders of Claims in a Voting Class that, as of the Voting Record Date, are subject to a pending objection or motion for estimation by the Debtors are not entitled to vote the disputed portion of their Claim, unless such Claim is temporarily allowed by this Court for voting purposes pursuant to Bankruptcy Rule 3018(a).  Holders of Claims in a Voting Class that dispute the amount of their Claim as it appears on their Ballot may contact the Balloting Agent prior to the Voting Deadline to request a replacement Ballot.  To the extent that the Debtors disagree with a Holder's asserted Claim amount and a resolution amongst the parties is not timely reached, such Holder shall be permitted to vote in the amount set forth in their original Ballot; *provided* that, such party shall, prior to the Rule 3018(a) Motion Deadline (as defined below), be permitted to file a Rule 3018(a) Motion to seek the Court's authorization to vote in a different amount.

11.     The Balloting Agent shall assist the Debtors in, among other things, (a) serving the Notice of Non-Voting Status, and the related Opt-Out Release Forms to Holders of Claims and Interests in the Non-Voting Classes (except Classes 5 and 7) and any other non-voting parties entitled to notice, as applicable, (b) serving Solicitation Packages to Holders of Claims in the Voting Classes, (c) soliciting votes on the Plan, (d) receiving, tabulating, and reporting on (x) the

5

Ballots cast for or against the Plan and (y) any opt-out elections of Holders of Claims and Interests, (e) responding (but, in any event, not providing legal advice in connection with such responses) to inquiries from creditors and other stakeholders relating to the Plan, the Disclosure Statement, the Ballots, the Notices, and matters related thereto, including, without limitation, the procedures and requirements for voting to accept or reject the Plan and Confirmation Objections, and (f) if necessary, contacting creditors regarding the Plan and their Ballots.

12.     The Balloting Agent is also authorized to accept Ballots and Opt-Out Release Forms via electronic online transmission solely through a customized online balloting portal on the Case Website.  The Balloting Agent will not count or consider for any purpose: any Ballot or Opt-Out Release Form transmitted by email or other electronic means except for Ballots submitted through the Balloting Agent's online balloting portal.  The encrypted ballot data and audit trail created by electronic submission through the Balloting Agent's online balloting portal shall become part of the record of any Ballot or Opt-Out Release Form submitted electronically through the balloting portal and the creditor's electronic signature shall be deemed to be immediately legally valid and effective.

13.     The Notices and Ballots to be used in connection with the solicitation of votes on, and confirmation of, the Plan (as applicable) are hereby approved in full.

14.     The Debtors shall cause Solicitation Packages and Ballots to be transmitted to all Holders of Claims in Classes 3(a), 3(b), 3(c) and 4.  Classes 1 and 2 are Unimpaired and the Holders of such Claims are conclusively presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code, and the Debtors are not required to solicit their vote with respect to such Claims.  Classes 6 and 8 are Impaired and the Holders of such Claims or Interests are deemed to

reject the Plan pursuant to section 1126(g) of the Bankruptcy Code, and the Debtors are not required to solicit their vote with respect to such Claims or Interests.

15. The Debtors shall not be obligated to deliver Solicitation Packages or Ballots to Holders of Claims or Interests in the Non-Voting Classes. In accordance with Bankruptcy Rule 3017(d), the Debtors shall serve, or cause to be served, to the Holders of Claims and Interests in the Non-Voting Classes (except for Classes 5 and 7[4]), as well as Holders of Claims in a Voting Class that, as of the Voting Record Date, are subject to a pending objection by the Debtors, a notice substantially in the form of Exhibit 2 attached hereto (the "***Notice of Non-Voting Status***") together with the related Opt-Out Release Form, attached as Schedule A to the Notice of Non-Voting Status, in lieu of Solicitation Packages.

16. Notwithstanding anything else to contrary herein, only a copy of the Confirmation Hearing Notice shall be distributed to Holders, as of the Voting Record Date, of General Administrative Claims, DIP Facility Claims, and Priority Tax Claims, which are unclassified Claims under the Plan.

17. The Debtors are authorized to transmit, or cause to be transmitted to Holders of Claims in the Voting Classes, within three (3) Business Days following entry of this Order (or as soon as practicable thereafter, but no later than December 29, 2025), by email where available and otherwise by United States mail, first-class postage prepaid, personal service, or overnight delivery, a solicitation package (the "***Solicitation Package***") containing a printed version, or other

---

[4] The Debtors shall not be required to serve a Notice of Non-Voting Status or any other bankruptcy notice on Holders of Class 5 – Intercompany Claims or Class 7 – Intercompany Interests. Because such Claims and Interests are held by the Debtors or their affiliates the receipt of notice can be presumed, and such presumption shall constitute adequate notice, without the necessity of actual delivery thereof.

electronic means (such as a QR code to save unnecessary costs),[5] of the following to holders of

Claims in the Voting Classes that are eligible to vote on the Plan:

    (a)    a notice of the Confirmation Hearing, the Confirmation Objection Deadline, and the Voting Deadline in substantially the form attached as <u>Exhibit 1</u> to this Order (the "***Confirmation Hearing Notice***");

    (b)    the Disclosure Statement;

    (c)    the Plan (which may be furnished in the Solicitation Package as Exhibit A to the Disclosure Statement);

    (d)    this Order, in its entered form (without exhibits attached);

    (e)    a cover letter from the Debtors explaining the solicitation process and urging Holders of Claims in the Voting Classes to vote to accept the Plan, in substantially the form attached as <u>Exhibit 5</u> to this Order;

    (f)    copies of any letter(s) from any statutory committee recommending acceptance of the Plan; and

    (g)    a Ballot and instructions, appropriate for the specific Holder, in substantially the forms attached as <u>Exhibits 3-A</u>, <u>3-B</u>, <u>3-C</u>, and <u>4</u> hereto (with prepaid, pre-addressed business reply envelope).

    18.    The Debtors are authorized, pursuant to Bankruptcy Rule 2002(m), to serve, or

cause to be served, the Solicitation Packages, the Confirmation Hearing Notice, and Notice of

Non-Voting Status by email, where available, and otherwise by mail.

    19.    The Debtors (a) shall serve the Confirmation Hearing Notice on the Debtors'

creditor matrix, all Holders of Interests as of the Voting Record Date, the Notice Parties, and any

other party that has requested notice in the Chapter 11 Cases, and (b) are authorized, but not

---

[5]    In the event the Debtors, in their discretion, employ a QR code, only the Disclosure Statement (with all exhibits annexed thereto, including the Plan) and Proposed Order (without exhibits attached) shall be included thereon; the Confirmation Hearing Notice, Cover Letter, Ballot (with return envelope), and statutory committee letter(s), if any, shall be distributed as part of the Solicitation Package in hard copy. Solicitation materials included in a QR code shall be made available in hard copy upon request to the Balloting Agent, at no cost to the requesting party.

directed, to publish the Confirmation Hearing Notice (or a substantially similar notice) within three (3) Business Days after entry of this Order (or as soon as practicable thereafter, but no later than December 29, 2025) in a national newspaper and the shall be authorized, but not directed, to publish the Confirmation Hearing Notice (or a substantially similar notice) in local newspapers, trade journals or similar publications (such publication notices described in this paragraph, the "***Publication Notice***").  The Debtors shall also, within three (3) Business Days after entry of this Order (or as soon as practicable thereafter) publish the Confirmation Hearing Notice on the Case Website.

20.     The Publication Notice shall constitute sufficient notice of the Confirmation Hearing and the Confirmation Objection Deadline to Persons who do not otherwise receive notice by mail as provided for in this Order.

21.     Opt-Out Release Forms opting out of the Third-Party Release set forth in Article 10.3 of the Plan must be received by the Balloting Agent on or before **January 26, 2026, at 4:00 p.m. (prevailing Central Time)** (the "***Release Opt-Out Deadline***").  Any Holder of a Claim or Interest in the Non-Voting Classes will be deemed to consent to and grant the Third-Party Release unless such Holder affirmatively opts out of the Third-Party Release on or before the Release Opt-Out Deadline.

22.     Ballots for accepting or rejecting the Plan must be received by the Balloting Agent on or before **January 26, 2026, at 4:00 p.m. (prevailing Central Time)** to be counted, subject to the Debtors' right, in its sole discretion, to accept and count late Ballots.

23.     Any timely received Ballot, or untimely Ballot that the Debtors, in their sole discretion, elect to accept and count, that contains sufficient information to permit the identification of the claimant and is cast as an acceptance or rejection of the Plan shall be counted;

9

*provided*, *however*, that any timely received Ballot that is cast as an acceptance of the Plan but that also purports to opt-out of the Third-Party Release will be treated as a Ballot accepting the Plan and granting the aforementioned release.  The foregoing general procedures shall be subject to the following exceptions:

(a) if a Claim is deemed Allowed in accordance with the Plan, such Claim is Allowed for voting purposes in the deemed Allowed amount set forth in the Plan;

(b) a Claim for which a Proof of Claim has been timely filed and that is not subject to a pending objection or motion for estimation by the Debtors as of the Voting Record Date, shall be temporarily allowed for voting purposes only, and not for purposes of allowance or distribution, in the amount set forth in its Proof of Claim; provided that if the amount set forth in such Proof of Claim is noted as contingent, unliquidated, or disputed the amount in which such Claims is entitled to vote shall be the greater of $1.00 and the amount, if any, not denoted as contingent, unliquidated or disputed in such Proof of Claim; *provided, however*, if the Holder of such disputed Claim disagrees with the Debtors' classification or the amount in which such Holder's Claim is entitled to vote on the Plan (each as set forth in the applicable Ballot) the Holder of such disputed Claim may file with the Court and serve on the Notice Parties a motion (each, a "***Rule 3018(a) Motion***") **by no later than January 12, 2026, at 5:00 p.m. (prevailing Central Time) (the "*Rule 3018(a) Motion Deadline*") so as to be <u>actually received</u>** by Rule 3018(a) Motion Deadline.  As to any Holder filing a Rule 3018(a) Motion, such Holder's Ballot will be counted as provided in this Order except as may be otherwise ordered by the Court;

(c) a Claim for which the filing of a Proof of Claim was not required as a prerequisite for its allowance pursuant to the terms of Claims Bar Date Order or for which the Claims Bar Date has not passed, and for which no Proof of Claim has been filed, shall be entitled to vote in its scheduled amount;

(d) if a Claim has been estimated or otherwise allowed for voting purposes by order of the Court, such Claim is temporarily allowed in the amount so estimated or allowed by the Court for voting purposes only, and not for purposes of allowance or distribution;

(e) subject to subsections (f) and (g) below, if a Claim is not listed on the Schedules, or is scheduled at zero, in an unknown amount, or, as unliquidated, contingent, or disputed, (or otherwise does not, as of the Voting Record Date, have an outstanding amount due greater than zero) and a Proof of Claim was not (1) timely filed by the deadline for filing Proofs of Claim or (2) deemed timely filed by an order of the Court before the Voting Deadline, the Debtors propose that such Claim be disallowed for voting purposes and for purposes of allowance and distribution

10

pursuant to Bankruptcy Rule 3003(c); *provided, however*, that a Claim listed in the Schedules as contingent, unliquidated, or disputed for which the Claims Bar Date has not yet passed may vote in the amount of $1.00;

(f)     a Claim by a counterparty to an Executory Contract or Unexpired Lease that appears on the Debtors' Cure Schedules and is scheduled at an amount greater than zero and has an outstanding amount due greater than zero is entitled to vote in the amount listed in the Cure Schedules that remains outstanding; *provided* that if the Claim appears in a different amount in one or more of the Debtors' Cure Schedules, the amount for purposes of voting shall be the amount appearing in the most recent Schedule filed with the Court;

(g)     if a counterparty to an Executory Contract or Unexpired Lease with a Claim listed on the Schedules or the Cure Schedules at zero, in an unknown amount, or, as unliquidated, contingent, or disputed (or otherwise does not, as of the Voting Record Date, have an outstanding amount due greater than zero) and whose Executory Contract or Unexpired Lease has, as of the Voting Record Date, not yet expired or been rejected by the Debtors, and such counterparty requests a Ballot prior to the Voting Deadline, such Claim may be voted in the amount of $1.00;

(h)     where any portion of a single Claim has been transferred to a transferee, all Holders of any portion of such single Claim may be treated as a single creditor for purposes of the numerosity requirements in section 1126 of the Bankruptcy Code;

(i)     with respect to any transferred Claim, the transferee shall be entitled to receive a Solicitation Package and, if the Holder of such Claim is entitled to vote with respect to the Plan, cast a Ballot on account of such Claim only if all actions necessary to effectuate the transfer of the Claim pursuant to Bankruptcy Rule 3001(e) have been completed by the Voting Record Date.  In the event a Claim is transferred after the Voting Record Date, the transferee of such Claim shall be bound by any vote on the Plan made by the Holder of such Claim as of the Voting Record Date;

(j)     notwithstanding anything to the contrary contained herein, any creditor who has filed or purchased duplicate Claims within the same Voting Class may be provided with only one Solicitation Package and one Ballot for voting a single Claim in such Class, regardless of whether the Debtors have objected to such duplicate Claims;

(k)     if a Proof of Claim has been amended by a later Proof of Claim that is filed on or prior to the Voting Record date, the later filed amended Proof of Claim shall be entitled to vote in a manner consistent with these tabulation rules, and the earlier proof of claim shall be disallowed for voting purpose, regardless of whether the Debtors have objected to such amended claim.  Except as otherwise ordered by the Court, any amendments to Proofs of Claim after the Voting Record Date shall not be considered for purposes of these tabulation rules;

11

(l)     notwithstanding anything to the contrary contained herein, to the extent a lender agent maintains the list of Holders of Claims in a particular Voting Class, such agent shall provide the Balloting Agent a list of such Holders, including the name, physical address, e-mail address, and voting amount for each Holder as of the Voting Record Date in excel format within one (1) business day after the Voting Record Date. For the purpose of establishing voting amounts, proofs of claim filed by such Holders shall be disregarded;

(m)    if an objection to a Claim or any portion thereof has been filed before the Voting Record Date, then the Debtors propose that such Claim be temporarily disallowed for voting purposes only and not for the purposes of allowance or distribution, except to the extent and in the manner as may be set forth in the objection or an order granting such claimant's motion under Bankruptcy Rule 3018(a); and

(n)    any Ballot cast in an amount in excess of the Allowed amount of the relevant Claim will only be counted to the extent of such Allowed Claim.

24.    The following Ballots shall not be counted or considered for any purpose:

(a)    any Ballot received after the Voting Deadline unless the Debtors have granted an extension of the Voting Deadline in writing with respect to such Ballot;

(b)    any Ballot that is illegible or contains insufficient information to permit the identification of the claimant;

(c)    any Ballot cast by a Person or Entity that does not hold a Claim in a Voting Class;

(d)    any Ballot that is properly completed, executed and timely filed, but (1) does not indicate an acceptance or rejection of the Plan, (2) indicates both an acceptance and rejection of the Plan, or (3) partially accepts and partially rejects the Plan;

(e)    any Ballot submitted by email or other electronic means not using the Balloting Agent's online balloting portal;

(f)    any unsigned Ballot;

(g)    In the event that (i) a Ballot, (ii) a group of Ballots within a Voting Class received from a single creditor, or (iii) a group of Ballots received from the various Holders of multiple portions of a single Claim partially reject and partially accept the Plan, such Ballots may not be counted in the Debtors' discretion;

(h)    any Ballot sent to the Debtors, the Debtors' agents/representatives (other than the Balloting Agent), or the Debtors' financial or legal advisors; and

(i)    any Ballot not cast in accordance with the procedures approved in this Order.

24.    Any duplicate Ballots will only be counted once.

12

25.     Whenever two or more Ballots are cast which attempt to vote the same Claim before the Voting Deadline, the last valid Ballot received by the Balloting Agent before the Voting Deadline will be deemed to reflect the voter's intent and thus to supersede any prior Ballots. This procedure is without prejudice to the Debtors' rights to object to the validity of the superseding Ballot(s) on any basis permitted by law and, if the objection is sustained, to count the first Ballot for all purposes.

26.     Claims splitting is not permitted and creditors who vote must vote all of their Claims within a particular Class to either accept or reject the Plan.

27.     Each creditor shall be deemed to have voted the full amount of its Claim. Unless otherwise ordered by this Court, questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawal of Ballots shall be determined by the Balloting Agent and the Debtors, which determination shall be final and binding.

28.     Notwithstanding anything contained herein to the contrary, the Balloting Agent, in its discretion, may contact parties that submitted Ballots to cure any defects in the Ballots.

29.     If, with respect to each Debtor, a Class contains Claims eligible to vote and no Holders of Claims eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be deemed rejected by the Holders of Claims in such Class.

30.     Unless waived, any defects or irregularities in connection with deliveries of Ballots to the Debtors by Holders of Claims eligible to vote must be cured within such time as the Debtors or this Court determines. Neither the Debtors, the Balloting Agent, or any other Person or Entity shall be under any duty to provide notification of defects or irregularities with respect to such deliveries of Ballots, nor shall any of the foregoing incur any liability for failure to provide such notification. Unless otherwise directed by this Court, delivery of defective or irregular Ballots to

13

the Debtors by Holders of Claims eligible to vote shall not be deemed to have been made until such defects or irregularities have been cured or waived.  Ballots previously furnished to the Debtors (and as to which any defects or irregularities have not been cured or waived) shall not be counted.

31.     The Debtors, in their discretion, and subject to contrary order of this Court, may waive any defect in any Ballot at any time, either before or after the close of voting and without notice.

32.     Subject to contrary order of this Court, the Debtors reserve the absolute right to reject any and all Ballots not proper in form or timely submitted on or before the Voting Deadline, the acceptance of which would, in the opinion of the Debtors, not be in accordance with the provisions of the Bankruptcy Code; *provided*, *however*, that such invalid Ballots shall be documented in the voting results filed with this Court.

33.     The service of the Solicitation Packages, Notices, and other documents described herein in the time and manner set forth in this Order shall constitute adequate and sufficient notice of the Confirmation Hearing and the Confirmation Objection Deadline and no other or further notice is necessary.

34.     The Debtors are not required to send Solicitation Packages, individual solicitation materials, or other Notices to (a) any creditor on account of a Claim if that has already been paid in full, (b) any creditor on account of a clearly duplicative Claim, or (c) the Holder of a Claim that has been disallowed in full by order of the Court.

35.     With respect to addresses from which one or more prior notices served in the Chapter 11 Cases were returned as undeliverable or from which mailings made pursuant to this Order are returned as undeliverable, the Debtors are excused from distributing Notices and

14

Solicitation Packages, as applicable, to those Persons or Entities listed at such addresses if the Debtors are not provided with an accurate address or forwarding address for such Persons or Entities before the Voting Record Date.  With respect to addresses from which Notices or Solicitation Packages are returned as undeliverable, the Debtors are excused from re-mailing such Notices or Solicitation Packages or any other materials related to voting or confirmation of Plan to those entities listed at such addresses, unless the Debtors are provided with accurate addresses for such entities before the Voting Record Date.  Failure to attempt to re-deliver Notices and Solicitation Packages, as applicable, to such Persons or Entities shall not constitute inadequate notice of the Confirmation Hearing or the Voting Deadline or a violation of Bankruptcy Rule 3017(d).

36.     The Balloting Agent shall retain all paper copies of Ballots and all solicitation-related correspondence for one (1) year following the Effective Date, whereupon, the Balloting Agent is authorized to destroy and/or otherwise dispose of all paper copies of Ballots; printed solicitation materials including unused copies of the Solicitation Package (whether in hard copy or by QR code); and all solicitation-related correspondence (including undeliverable mail), in each case unless otherwise directed by the Debtors or the Clerk of the Court in writing within such one (1) year period.

37.     The Debtors are authorized to make non-material changes to the Disclosure Statement, the Plan, the Ballots, the Confirmation Hearing Notice, the Notice of Non-Voting Status, the Opt-Out Release Forms, and related documents and any other materials in the Solicitation Package without further order of this Court, including, without limitation, changes to correct typographical and grammatical errors and to make conforming changes among the Disclosure Statement, the Plan, the Ballots, the Confirmation Hearing Notice, the Notice of Non-

Voting Status, the Opt-Out Release Forms, and related documents or other materials in the Solicitation Package before their distribution and publication.

38.     The Debtors are authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Order.

39.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Signed: _____, 2025

_____
UNITED STATES BANKRUPTCY JUDGE

16

## **EXHIBIT 1**

Confirmation Hearing Notice

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

------------------------------------------------------------- x

In re:                             :    Chapter 11

PINE GATE RENEWABLES, LLC, *et al.*,      :    Case No. 25-90669 (CML)

       Debtors[1]                 :    (Jointly Administered)

------------------------------------------------------------- x

**NOTICE OF (A) APPROVAL OF DISCLOSURE
STATEMENT, (B) PLAN CONFIRMATION HEARING
AND (C) DEADLINE TO OBJECT TO CONFIRMATION OF PLAN**

> **YOU ARE RECEIVING THIS NOTICE BECAUSE YOUR RIGHTS MAY BE
> AFFECTED BY THE PLAN.  THEREFORE, YOU SHOULD READ THIS NOTICE
> CAREFULLY AND DISCUSS IT WITH YOUR ATTORNEY.  IF YOU DO NOT HAVE
> AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.**

**TO:**   **ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN PINE GATE
RENEWABLES, LLC AND ITS AFFILIATED DEBTORS AND DEBTORS IN
POSSESSION AND ALL OTHER PARTIES IN INTEREST IN THE ABOVE-
CAPTIONED CHAPTER 11 CASES**

       **PLEASE TAKE NOTICE THAT** on November 20, 2025, Pine Gate Renewables, LLC
and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11
cases (together, the "***Debtors***"), filed the *Joint Chapter 11 Plan of Pine Gate Renewables, LLC
and Its Debtor Affiliates* [Docket No. [●]] (as may be amended from time to time, the "***Plan***"),
and *Disclosure Statement for Joint Chapter 11 Plan of Pine Gate Renewables, LLC and Its Debtor
Affiliates* [Docket [●]] (as amended, modified, or supplemented from time to time,
the "***Disclosure Statement***").[2] On [ ● ], the Bankruptcy Court entered an order [Docket No. [●]]
that, among other things, approved the Disclosure Statement and established **January 26, 2026,
at 4:00 p.m. (prevailing Central Time)** as the deadline for objecting to confirmation of the Plan
(the "***Objection Deadline***") and **February 2, 2026, at [ ● ]:00 [a.m./p.m.] (prevailing Central
Time)** as the date and time of the hearing to consider confirmation of the Plan (the "***Confirmation
Hearing***").

---

[1]    A complete list of each of the Debtors in these chapter 11 cases (the "***Chapter 11 Cases***") and the last four digits
of each Debtor's taxpayer identification number (if applicable) may be obtained on the website of the Debtors'
claims and noticing agent at https://omniagentsolutions.com/PGR.  The Debtors' mailing address for the purposes
of the Chapter 11 Cases is 130 Roberts Street, Asheville, North Carolina 28801.

[2]    Capitalized terms used but not defined herein have the meanings given to them in the Plan.

If you wish to review the Plan, you may receive a copy of the Plan free of charge from Omni Agent Solutions, Inc., the balloting agent retained by the Debtors in these Chapter 11 Cases ("**Omni**"), by: (i) calling the Debtors' restructuring hotline at (747) 263-0193 (international) or +1(888) 812-2572 (U.S./Canada, toll free); (ii) visiting the Debtors' restructuring website at: https://omniagentsolutions.com/PGR; (iii) via the QR Code below; or (iv) sending an email to PGRInquiries@OmniAgnt.com with "PGR Solicitation Inquiry" in the subject line. You may also obtain copies of any pleadings filed in these chapter 11 cases for a fee via PACER at: https://www.txs.uscourts.gov/bankruptcy. Please be advised that Omni is authorized to answer questions and provide additional copies of solicitation materials but may **not** advise you as to whether you should object to the Plan.



The Bankruptcy Court can confirm the Plan and bind all Holders of Claims and Interests if, after approval of the Disclosure Statement and the solicitation of votes to accept or reject the Plan, it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of the Claims in each Voting Class who vote on the Plan and if the Plan otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code. If the requisite acceptances are not obtained, the Bankruptcy Court nonetheless may confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, each Class rejecting the Plan and (b) otherwise satisfies the requirements of section 1129 of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, it will be binding on all Holders of Claims and Equity Interests whether or not a particular Holder was entitled to vote, voted, or affirmatively voted to reject the Plan.

The Confirmation Hearing to consider confirmation of the Plan will commence on **February 2, 2026, at [ ● ]:00 [a.m./p.m.] (prevailing Central Time)**, before the Honorable Judge Christopher M. Lopez, United States Bankruptcy Judge, in Courtroom 402 of the United States Bankruptcy Court for the Southern District of Texas, 515 Rusk Street, Houston, Texas 77002 (or via telephonic or other electronic means, as the Bankruptcy Court may direct). The Confirmation Hearing may be continued from time to time by the Bankruptcy Court or the Debtors without further notice other than by such adjournment being announced in open court or by a notice of adjournment filed with the Bankruptcy Court and served on such parties as the Bankruptcy Court may order. Moreover, the Plan may be modified or amended, if necessary, pursuant to section 1127 of the Bankruptcy Code, before, during or as a result of the Confirmation Hearing, without further notice to parties in interest.

## CRITICAL INFORMATION REGARDING OBJECTING TO THE PLAN

> **ARTICLE 10 OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

Confirmation Objection Deadline. The deadline for filing Confirmation Objections is **January 26, 2026, at 4:00 p.m. (prevailing Central Time)**.

Any objection to the confirmation of the Plan must: (a) be made in writing, (b) conform to the Bankruptcy Rules, the Bankruptcy Local Rules, and the Complex Case Procedures, (c) set forth the name of the objector and the nature and amount of any claim or interest asserted by the objector against or in the Debtors, (d) state with particularity the legal and factual basis for the objection, and (e) be filed with the Court and served so as to be **actually received** no later than the Confirmation Objection Deadline by the parties listed below (the "*Notice Parties*"). **CONFIRMATION OBJECTIONS NOT TIMELY FILED AND SERVED IN THE MANNER SET FORTH HEREIN MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND MAY BE OVERRULED WITHOUT FURTHER NOTICE.**

a. <u>Counsel to the Debtors</u>: (i) Latham & Watkins, LLP, (a) 1271 Avenue of the Americas, New York, New York 10020, Attn: Ray C. Schrock (ray.shrock@lw.com), Andrew M Parlen (Andrew.parlen@lw.com), Alex Welch (alex.welch@lw.com) and (b) 330 North Wabash Avenue, Suite 2800, Chicago, IL 60611, Attn: Jason Gott (Jason.gott@lw.com) and Jonathan Gordon (jonathan.gordon@lw.com); and (ii) Hunton Andrews Kurth LLP, 600 Travis Street, Suite 4200, Houston, Texas 77002,Attn: Timothy A. ("Tad") Davidson II (taddavidson@hunton.com), Philip M. Guffy (pguffy@hunton.com), and Brandon Bell (bbell@hunton.com);

b. <u>Office of the United States Trustee for Region 7</u>: 515 Rusk Street, Suite 3516, Houston, TX 77002, Attn: Andrew Jimenez (Andrew.Jimenez@usdoj.gov) and C. Ross Travis (C.Ross.Travis@usdoj.gov);

c. <u>Counsel to Brookfield</u>: (i)Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, Suite 2400, New York, NY 10019, Attn: Brian S. Hermann (bhermann@paulweiss.com) and Robert A. Britton (rbritton@paulweiss.com) and (ii) Porter Hedges LLP, 1000 Main St., 36th Floor, Houston, Texas 77002, Attn: John F. Higgins (jhiggins@porterhedges.com) and Megan Young-John (myoung-john@porterhedges.com);

d. <u>Counsel to Carlyle</u>: (i) Milbank LLP, 55 Hudson Yards, New York, NY 10001, Attn: Tyson Lomazow (tlomazow@milbank.com) and Andrew Harmeyer (aharmeyer@milbank.com) and (ii) Haynes and Boone LLP, 1221 McKinney Street, Suite 4000, Houston, TX 77010, Attn: Ian Peck (ian.peck@haynesboone.com) and Charles Beckham (charles.beckham@haynesboone.com);

e. <u>Counsel to Fundamental</u>: Sidley Austin LLP, 1000 Louisiana Street, Suite 5900, Houston, TX 77002, Attn: Duston K. McFaul (dmcfaul@sidley.com), Maegan Quejada (mquejada@sidley.com), and Ishani Patel (ishani.patel@sidley.com); and

f. <u>Counsel to the Creditors' Committee</u>: [●].

## ADDITIONAL INFORMATION

**THE PLAN CONTAINS RELEASE, EXCULPATION AND INJUNCTION PROVISIONS. THESE PROVISIONS ARE SET FORTH IN APPENDIX A HERETO. YOU SHOULD REVIEW THESE PROVISIONS CAREFULLY.**

Dated:  [ ● ], 2025
        Houston, Texas

*/s/DRAFT*

**HUNTON ANDREWS KURTH LLP**
Timothy A. ("Tad") Davidson II (Texas Bar No. 24012503)
Philip M. Guffy (Texas Bar No. 24113705)
Brandon Bell (Texas Bar No. 24127019)
600 Travis Street, Suite 4200
Houston, TX 77002
Telephone:  713-220-4200
Email:  taddavidson@Hunton.com
        pguffy@Hunton.com
        bbell@Hunton.com

- and -

**LATHAM & WATKINS LLP**
Ray C. Shrock (NY Bar No. 4860631)
Andrew M. Parlen (NY Bar No. 5370085)
Alexander W. Welch (NY Bar No. 5624861)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Email: ray.schrock@lw.com
        andrew.parlen@lw.com
        alex.welch@lw.com

Jason B. Gott (IL Bar No. 6309114)
Jonathan C. Gordon (IL Bar No. 6329732)
330 N. Wabash Avenue
Suite No. 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email: jason.gott@lw.com
        jonathan.gordon@lw.com

*[Proposed] Counsel for the Debtors and Debtors in Possession*

## Appendix A

**Plan Release, Exculpation, and Injunction Provisions**

## Article X

## RELEASE, EXCULPATION AND INJUNCTION PROVISIONS[1]

***Defined Terms***

"***Exculpated Parties***" means collectively: (a) the Debtors; and (b) the Independent Managers.

"***Related Parties***" means with respect to an Entity, such Entity's current and former Affiliates, and such Entity's and its current and former Affiliates' current and former directors, managers, officers, equity holders (including preferred equity holders and regardless of whether such interests are held directly or indirectly), interest holders, predecessors, participants, successors, and assigns, subsidiaries, affiliates, managed accounts or funds, and each of their respective current and former equity holders (including preferred equity holders), officers, directors, managers, principals, shareholders, members, management companies, fund advisors, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

"***Released Parties***" means, each of, and in each case solely in its capacity as such: (a) each Debtor and each Post-Effective Date Debtor; (b) the Debtors' current and former officers, directors, and managers; (c) the DIP Secured Parties and the Prepetition Secured Parties (including, but not limited to, for each, in their capacities as prepetition lenders); (d) the administrative and collateral agents under the Prepetition Credit Agreements; (e) the Successful Bidder(s); (f) the Plan Administrator; and (g) with respect to each of the foregoing Entities in clauses (a) through (g), such Entity and its Related Parties; *provided*, that, in each case, a Person shall not be a Released Party if such Person: (x) elects to opt out of the Third-Party Release or (y) timely objects to the Third-Party Release, either through (i) formal objection filed on the docket of the Chapter 11 Cases or (ii) informal objection provided to the Debtors in writing, including by electronic mail, and such objection is not withdrawn from the docket of the Chapter 11 Cases or in writing, including via electronic mail, as applicable, before Confirmation.

"***Releasing Parties***" means collectively: (a) the Released Parties; (b) all Holders of Claims who vote to accept the Plan; (c) all Holders of Claims who abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable form indicating that they opt not to grant the releases provided in the Plan; (d) all Holders of Claims and Interests who, in each case do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable form indicating that they opt not to grant the releases provided in the Plan in accordance with the procedures set forth in the Disclosure Statement Order, (i) vote to reject the Plan, (ii) are deemed to reject the Plan, or (iii) are presumed to accept the Plan; and (e) each Related Party of the Debtors, the Post-Effective Date Debtors, and each of the foregoing Entities in clauses (a) through (d), solely to the extent such Related Party (I) would be obligated to grant a release under the principles of agency if it were so directed by the Debtors, the Post-Effective Date Debtors, or the Entity in the foregoing clauses (a) through (d) to whom they are related or (II) may assert Claims or Causes of Action on behalf of or in a derivative capacity by or through the Debtors, the Post-Effective Date Debtors or an Entity in the foregoing clauses

---

[1]   Capitalized terms used but not defined in this <u>Appendix A</u> have the meanings given to them in the Plan.

(a) through (d).  A Person shall not be a Releasing Party if such Person timely objects to the Third-Party Release, either through (i) formal objection filed on the docket of the Chapter 11 Cases or (ii) informal objection provided to the Debtors in writing, including by electronic mail, and such objection is not withdrawn from the docket of the Chapter 11 Cases or in writing, including via electronic mail, as applicable, before Confirmation.

## 10.2.   *Debtor Release*[2]

**As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the obligations contemplated by the Plan and the documents in the Plan Supplement, or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, to the maximum extent permitted by law, by the Debtors, the Post-Effective Date Debtors, and the Estates, in each case on behalf of themselves and their respective successors, including the Plan Administrator, assigns, and Representatives and any and all other Persons that may purport to assert any Causes of Action derivatively, by or through the foregoing Persons, from any and all Claims and Causes of Action (including any derivative claims, asserted or assertable on behalf of the Debtors, the Post-Effective Date Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that the Debtors, the Post-Effective Date Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person (collectively, the "Debtor Released Claims"), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, or operation thereof or otherwise), the Post-Effective Date Debtors, or their Estates, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any asset or security of the Debtors or the Post-Effective Date Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan (including related to the Prepetition Funded Debt Facilities and the DIP Facilities), the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in or out-of-court restructuring, sale, and recapitalization efforts (including related to the Forbearance Documents), intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the documents in the Plan Supplement, any 363 Sale Order, the 363 Sale Transaction Documentation, the Disclosure Statement, the DIP Order and the DIP Documents, the Plan, and related agreements, instruments, and other documents, and the negotiation, formulation, preparation, dissemination, filing, pursuit of consummation, or implementation thereof, the solicitation**

---

[2]   Any and all releases by the Debtors and their Estates remain subject to the ongoing internal investigation.  Nothing herein shall constitute or be deemed a waiver of any Causes of Action that the Debtors may hold against any Entity.

of votes with respect to the Plan, the distribution of property under the Plan, or any other act or omission; <u>provided</u>, <u>however</u>, that the foregoing "<u>Debtor Release</u>" shall not operate to waive or release, and the "Debtor Released Claims" shall not include, any Cause of Action of any Debtor or Post-Effective Date Debtor or its Estate: (1) against a Released Party arising from any obligations owed to the Debtors or Post-Effective Date Debtors pursuant to an Executory Contract or Unexpired Lease that is not otherwise rejected by the Debtors pursuant to section 365 of the Bankruptcy Code before, after, or as of the Effective Date; (2) expressly set forth in and preserved by the Plan or related documents or the 363 Sale Transaction Documentation; (3) that is of a commercial nature and arising in the ordinary course of business, such as accounts receivable and accounts payable on account of goods and services being performed; (4) against a Holder of a Disputed Claim to the extent necessary to administer and resolve such Disputed Claim solely in accordance with the Plan; or (5) arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, gross negligence, or willful misconduct. Notwithstanding anything to the contrary in the foregoing, the "Debtor Release" set forth above does not release any post-Effective Date obligations of any Entity under the Plan or any document, instrument or agreement (including those set forth in the Plan Supplement) executed in connection with the Plan or the implementation thereof with respect to the Debtors, the Post-Effective Date Debtors, or the Estates.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by each of the Released Parties, including the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (2) a good-faith settlement and compromise of the Claims released by the Debtors; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Debtors' Estates, or the Plan Administrator asserting any Claim or Cause of Action released pursuant to the Debtor Release.

10.3. *Release by Holders of Claims and Interests*

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, and the obligations contemplated by the Plan and the documents in the Plan Supplement, or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, to the maximum extent permitted by law, by the Releasing Parties, in each case from any and all Claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors, the Post-Effective Date Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international,

foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such Holders or their estates, affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, Representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person (collectively, the "Third Party Released Claims"), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, or operation thereof or otherwise), the Post-Effective Date Debtors, or the Estates, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any asset or security of the Debtors or the Post-Effective Date Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan (including related to the Prepetition Funded Debt Facilities and the DIP Facilities), the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in or out-of-court restructuring, sale, and recapitalization efforts (including related to the Forbearance Documents), intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the documents in the Plan Supplement, any 363 Sale Order, the 363 Sale Transaction Documentation, Disclosure Statement, the DIP Order and the DIP Documents, the Plan, and related agreements, instruments, and other documents, and the negotiation, formulation, preparation, dissemination, filing, pursuit of consummation, or implementation thereof, the solicitation of votes with respect to the Plan, the distribution of property under the Plan, or any other act or omission; provided, however, that the foregoing Third-Party Release shall not operate to waive or release, and the "Third-Party Released Claims" shall not include, any Cause of Action of any Releasing Party: (1) against a Released Party arising from any obligations owed to the Releasing Party that are wholly unrelated to the Debtors or the Post-Effective Date Debtors; (2) expressly set forth in and preserved by the Plan or related documents; or (3) arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, gross negligence, or willful misconduct. Notwithstanding anything to the contrary in the foregoing, the "Third-Party Release" set forth above does not release any post-Effective Date obligations of any Entity under the Plan or any document, instrument or agreement (including those set forth in the Plan Supplement) executed in connection with the Plan or the implementation thereof.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) consensual; (2) given and made after due notice and opportunity for hearing; and (3) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release; (4) in exchange for good and valuable consideration provided by each of the Released Parties, including the Released Parties' substantial contributions to facilitating the

**363 Sale Transaction and implementing the Plan; (5) fair, equitable, and reasonable; and (6) essential to the Confirmation of the Plan.**

### 10.4.  *Exculpation*

**To the fullest extent permitted by applicable law, and without affecting or limiting the releases set forth in <u>Article 10.2</u> or <u>Article 10.3</u> of the Plan, effective as of the Effective Date, the Exculpated Parties shall neither have nor incur any liability to any Person or entity for any claims, causes of action or for any act taken or omitted to be taken on or after the Petition Date and prior to or on the Effective Date in connection with or arising out of: the administration of the Chapter 11 Cases, commencement of the Chapter 11 Cases, pursuit of Confirmation and Consummation of the Plan, making Distributions, implementing the Wind-Down, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the 363 Sale Transaction, the Plan, the Plan Supplement, or any contract, instrument, release, or other agreement or document created or entered into in connection therewith, or the solicitation of votes for, or Confirmation of, the Plan; the occurrence of the Effective Date; the administration of the Plan or the property to be distributed under the Plan; the issuance of securities under or in connection with the Plan; the purchase, sale, or rescission of the purchase or sale of any asset or security of the Debtors; or the transactions in furtherance of any of the foregoing; <u>provided</u>, <u>however</u>, that none of the foregoing provisions shall operate to waive or release (i) any Claims or Causes of Action arising out of or related to any act or omission of an Exculpated Party that constitutes intentional fraud, criminal conduct, or willful misconduct, as determined by a Final Order, and (ii) the Exculpated Parties' rights and obligations arising on or after the Effective Date under the Plan, the Plan Supplement documents, and the Confirmation Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation of votes on the Plan and, therefore, are not, and will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or Distributions made pursuant to the Plan. The Exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.**

### 10.5.  *Permanent Injunction*

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to the Plan, including the Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in the Plan or the Confirmation Order.

**No Person or Entity may commence or pursue a Claim or Cause of Action, as applicable, of any kind against the Debtors, the Post-Effective Date Debtors, the Exculpated Parties, or the Released Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action, as**

applicable, subject to <u>Article 10.2</u>, <u>Article 10.3</u>, <u>Article 10.4</u>, and <u>Article 10.5</u> hereof, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action, as applicable, represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action, as applicable, against any such Debtor, Post-Effective Date Debtor, Exculpated Party, or Released Party, as applicable. At the hearing for the Bankruptcy Court to determine whether such Claim or Cause of Action represents a colorable Claim of any kind, the Bankruptcy Court may, or shall if any Debtor, Post-Effective Date Debtor, Exculpated Party, Released Party, or other party in interest requests by motion (oral motion being sufficient), direct that such Person or Entity seeking to commence or pursue such Claim or Cause of Action file a proposed complaint with the Bankruptcy Court embodying such Claim or Cause of Action, such complaint satisfying the applicable Rules of Federal Procedure, including, but not limited to, Rule 8 and Rule 9 (as applicable), which the Bankruptcy Court shall assess before making a determination. For the avoidance of doubt, any party that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any claims or causes of action not explicitly included in the authorized complaint or petition must obtain authorization from the Bankruptcy Court before filing any such amendment in the court where such complaint or petition is pending. The Bankruptcy Court reserves jurisdiction to adjudicate any such claims to the maximum extent provided by the law.

**<u>EXHIBIT 2</u>**

Notice of Non-Voting Status and Opt-Out Release Form

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

```
-------------------------------------------------------- x
                                                          :
In re:                                                    :    Chapter 11
                                                          :
PINE GATE RENEWABLES, LLC, et al.,                        :    Case No. 25-90669 (CML)
                                                          :
        Debtors¹                                          :    (Jointly Administered)
                                                          :
-------------------------------------------------------- x
```

**NOTICE OF NON-VOTING STATUS AND OPT-OUT RELEASE FORM FOR**
**HOLDERS OF CLAIMS AND CERTAIN INTERESTS IN NON-VOTING CLASSES**

> **You are receiving this Notice of Non-Voting Status and Opt-Out Release Form because your rights may be affected under the Plan. Due to the nature and treatment of your Claim or Interest under the Plan, you are not entitled to vote on the Plan.**
>
> **You are hereby given notice and the opportunity to <u>opt out</u> of granting the Releases set forth in Article 10.3 of the Plan and described in <u>Appendix A</u> by filling out and returning the Opt-Out Release Form found in <u>Appendix B</u>. If you do not opt out of granting the Releases by following the instructions contained in this notice, you will automatically be deemed to have consented to the Releases set forth in Article 10.3 of the Plan. Please be advised that your decision to opt out <u>does not</u> affect the amount of distribution you will receive under the Plan. Specifically, your recovery under the Plan will be the same if you opt out; however, in the event you opt out of the Releases, you <u>will not</u> be granted a release from the Releasing Parties under the Plan to the extent you are entitled to one.**
>
> **The Opt-Out Release Form must be submitted no later than <u>January 26, 2026, at 4:00 p.m. (prevailing Central Time)</u>**
>
> **You should review this notice carefully and may wish to consult an attorney as your rights may be affected.**

*General Information Concerning this Notice of Non-Voting Status and Opt-Out Release Form*

On November 6, 2025, Pine Gate Renewables, LLC and its debtor affiliates, as debtors and debtors in possession (collectively, the "***Debtors***"), commenced chapter 11 cases in the United

---

[1]   A complete list of each of the Debtors in these chapter 11 cases (the "***Chapter 11 Cases***") and the last four digits of each Debtor's taxpayer identification number (if applicable) may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/PGR (the "***Case Website***"). The Debtors' mailing address for the purposes of the Chapter 11 Cases is 130 Roberts Street, Asheville, North Carolina 28801.

States Bankruptcy Court for the Southern District of Texas (the "**Court**"). The Debtors have commenced the solicitation of votes, in accordance with title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), to accept or reject the *Joint Chapter 11 Plan of Pine Gate Renewables, LLC and Its Debtor Affiliates*, dated November 20, 2025 (as may be amended, modified, or supplemented from time to time, the "**Plan**"),[2] attached as Exhibit A to the *Disclosure Statement for Joint Chapter 11 Plan of Pine Gate Renewables, LLC and Its Debtor Affiliates*, dated November 20, 2025 (as may be amended, modified, or supplemented from time to time, the "**Disclosure Statement**") from Holders of Claims in Classes 3(a) (Brookfield Secured Claims), 3(b) (Carlyle Secured Claims), 3(c) (Fundamental Secured Claims) and 4 (General Unsecured Claims). Copies of the Plan and the Disclosure Statement may be obtained free of charge by visiting the solicitation website maintained by the Debtors' balloting agent, Omni Agent Solutions, Inc. (the "**Balloting Agent**"), at https://omniagentsolutions.com/PGR.

You are receiving this notice of non-voting status (this "**Notice**") and Opt-Out Release Form (the "**Opt-Out Release Form**") because, according to the Debtors' books and records, you may be a Holder of a Claim against or Interest in one or more of the Debtors that, due to the nature and treatment of such Claim or Interest under the Plan, *is **not** entitled to vote on the Plan*. Specifically, under the terms of the Plan, Claims in Class 1 (Other Priority Claims) and Class 2 (Other Secured Claims) are Unimpaired under the Plan and, pursuant to Section 1126(f) of the Bankruptcy Code, are conclusively presumed to accept the Plan. Claims and Interests in Class 5 (Intercompany Claims) and Class 7 (Intercompany Interests) are either Unimpaired or Impaired under the Plan and are conclusively presumed to accept or deemed to reject the Plan, as applicable. Claims and Interests in Classes 6 (Subordinated Claims) and 8 (Existing Equity Interests) (collectively with Classes 1, 2, 5, and 7 the "**Non-Voting Classes**") are Impaired under the Plan with no recovery and, pursuant to Section 1126(g) of the Bankruptcy Code, are deemed to reject the Plan. Therefore, Holders of Claims and Interests in Classes 1, 2, 5, 6, 7, and 8 are not entitled to vote to accept or reject the Plan.

Article 10 of Plan contains certain debtor releases, ***third party releases***, exculpation, and injunction provisions. These provisions are also described in Appendix A. You are advised and encouraged to carefully review and consider the Plan, including the release, exculpation, and injunction provisions, as your rights might be affected. The Opt-Out Release Form provided in Appendix B provides you with the opportunity to elect to opt out of the releases described in Appendix A.

If you elect to opt out of the Releases, you will not be deemed to have granted the Releases set forth in Article 10.3 of the Plan. If you opt out of the Releases, you will not be a Released Party under the Plan and will forgo any benefit of the Releases to which you may otherwise be entitled. The separate Opt-Out Release Form in Appendix B allows you the opportunity to opt out of the Releases.

---

[2] Capitalized terms used but not defined herein have the meanings given to them in the Plan.

*Making an Alternative Election Under this Opt-Out Release Form*

**Holders of Claims and Interests who take no action with respect to the Opt-Out Release Form will automatically be deemed to grant the releases contained in Article 10.3 of the Plan**.

You should review the Disclosure Statement and the Plan before you make any elections on the Opt-Out Release Form.  You may wish to seek legal advice concerning the elections available under the Opt-Out Release Form.

**Questions may be directed to the Debtors' Balloting Agent at https://omniagentsolutions.com/PGR.  Copies of the Plan and Disclosure Statement may also be obtained by calling the Balloting Agent at (747) 263-0193 or Non U.S./Canada at +1 (888) 812-2572 or by sending an electronic mail message to PGRInquiries@OmniAgnt.com (with "PGR Solicitation Inquiry" in the subject line). The Plan, Disclosure Statement, and related documents are also available for a fee through the Court's electronic case filing system at www.txs.uscourts.gov using a PACER password (to obtain a PACER password, go to the PACER website at http://pacer.psc.uscourts.gov).**

**YOU SHOULD NOT DIRECT ANY QUESTIONS TO ANY OF THE DEBTOR ENTITIES, DEBTORS' AGENTS (OTHER THAN THE BALLOTING AGENT), OR DEBTORS' FINANCIAL OR LEGAL ADVISORS.**

**THE BALLOTING AGENT IS NOT AUTHORIZED TO (AND WILL NOT) PROVIDE LEGAL ADVICE.**

[*Remainder of page left intentionally blank*]

**Appendix A**

**Release, Injunction, and Exculpation Provisions in the Plan**[1]

---

[1] Capitalized terms used but not defined in this Appendix A have the meanings given to them in the Plan.

2

## Article X

## RELEASE, EXCULPATION AND INJUNCTION PROVISIONS[1]

### Defined Terms

"**Exculpated Parties**" means collectively: (a) the Debtors; and (b) the Independent Managers.

"**Related Parties**" means with respect to an Entity, such Entity's current and former Affiliates, and such Entity's and its current and former Affiliates' current and former directors, managers, officers, equity holders (including preferred equity holders and regardless of whether such interests are held directly or indirectly), interest holders, predecessors, participants, successors, and assigns, subsidiaries, affiliates, managed accounts or funds, and each of their respective current and former equity holders (including preferred equity holders), officers, directors, managers, principals, shareholders, members, management companies, fund advisors, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

"**Released Parties**" means, each of, and in each case solely in its capacity as such: (a) each Debtor and each Post-Effective Date Debtor; (b) the Debtors' current and former officers, directors, and managers; (c) the DIP Secured Parties and the Prepetition Secured Parties (including, but not limited to, for each, in their capacities as prepetition lenders); (d) the administrative and collateral agents under the Prepetition Credit Agreements; (e) the Successful Bidder(s); (f) the Plan Administrator; and (g) with respect to each of the foregoing Entities in clauses (a) through (g), such Entity and its Related Parties; *provided*, that, in each case, a Person shall not be a Released Party if such Person: (x) elects to opt out of the Third-Party Release or (y) timely objects to the Third-Party Release, either through (i) formal objection filed on the docket of the Chapter 11 Cases or (ii) informal objection provided to the Debtors in writing, including by electronic mail, and such objection is not withdrawn from the docket of the Chapter 11 Cases or in writing, including via electronic mail, as applicable, before Confirmation.

"**Releasing Parties**" means collectively: (a) the Released Parties; (b) all Holders of Claims who vote to accept the Plan; (c) all Holders of Claims who abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable form indicating that they opt not to grant the releases provided in the Plan; (d) all Holders of Claims and Interests who, in each case do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable form indicating that they opt not to grant the releases provided in the Plan in accordance with the procedures set forth in the Disclosure Statement Order, (i) vote to reject the Plan, (ii) are deemed to reject the Plan, or (iii) are presumed to accept the Plan; and (e) each Related Party of the Debtors, the Post-Effective Date Debtors, and each of the foregoing Entities in clauses (a) through (d), solely to the extent such Related Party (I) would be obligated to grant a release under the principles of agency if it were so directed by the Debtors, the Post-Effective Date Debtors, or the Entity in the foregoing clauses (a) through (d) to whom they are related or (II) may assert Claims or Causes of Action on behalf of or in a derivative capacity by or through the Debtors, the Post-Effective Date Debtors or an Entity in the foregoing clauses

---

[1]   Capitalized terms used but not defined in this <u>Appendix A</u> have the meanings given to them in the Plan.

(a) through (d).  A Person shall not be a Releasing Party if such Person timely objects to the Third-Party Release, either through (i) formal objection filed on the docket of the Chapter 11 Cases or (ii) informal objection provided to the Debtors in writing, including by electronic mail, and such objection is not withdrawn from the docket of the Chapter 11 Cases or in writing, including via electronic mail, as applicable, before Confirmation.

## 10.2.  *Debtor Release*[2]

**As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the obligations contemplated by the Plan and the documents in the Plan Supplement, or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, to the maximum extent permitted by law, by the Debtors, the Post-Effective Date Debtors, and the Estates, in each case on behalf of themselves and their respective successors, including the Plan Administrator, assigns, and Representatives and any and all other Persons that may purport to assert any Causes of Action derivatively, by or through the foregoing Persons, from any and all Claims and Causes of Action (including any derivative claims, asserted or assertable on behalf of the Debtors, the Post-Effective Date Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that the Debtors, the Post-Effective Date Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person (collectively, the "Debtor Released Claims"), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, or operation thereof or otherwise), the Post-Effective Date Debtors, or their Estates, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any asset or security of the Debtors or the Post-Effective Date Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan (including related to the Prepetition Funded Debt Facilities and the DIP Facilities), the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in or out-of-court restructuring, sale, and recapitalization efforts (including related to the Forbearance Documents), intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the documents in the Plan Supplement, any 363 Sale Order, the 363 Sale Transaction Documentation, the Disclosure Statement, the DIP Order and the DIP Documents, the Plan, and related agreements, instruments, and other documents, and the negotiation, formulation, preparation, dissemination, filing, pursuit of consummation, or implementation thereof, the solicitation**

---

[2]  Any and all releases by the Debtors and their Estates remain subject to the ongoing internal investigation.  Nothing herein shall constitute or be deemed a waiver of any Causes of Action that the Debtors may hold against any Entity.

of votes with respect to the Plan, the distribution of property under the Plan, or any other act or omission; provided, however, that the foregoing "Debtor Release" shall not operate to waive or release, and the "Debtor Released Claims" shall not include, any Cause of Action of any Debtor or Post-Effective Date Debtor or its Estate: (1) against a Released Party arising from any obligations owed to the Debtors or Post-Effective Date Debtors pursuant to an Executory Contract or Unexpired Lease that is not otherwise rejected by the Debtors pursuant to section 365 of the Bankruptcy Code before, after, or as of the Effective Date; (2) expressly set forth in and preserved by the Plan or related documents or the 363 Sale Transaction Documentation; (3) that is of a commercial nature and arising in the ordinary course of business, such as accounts receivable and accounts payable on account of goods and services being performed; (4) against a Holder of a Disputed Claim to the extent necessary to administer and resolve such Disputed Claim solely in accordance with the Plan; or (5) arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, gross negligence, or willful misconduct.  Notwithstanding anything to the contrary in the foregoing, the "Debtor Release" set forth above does not release any post-Effective Date obligations of any Entity under the Plan or any document, instrument or agreement (including those set forth in the Plan Supplement) executed in connection with the Plan or the implementation thereof with respect to the Debtors, the Post-Effective Date Debtors, or the Estates.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by each of the Released Parties, including the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (2) a good-faith settlement and compromise of the Claims released by the Debtors; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Debtors' Estates, or the Plan Administrator asserting any Claim or Cause of Action released pursuant to the Debtor Release.

## 10.3.   *Release by Holders of Claims and Interests*

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, and the obligations contemplated by the Plan and the documents in the Plan Supplement, or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, to the maximum extent permitted by law, by the Releasing Parties, in each case from any and all Claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors, the Post-Effective Date Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international,

foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such Holders or their estates, affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, Representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person (collectively, the "**Third Party Released Claims**"), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, or operation thereof or otherwise), the Post-Effective Date Debtors, or the Estates, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any asset or security of the Debtors or the Post-Effective Date Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan (including related to the Prepetition Funded Debt Facilities and the DIP Facilities), the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in or out-of-court restructuring, sale, and recapitalization efforts (including related to the Forbearance Documents), intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the documents in the Plan Supplement, any 363 Sale Order, the 363 Sale Transaction Documentation, Disclosure Statement, the DIP Order and the DIP Documents, the Plan, and related agreements, instruments, and other documents, and the negotiation, formulation, preparation, dissemination, filing, pursuit of consummation, or implementation thereof, the solicitation of votes with respect to the Plan, the distribution of property under the Plan, or any other act or omission; **provided**, **however**, that the foregoing Third-Party Release shall not operate to waive or release, and the "Third-Party Released Claims" shall not include, any Cause of Action of any Releasing Party: (1) against a Released Party arising from any obligations owed to the Releasing Party that are wholly unrelated to the Debtors or the Post-Effective Date Debtors; (2) expressly set forth in and preserved by the Plan or related documents; or (3) arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, gross negligence, or willful misconduct. Notwithstanding anything to the contrary in the foregoing, the "**Third-Party Release**" set forth above does not release any post-Effective Date obligations of any Entity under the Plan or any document, instrument or agreement (including those set forth in the Plan Supplement) executed in connection with the Plan or the implementation thereof.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) consensual; (2) given and made after due notice and opportunity for hearing; and (3) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release; (4) in exchange for good and valuable consideration provided by each of the Released Parties, including the Released Parties' substantial contributions to facilitating the

363 Sale Transaction and implementing the Plan; (5) fair, equitable, and reasonable; and (6) essential to the Confirmation of the Plan.

### 10.4. *Exculpation*

**To the fullest extent permitted by applicable law, and without affecting or limiting the releases set forth in <u>Article 10.2</u> or <u>Article 10.3</u> of the Plan, effective as of the Effective Date, the Exculpated Parties shall neither have nor incur any liability to any Person or entity for any claims, causes of action or for any act taken or omitted to be taken on or after the Petition Date and prior to or on the Effective Date in connection with or arising out of: the administration of the Chapter 11 Cases, commencement of the Chapter 11 Cases, pursuit of Confirmation and Consummation of the Plan, making Distributions, implementing the Wind-Down, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the 363 Sale Transaction, the Plan, the Plan Supplement, or any contract, instrument, release, or other agreement or document created or entered into in connection therewith, or the solicitation of votes for, or Confirmation of, the Plan; the occurrence of the Effective Date; the administration of the Plan or the property to be distributed under the Plan; the issuance of securities under or in connection with the Plan; the purchase, sale, or rescission of the purchase or sale of any asset or security of the Debtors; or the transactions in furtherance of any of the foregoing; <u>provided</u>, <u>however</u>, that none of the foregoing provisions shall operate to waive or release (i) any Claims or Causes of Action arising out of or related to any act or omission of an Exculpated Party that constitutes intentional fraud, criminal conduct, or willful misconduct, as determined by a Final Order, and (ii) the Exculpated Parties' rights and obligations arising on or after the Effective Date under the Plan, the Plan Supplement documents, and the Confirmation Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation of votes on the Plan and, therefore, are not, and will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or Distributions made pursuant to the Plan. The Exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.**

### 10.5. *Permanent Injunction*

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to the Plan, including the Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in the Plan or the Confirmation Order.

**No Person or Entity may commence or pursue a Claim or Cause of Action, as applicable, of any kind against the Debtors, the Post-Effective Date Debtors, the Exculpated Parties, or the Released Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action, as**

applicable, subject to <u>Article 10.2</u>, <u>Article 10.3</u>, <u>Article 10.4</u>, and <u>Article 10.5</u> hereof, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action, as applicable, represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action, as applicable, against any such Debtor, Post-Effective Date Debtor, Exculpated Party, or Released Party, as applicable.  At the hearing for the Bankruptcy Court to determine whether such Claim or Cause of Action represents a colorable Claim of any kind, the Bankruptcy Court may, or shall if any Debtor, Post-Effective Date Debtor, Exculpated Party, Released Party, or other party in interest requests by motion (oral motion being sufficient), direct that such Person or Entity seeking to commence or pursue such Claim or Cause of Action file a proposed complaint with the Bankruptcy Court embodying such Claim or Cause of Action, such complaint satisfying the applicable Rules of Federal Procedure, including, but not limited to, Rule 8 and Rule 9 (as applicable), which the Bankruptcy Court shall assess before making a determination.  For the avoidance of doubt, any party that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any claims or causes of action not explicitly included in the authorized complaint or petition must obtain authorization from the Bankruptcy Court before filing any such amendment in the court where such complaint or petition is pending.  The Bankruptcy Court reserves jurisdiction to adjudicate any such claims to the maximum extent provided by the law.

**<u>Appendix B</u>**

**Opt-Out Release Form**

**Release Opt-Out Election**

This election allows you to:

**OPT OUT OF THE RELEASES IN THE PLAN, WHICH WILL DISQUALIFY YOU FROM BEING SUBJECT TO AND BENEFITING FROM THE RELEASES IN ARTICLE 10.3 OF THE PLAN.  IF YOU DO NOT OPT OUT OF THE RELEASES BY CHECKING THE BOX BELOW, YOU WILL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED THE DEBTORS, THE REORGANIZED DEBTORS, AND THE RELEASED PARTIES AS PROVIDED IN THE PLAN.**

Complete and return this Form if you wish to elect to opt out of the releases contained in Article 10.3 of the Plan and described in **Appendix A**.

*Summary of Election*

Article 10.3 of the Plan contains a third-party release that binds releasing parties, which is described in Appendix A.

**IMPORTANT INFORMATION REGARDING THE RELEASE**

**UNLESS YOU COMPLETE AND RETURN THIS OPT-OUT RELEASE FORM BY JANUARY 26, 2026, AT 4:00 P.M. (PREVAILING CENTRAL TIME), YOU WILL BE DEEMED TO HAVE GRANTED THE RELEASES CONTAINED IN ARTICLE 10.3 OF THE PLAN.**

*Instructions for Making a Release Opt-Out Election*

If you wish to make the election and opt out granting the releases contained in Article 10.3 of the Plan and described in Appendix A, check the box under "Your Election" below.  If your election contained in this Opt-Out Release Form is not received by the Balloting Agent by January 26, 2026, at 4:00 p.m. (prevailing Central Time), your election will not count, your Opt-Out Release Form will not be effective, and you will be deemed to have consented to the releases provided for in Article 10.3 of the Plan.  If your election is received and the Opt-Out box below is not checked, you will be deemed to have consented to the releases provided for in Article 10.3 of the Plan.  Any Opt-Out election that is illegible or does not provide sufficient information to identify the Claim Holder or Interest Holder will not be valid.

All questions as to the validity, form, eligibility (including time of receipt), and acceptance and revocation of an Opt-Out election will be resolved by the Debtors or Post-Effective Date Debtors (as applicable), in their sole discretion, which resolution will be final and binding.

If you have any questions on how to properly complete this Opt-Out Release Form, you may contact the Balloting Agent at (747) 263-0193 or Non U.S./Canada at +1 (888) 812-2572 or by sending an electronic mail message to PGRInquiries@OmniAgnt.com (with "PGR Solicitation Inquiry" in the subject line).

2

**If you wish to make the Opt-Out election, please complete, sign, and date this Release Opt Out Form and return it (with a signature) promptly in the envelope provided (if applicable) or via hand delivery or overnight courier to:**

<div align="center">

**PGR Ballot Processing**
**c/o Omni Agent Solutions, Inc.**
**5955 De Soto Avenue, Suite 100**
**Woodland Hills, CA 91367**

</div>

**To arrange hand delivery of your Release Opt Out Form, please email PGRInquiries@OmniAgnt.com (with "PGR Ballot Delivery" in the subject line) at least 24 hours prior to your arrival at the Balloting Agent address above and provide the anticipated date and time of delivery.**

<div align="center">

**OR**

**BY ELECTRONIC, ONLINE SUBMISSION:**

</div>

**Please visit https://omniagentsolutions.com/PGR. Click on the "E-Opt Out" link under the "Balloting" section of the Debtors' website and follow the directions to submit your Release Opt-Out Form. If you choose to submit your Opt-Out Release Form via the E-Opt Out system, you should not also return a hard copy of your Opt-Out. "E-Opting Out" is the sole manner in which this Opt-Out Release Form will be accepted via electronic or online transmission. Opt-Out Release Forms submitted by facsimile or email will not be counted.**

*Opt-Out Election*

The undersigned, a Holder of an Other Priority Claim, Other Secured Claim, General Unsecured Claim, Subordinated Claim, or Existing Equity Interest:

☐ ELECTS TO **OPT OUT OF** THE RELEASES IN ARTICLE 10.3 OF THE PLAN AND, AS A RESULT, NOT BE SUBJECT TO OR BENEFIT FROM THE RELEASES UNDER ARTICLE 10 OF THE PLAN.

**If you have made the election above, you must complete and sign the below certification.**

## <u>Certification and Signature for Opt-Out Election</u>

**Certification.**  By signing this Opt-Out Release Form, the electing Claim Holder or Interest Holder, as applicable, certifies to the Court and the Debtors:

a.    that the Holder acknowledges that the election provided for in this Opt-Out Release Form is being made pursuant to the terms and conditions set forth in the Plan;

b.    that the Holder has the full power and authority to make the election provided for in this Opt-Out Release Form with respect to its Class 1, Class 2, Class 6, or Class 8 Claim or Interest.

Name of Holder (Please Print)    _____

Authorized Signature    _____

Name of Signatory    _____

Title, if by Authorized Agent[1]    _____

Street Address    _____

City, State, Zip Code    _____

Telephone Number    _____

Email    _____

Date Completed    _____

---

[1]    If you are completing this Opt-Out Release Form on behalf of another person or entity, indicate your relationship with such person or entity and the capacity in which you are signing.

5

**EXHIBIT 3-A**

Form of Ballot for Class 3(a)

[IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

------------------------------------------------------------ x
                                                             :
In re:                                                       :   Chapter 11
                                                             :
PINE GATE RENEWABLES, LLC, *et al.*,                         :   Case No. 25-90669 (CML)
                                                             :
        Debtors[1]                                           :   (Jointly Administered)
                                                             :
------------------------------------------------------------ x

**BALLOT FOR HOLDERS OF CLAIMS
IN CLASS 3(a) (BROOKFIELD SECURED CLAIMS)
FOR VOTING TO ACCEPT OR REJECT THE JOINT CHAPTER 11
PLAN OF PINE GATE RENEWABLES, LLC AND ITS DEBTOR AFFILIATES**

---

**The voting deadline to accept or reject the Plan is 4:00 p.m. (prevailing Central Time), on <u>January 26, 2026</u> (the "*Voting Deadline*"), unless extended by the Debtors.**

**Please be advised that Article 10 of the Plan contains release, exculpation and injunction provisions. These provisions are included in the Ballot. You are advised to review and consider the Plan carefully because your rights might be affected thereunder even if you abstain from voting. If you (a) abstain from voting or (b) vote to reject the Plan and, in each case, do not check the box in Item 3 below, you will be deemed to have consented to the release provisions set forth in Article 10.3 of the Plan (the "*Third-Party Release*").**

**Please be advised that your decision to opt out does not affect the amount of distribution you will receive under the Plan. Specifically, your recovery under the Plan will be the same if you opt out.**

---

This ballot (the "***Ballot***") is provided to you to solicit your vote to accept or reject the *Joint Chapter 11 Plan of Pine Gate Renewables, LLC and Its Debtor Affiliates* [Docket No. [ ● ]] (as may be amended from time to time, the "***Plan***") for Pine Gate Renewables, LLC ("***PGR***") and its debtor affiliates (together with PGR, the "***Debtors***").[2]

---

[1]  A complete list of each of the Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number (if applicable) may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/PGR. The Debtors' mailing address for the purposes of the Chapter 11 Cases is 130 Roberts Street, Asheville, North Carolina 28801.

[2]  Capitalized but undefined terms herein shall have the meanings ascribed to them in the Plan.

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of December 18, 2025 (the "***Voting Record Date***"), a holder of any claim arising under or related to the Brookfield Prepetition Credit Agreement that is not credit bid or rolled up pursuant to the Brookfield DIP Facility (a "***Brookfield Secured Claim***" and the holder of such claim, a "***Holder***").

The Plan is attached as <u>Exhibit A</u> to the *Disclosure Statement for Joint Chapter 11 Plan of Pine Gate Renewables, LLC and Its Debtor Affiliates* [Docket No [ ● ]] (as amended, modified, or supplemented from time to time, the "***Disclosure Statement***"), which was included in the package (the "***Solicitation Package***") you received with this Ballot. The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan. The recoveries described in the Disclosure Statement are subject to confirmation of the Plan. If you do not have the Solicitation Package, you may obtain a copy (a) from Omni Agent Solutions, Inc. (the "***Balloting Agent***") at no charge by: (i) visiting the Balloting Agent's website at https://omniagentsolutions.com/PGR or using the QR Code below, (ii) calling (747) 263-0193 (international) or +1 (888) 812-2572 (U.S./Canada, toll free), or (iii) sending an electronic message to PGRInquiries@OmniAgnt.com with "**PGR Solicitation Inquiry**" in the subject line and requesting a copy be provided to you; or (b) for a fee via PACER at https://www.txs.uscourts.gov/bankruptcy. You should review the Disclosure Statement and the Plan before you vote. You may wish to seek independent legal, financial or tax advice concerning the Plan and your classification and treatment under the Plan. If you believe you have received this Ballot in error, or if you believe that you have received the wrong Ballot or a Ballot in the wrong amount, please contact the Balloting Agent **immediately** at the address, telephone number, or email address set forth below.



On November 6, 2025, the Debtors commenced voluntary cases under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "***Bankruptcy Code***"). The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by the Holders of at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in each Voting Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code. **If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan, and (b) otherwise satisfies the requirements of section 1129 of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.** To have your vote counted, you must complete, sign, and return this Ballot to the Balloting Agent by the Voting Deadline.

*[Remainder of page left intentionally blank]*

**IMPORTANT NOTICE REGARDING TREATMENT
FOR HOLDERS OF CLASS 3(a) BROOKFIELD SECURED CLAIMS**

As described in more detail in the Disclosure Statement and Plan, if the Plan is confirmed, and the Effective Date occurs, then on or as soon as reasonably practicable after the Effective Date, in full and final satisfaction, compromise, settlement, and release of its Claim (unless the applicable Holder agrees to a less favorable treatment), each Holder of a Brookfield Secured Claim shall receive its Pro Rata Share of the Distributable Proceeds pursuant to the Waterfall Recovery.

**Upon entry of the Final DIP Order and rollup of all Brookfield Secured Claims pursuant to the Brookfield DIP Facility, Class 3(a) will be deemed eliminated from the Plan for purposes of receiving distributions under the Plan, voting to accept or reject the Plan, and determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.**

**Please be advised that if the Plan is consummated, Holders of Class 3(a) Brookfield Secured Claims will be bound by the release, injunction, and exculpation provisions contained in Article 10 of the Plan and set forth in <u>Appendix A</u>, and if such Holders opt out of the Third-Party Release, they will not be deemed to have granted such releases and will not receive releases under the Plan.**

*[Remainder of page left intentionally blank]*

**IMPORTANT**

YOU SHOULD CAREFULLY REVIEW THE DISCLOSURE STATEMENT AND PLAN BEFORE YOU VOTE.  YOU MAY WISH TO SEEK LEGAL ADVICE CONCERNING THE PLAN AND THE CLASSIFICATION AND TREATMENT OF YOUR CLAIMS UNDER THE PLAN.

THE BALLOTING AGENT IS NOT AUTHORIZED TO (AND WILL NOT) PROVIDE LEGAL ADVICE.

VOTING RECORD DATE: DECEMBER 18, 2025

VOTING DEADLINE: 4:00 P.M. PREVAILING CENTRAL TIME ON JANUARY 26, 2026 (UNLESS EXTENDED BY THE DEBTORS IN THEIR SOLE DISCRETION)

---

FOR YOUR VOTE TO COUNT, YOU MUST SUBMIT THIS BALLOT TO THE BALLOTING AGENT, SUCH THAT THE BALLOT IS <u>ACTUALLY RECEIVED</u> BY THE BALLOTING AGENT BY THE VOTING DEADLINE.  IF THE BALLOTING AGENT DOES NOT <u>ACTUALLY RECEIVE</u> THE BALLOT INDICATING YOUR VOTE CAST ON YOUR BALLOT BY THE VOTING DEADLINE, YOUR VOTE WILL NOT BE COUNTED, EXCEPT AS DIRECTED BY THE DEBTORS IN THEIR SOLE DISCRETION, AND ANY ELECTION TO OPT OUT OF THE THIRD-PARTY RELEASE WILL NOT BE VALID.

YOU SHOULD NOT SEND YOUR BALLOT TO ANY OF THE DEBTOR ENTITIES, DEBTORS' AGENTS (OTHER THAN THE BALLOTING AGENT), OR DEBTORS' FINANCIAL OR LEGAL ADVISORS.  IF SO SENT, THE BALLOT WILL NOT BE COUNTED IN CONNECTION WITH THE PLAN.

IF THE PLAN IS CONFIRMED BY THE BANKRUPTCY COURT, IT WILL BE BINDING ON YOU WHETHER OR NOT YOU VOTE.

*[Remainder of page left intentionally blank]*

4

## **BALLOT INSTRUCTIONS**

1.      Complete Item 1.

2.      Complete Item 2.

3.      If you elect not to grant the Third-Party Release, check the box in Item 3.  Election to withhold consent to the Third-Party Release is at your option.  If you submit your Ballot without the box in Item 3 checked, you will be deemed to consent to the Third-Party Release to the fullest extent permitted by applicable law.

4.      Review the certification contained in Item 4.

5.      Sign and date the Ballot and fill out the other required information.

6.      Return your completed Ballot to the Balloting Agent no later than January 26, 2026, at 4:00 p.m. (prevailing Central Time).

7.      The Ballot does not constitute, and shall not be deemed to be, a proof of claim or interest or an assertion or admission of a Claim or Interest. The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

8.      You must vote the full amount of your Class 3(a) Brookfield Secured Claim *either* to accept *or* reject the Plan and may not split your vote. An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan will not be counted, unless otherwise determined by the Debtors, in their sole discretion.

9.      If you cast more than one Ballot voting the same Claim before the Voting Deadline, the last received, properly executed Ballot submitted to the Balloting Agent will supersede and revoke any prior Ballot, provided that, if a Holder timely submits both a paper Ballot and electronic Ballot on account of the same Claim, the electronic Ballot shall supersede the paper Ballot.

10.    For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single Holder in a particular Class will be aggregated and treated as if such Holder held one Claim in such Class, and all votes related to such Claim will be treated as a single vote to accept or reject the Plan; *provided*, *however*, that if separate affiliated entities hold Claims in a particular Class, these Claims will not be aggregated and will not be treated as if such Holder held one Claim in such Class, and the vote of each affiliated entity will be counted separately as a vote to accept or reject the Plan.

11.    The following Ballots will not be counted in determining the acceptance or rejection of the Plan: (i) any Ballot that is illegible or contains insufficient information to permit the identification of the Holder, (ii) any Ballot cast by a Person or Entity that does not hold a Claim in a Class entitled to vote on the Plan, (iii) any unsigned Ballot, (iv) any Ballot that does not contain an original signature, and (v) any Ballot not marked to accept or reject the Plan, or marked both to accept and reject the Plan.

12.  If a Ballot with your vote is received after the Voting Deadline, it will not be counted, unless otherwise determined by the Debtors, in their sole discretion.  The method of delivery of the Ballot to the Balloting Agent is at your election and risk.

13.  The Ballot should not be sent to the Debtors, the Bankruptcy Court, or the Debtors' financial or legal advisors.

14.  In the event that (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

15.  There may be changes made to the Plan that do not have material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

NO PERSON, INCLUDING THE BALLOTING AGENT, HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

PLEASE RETURN YOUR BALLOT PROMPTLY TO THE BALLOTING AGENT BY ONE OF THE METHODS BELOW. IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CALL THE BALLOTING AGENT AT (747) 263-0193 (INTERNATIONAL) OR +1 (888) 812-2572 (U.S./CANADA, TOLL FREE) OR BY SENDING AN EMAIL TO PGRINQUIRIES@OMNIAGNT.COM WITH "PGR SOLICITATION INQUIRY" IN THE SUBJECT LINE. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

[*Remainder of page left intentionally blank*]

**YOUR COMPLETED BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THE BALLOTING AGENT BY THE VOTING DEADLINE IN ONE OF THE MANNERS SET FORTH BELOW:**

<table>
<tr><td>

<u>**If by Regular Mail, Hand Delivery, or Overnight Courier**</u>

**Please complete your Ballot in accordance with these instructions, clearly indicate your decision to accept or reject the Plan in the boxes provided in Item 2 of the Ballot, clearly sign and date your Ballot, and return your original Ballot in the enclosed, pre-addressed, pre-paid envelope or via first class mail, overnight courier or hand delivery to the following address:**

**PGR Ballot Processing**
**c/o Omni Agent Solutions, Inc.**
**5955 De Soto Avenue, Suite 100**
**Woodland Hills, CA 91367**

**If you would like to coordinate hand delivery of your Ballot, please send an email to PGRInquiries@OmniAgnt.com with "PGR Ballot Delivery" in the subject line at least 24 hours before your arrival at the address above and provide the anticipated date and time of your delivery.**

<u>**Via E-Ballot Portal**</u>

**Submit your Ballot via the Balloting Agent's online portal at https://omniagentsolutions.com/PGR.  Click on the "Balloting" tab of the Debtors' website, select "Submit E-Ballot" and follow the instructions to submit your Ballot.**

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique E-Ballot ID#: _____**

**The Balloting Agent's online portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.**

**Each Unique E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.  Please complete and submit an electronic Ballot for each Unique E-Ballot ID# you receive, as applicable.**

**Holders of Claims who cast a Ballot using the Balloting Agent's online portal should NOT also submit a paper Ballot.**

</td></tr>
</table>

**THE VOTING DEADLINE IS JANUARY 26, 2026, AT 4:00 P.M. (PREVAILING CENTRAL TIME). IF THE BALLOTING AGENT DOES NOT *ACTUALLY RECEIVE* THIS BALLOT ON OR BEFORE THE DEADLINE, YOUR VOTE TRANSMITTED BY THIS BALLOT MAY BE COUNTED TOWARD CONFIRMATION OF THE PLAN ONLY IN THE DISCRETION OF THE DEBTORS.**

**Item 1.          Principal Amount of Claim**

The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Holder (or authorized signatory of such Holder) of a Brookfield Secured Claim in the aggregate unpaid **principal** amount inserted into the box below, without regard to any accrued but unpaid interest.

> $ _____

**Item 2.          Vote on Plan**

Please vote below either to accept or to reject the Plan with respect to your Claims in Class 3(a). Any Ballot not marked either to accept or reject the Plan, or marked both to accept and to reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

> **Before voting on the Plan, please note the following:**
>
> **If you (a) abstain from voting, (b) vote to reject the Plan, or (c) vote to accept the Plan, and, in each case, do not check the box in Item 3 below, you shall be deemed to have consented to the Third-Party Release.**
>
> **The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions in Article 10 of the Plan.**
>
> **Please be advised that your decision to opt out does not affect the amount of distribution you will receive under the Plan.  Specifically, your recovery under the Plan will be the same if you opt out.**

The undersigned Holder of a Class 3(a) Brookfield Secured Claim identified in Item 1 votes to (check one box):

> ☐ **ACCEPT** (vote FOR) the Plan.          ☐ **REJECT** (vote AGAINST) the Plan.

THE DEBTORS RECOMMEND THAT YOU VOTE TO ACCEPT THE PLAN.

**Item 3.          Optional Release Election**

Regardless of if you voted to accept or reject the Plan in Item 2 above or if you abstained from voting on the Plan, check this box if you elect not to grant the Third-Party Release.  Election to withhold consent to the Third-Party Release is at your option.  If you submit your Ballot without this box checked, or if you do not submit your Ballot by the Voting Deadline, you will be deemed to consent to the Third-Party Release to the fullest extent permitted by applicable law.

| ☐ **Opt Out of the Third-Party Release** |
|---|

**PLAN RELEASE, EXCULPATION AND INJUNCTION PROVISIONS**

If you are entitled to vote on the Plan and you submit a Ballot and do not check the box in Item 3 above, you shall be deemed to have consented to the Third-Party Release in the Plan and attached hereto as Appendix A. The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation.

**Item 4.       Acknowledgments**

By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that

(i)     it has the power and authority to vote to accept or reject the Plan;

(ii)    it was the Holder (or is entitled to vote on behalf of such Holder) of the Claims described in Item 1 as of the Voting Record Date;

(iii)   it has cast the same vote with respect to all of its Claims in the same Class as the Claims described in Item 1;

(iv)    no other Ballots with respect to the Claims identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Claims, then any such earlier received Ballots are hereby revoked;

(v)     all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned; and

(vi)    the undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan, or indicating both acceptance and rejection of the Plan, will not be counted.

Name of Holder of Class 3(a) Brookfield Secured Claim

Signature

9

_____

If by Authorized Agent, Name and Title

_____

Name of Institution

_____

Street Address

_____

City, State, Zip Code

_____

Telephone Number

_____

Email Address

_____

Date Completed


**YOU MUST SEND YOUR BALLOT TO THE BALLOTING AGENT SO THAT THE BALLOTING AGENT ACTUALLY RECEIVES THE BALLOT BY 4:00 P.M. (PREVAILING CENTRAL TIME) ON JANUARY 26, 2026, OR YOUR VOTE WILL NOT BE COUNTED.**

<u>Appendix A</u>
Release, Injunction, And Exculpation Provisions in the Plan[1]

---

[1]     Capitalized terms used but not defined in this <u>Appendix A</u> have the meanings given to them in the Plan.

## Article X

## RELEASE, EXCULPATION AND INJUNCTION PROVISIONS[1]

### Defined Terms

"***Exculpated Parties***" means collectively: (a) the Debtors; and (b) the Independent Managers.

"***Related Parties***" means with respect to an Entity, such Entity's current and former Affiliates, and such Entity's and its current and former Affiliates' current and former directors, managers, officers, equity holders (including preferred equity holders and regardless of whether such interests are held directly or indirectly), interest holders, predecessors, participants, successors, and assigns, subsidiaries, affiliates, managed accounts or funds, and each of their respective current and former equity holders (including preferred equity holders), officers, directors, managers, principals, shareholders, members, management companies, fund advisors, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

"***Released Parties***" means, each of, and in each case solely in its capacity as such: (a) each Debtor and each Post-Effective Date Debtor; (b) the Debtors' current and former officers, directors, and managers; (c) the DIP Secured Parties and the Prepetition Secured Parties (including, but not limited to, for each, in their capacities as prepetition lenders); (d) the administrative and collateral agents under the Prepetition Credit Agreements; (e) the Successful Bidder(s); (f) the Plan Administrator; and (g) with respect to each of the foregoing Entities in clauses (a) through (g), such Entity and its Related Parties; *provided*, that, in each case, a Person shall not be a Released Party if such Person: (x) elects to opt out of the Third-Party Release or (y) timely objects to the Third-Party Release, either through (i) formal objection filed on the docket of the Chapter 11 Cases or (ii) informal objection provided to the Debtors in writing, including by electronic mail, and such objection is not withdrawn from the docket of the Chapter 11 Cases or in writing, including via electronic mail, as applicable, before Confirmation.

"***Releasing Parties***" means collectively: (a) the Released Parties; (b) all Holders of Claims who vote to accept the Plan; (c) all Holders of Claims who abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable form indicating that they opt not to grant the releases provided in the Plan; (d) all Holders of Claims and Interests who, in each case do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable form indicating that they opt not to grant the releases provided in the Plan in accordance with the procedures set forth in the Disclosure Statement Order, (i) vote to reject the Plan, (ii) are deemed to reject the Plan, or (iii) are presumed to accept the Plan; and (e) each Related Party of the Debtors, the Post-Effective Date Debtors, and each of the foregoing Entities in clauses (a) through (d), solely to the extent such Related Party (I) would be obligated to grant a release under the principles of agency if it were so directed by the Debtors, the Post-Effective Date Debtors, or the Entity in the foregoing clauses (a) through (d) to whom they are related or (II) may assert Claims or Causes of Action on behalf of or in a derivative capacity by or through the Debtors, the Post-Effective Date Debtors or an Entity in the foregoing clauses

---

[1]   Capitalized terms used but not defined in this <u>Appendix A</u> have the meanings given to them in the Plan.

(a) through (d).  A Person shall not be a Releasing Party if such Person timely objects to the Third-Party Release, either through (i) formal objection filed on the docket of the Chapter 11 Cases or (ii) informal objection provided to the Debtors in writing, including by electronic mail, and such objection is not withdrawn from the docket of the Chapter 11 Cases or in writing, including via electronic mail, as applicable, before Confirmation.

## 10.2.  *Debtor Release*[2]

**As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the obligations contemplated by the Plan and the documents in the Plan Supplement, or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, to the maximum extent permitted by law, by the Debtors, the Post-Effective Date Debtors, and the Estates, in each case on behalf of themselves and their respective successors, including the Plan Administrator, assigns, and Representatives and any and all other Persons that may purport to assert any Causes of Action derivatively, by or through the foregoing Persons, from any and all Claims and Causes of Action (including any derivative claims, asserted or assertable on behalf of the Debtors, the Post-Effective Date Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that the Debtors, the Post-Effective Date Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person (collectively, the "Debtor Released Claims"), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, or operation thereof or otherwise), the Post-Effective Date Debtors, or their Estates, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any asset or security of the Debtors or the Post-Effective Date Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan (including related to the Prepetition Funded Debt Facilities and the DIP Facilities), the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in or out-of-court restructuring, sale, and recapitalization efforts (including related to the Forbearance Documents), intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the documents in the Plan Supplement, any 363 Sale Order, the 363 Sale Transaction Documentation, the Disclosure Statement, the DIP Order and the DIP Documents, the Plan, and related agreements, instruments, and other documents, and the negotiation, formulation, preparation, dissemination, filing, pursuit of consummation, or implementation thereof, the solicitation**

---

2   Any and all releases by the Debtors and their Estates remain subject to the ongoing internal investigation.  Nothing herein shall constitute or be deemed a waiver of any Causes of Action that the Debtors may hold against any Entity.

of votes with respect to the Plan, the distribution of property under the Plan, or any other act or omission; provided, however, that the foregoing "Debtor Release" shall not operate to waive or release, and the "Debtor Released Claims" shall not include, any Cause of Action of any Debtor or Post-Effective Date Debtor or its Estate: (1) against a Released Party arising from any obligations owed to the Debtors or Post-Effective Date Debtors pursuant to an Executory Contract or Unexpired Lease that is not otherwise rejected by the Debtors pursuant to section 365 of the Bankruptcy Code before, after, or as of the Effective Date; (2) expressly set forth in and preserved by the Plan or related documents or the 363 Sale Transaction Documentation; (3) that is of a commercial nature and arising in the ordinary course of business, such as accounts receivable and accounts payable on account of goods and services being performed; (4) against a Holder of a Disputed Claim to the extent necessary to administer and resolve such Disputed Claim solely in accordance with the Plan; or (5) arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, gross negligence, or willful misconduct. Notwithstanding anything to the contrary in the foregoing, the "Debtor Release" set forth above does not release any post-Effective Date obligations of any Entity under the Plan or any document, instrument or agreement (including those set forth in the Plan Supplement) executed in connection with the Plan or the implementation thereof with respect to the Debtors, the Post-Effective Date Debtors, or the Estates.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by each of the Released Parties, including the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (2) a good-faith settlement and compromise of the Claims released by the Debtors; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Debtors' Estates, or the Plan Administrator asserting any Claim or Cause of Action released pursuant to the Debtor Release.

### 10.3.  *Release by Holders of Claims and Interests*

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, and the obligations contemplated by the Plan and the documents in the Plan Supplement, or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, to the maximum extent permitted by law, by the Releasing Parties, in each case from any and all Claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors, the Post-Effective Date Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international,

foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such Holders or their estates, affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, Representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person (collectively, the "Third Party Released Claims"), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, or operation thereof or otherwise), the Post-Effective Date Debtors, or the Estates, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any asset or security of the Debtors or the Post-Effective Date Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan (including related to the Prepetition Funded Debt Facilities and the DIP Facilities), the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in or out-of-court restructuring, sale, and recapitalization efforts (including related to the Forbearance Documents), intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the documents in the Plan Supplement, any 363 Sale Order, the 363 Sale Transaction Documentation, Disclosure Statement, the DIP Order and the DIP Documents, the Plan, and related agreements, instruments, and other documents, and the negotiation, formulation, preparation, dissemination, filing, pursuit of consummation, or implementation thereof, the solicitation of votes with respect to the Plan, the distribution of property under the Plan, or any other act or omission; provided, however, that the foregoing Third-Party Release shall not operate to waive or release, and the "Third-Party Released Claims" shall not include, any Cause of Action of any Releasing Party: (1) against a Released Party arising from any obligations owed to the Releasing Party that are wholly unrelated to the Debtors or the Post-Effective Date Debtors; (2) expressly set forth in and preserved by the Plan or related documents; or (3) arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, gross negligence, or willful misconduct.  Notwithstanding anything to the contrary in the foregoing, the "Third-Party Release" set forth above does not release any post-Effective Date obligations of any Entity under the Plan or any document, instrument or agreement (including those set forth in the Plan Supplement) executed in connection with the Plan or the implementation thereof.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) consensual; (2) given and made after due notice and opportunity for hearing; and (3) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release; (4) in exchange for good and valuable consideration provided by each of the Released Parties, including the Released Parties' substantial contributions to facilitating the

**363 Sale Transaction and implementing the Plan; (5) fair, equitable, and reasonable; and (6) essential to the Confirmation of the Plan.**

### 10.4. *Exculpation*

**To the fullest extent permitted by applicable law, and without affecting or limiting the releases set forth in <u>Article 10.2</u> or <u>Article 10.3</u> of the Plan, effective as of the Effective Date, the Exculpated Parties shall neither have nor incur any liability to any Person or entity for any claims, causes of action or for any act taken or omitted to be taken on or after the Petition Date and prior to or on the Effective Date in connection with or arising out of: the administration of the Chapter 11 Cases, commencement of the Chapter 11 Cases, pursuit of Confirmation and Consummation of the Plan, making Distributions, implementing the Wind-Down, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the 363 Sale Transaction, the Plan, the Plan Supplement, or any contract, instrument, release, or other agreement or document created or entered into in connection therewith, or the solicitation of votes for, or Confirmation of, the Plan; the occurrence of the Effective Date; the administration of the Plan or the property to be distributed under the Plan; the issuance of securities under or in connection with the Plan; the purchase, sale, or rescission of the purchase or sale of any asset or security of the Debtors; or the transactions in furtherance of any of the foregoing; <u>provided</u>, <u>however</u>, that none of the foregoing provisions shall operate to waive or release (i) any Claims or Causes of Action arising out of or related to any act or omission of an Exculpated Party that constitutes intentional fraud, criminal conduct, or willful misconduct, as determined by a Final Order, and (ii) the Exculpated Parties' rights and obligations arising on or after the Effective Date under the Plan, the Plan Supplement documents, and the Confirmation Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation of votes on the Plan and, therefore, are not, and will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or Distributions made pursuant to the Plan. The Exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.**

### 10.5. *Permanent Injunction*

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to the Plan, including the Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in the Plan or the Confirmation Order.

**No Person or Entity may commence or pursue a Claim or Cause of Action, as applicable, of any kind against the Debtors, the Post-Effective Date Debtors, the Exculpated Parties, or the Released Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action, as**

5

applicable, subject to <u>Article 10.2</u>, <u>Article 10.3</u>, <u>Article 10.4</u>, and <u>Article 10.5</u> hereof, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action, as applicable, represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action, as applicable, against any such Debtor, Post-Effective Date Debtor, Exculpated Party, or Released Party, as applicable.  At the hearing for the Bankruptcy Court to determine whether such Claim or Cause of Action represents a colorable Claim of any kind, the Bankruptcy Court may, or shall if any Debtor, Post-Effective Date Debtor, Exculpated Party, Released Party, or other party in interest requests by motion (oral motion being sufficient), direct that such Person or Entity seeking to commence or pursue such Claim or Cause of Action file a proposed complaint with the Bankruptcy Court embodying such Claim or Cause of Action, such complaint satisfying the applicable Rules of Federal Procedure, including, but not limited to, Rule 8 and Rule 9 (as applicable), which the Bankruptcy Court shall assess before making a determination.  For the avoidance of doubt, any party that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any claims or causes of action not explicitly included in the authorized complaint or petition must obtain authorization from the Bankruptcy Court before filing any such amendment in the court where such complaint or petition is pending.  The Bankruptcy Court reserves jurisdiction to adjudicate any such claims to the maximum extent provided by the law.

**EXHIBIT 3-B**

Form of Ballot for Class 3(b)

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

```
-------------------------------------------------- x
                                                   :
In re:                                             :    Chapter 11
                                                   :
PINE GATE RENEWABLES, LLC, et al.,                 :    Case No. 25-90669 (CML)
                                                   :
        Debtors¹                                   :    (Jointly Administered)
                                                   :
-------------------------------------------------- x
```

**BALLOT FOR HOLDERS OF CLAIMS**
**IN CLASS 3(b) (CARLYLE SECURED CLAIMS)**
**FOR VOTING TO ACCEPT OR REJECT THE JOINT CHAPTER 11**
**PLAN OF PINE GATE RENEWABLES, LLC AND ITS DEBTOR AFFILIATES**

> **The voting deadline to accept or reject the Plan is 4:00 p.m. (prevailing Central Time), on <u>January 26, 2026</u> (the "*Voting Deadline*"), unless extended by the Debtors.**
>
> **Please be advised that Article 10 of the Plan contains release, exculpation and injunction provisions. These provisions are included in the Ballot. You are advised to review and consider the Plan carefully because your rights might be affected thereunder even if you abstain from voting. If you (a) abstain from voting or (b) vote to reject the Plan and, in each case, do not check the box in Item 3 below, you will be deemed to have consented to the release provisions set forth in Article 10.3 of the Plan (the "*Third-Party Release*").**
>
> **Please be advised that your decision to opt out does not affect the amount of distribution you will receive under the Plan. Specifically, your recovery under the Plan will be the same if you opt out.**

       This ballot (the "***Ballot***") is provided to you to solicit your vote to accept or reject the *Joint Chapter 11 Plan of Pine Gate Renewables, LLC and Its Debtor Affiliates* [Docket No. [ ● ]] (as may be amended from time to time, the "***Plan***") for Pine Gate Renewables, LLC ("***PGR***") and its debtor affiliates (together with PGR, the "***Debtors***").²

---

[1]    A complete list of each of the Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number (if applicable) may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/PGR. The Debtors' mailing address for the purposes of the Chapter 11 Cases is 130 Roberts Street, Asheville, North Carolina 28801.

[2]    Capitalized but undefined terms herein shall have the meanings ascribed to them in the Plan.

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of December 18, 2025 (the "***Voting Record Date***"), a holder of any claim arising under or related to the Carlyle Prepetition Note Purchase Agreement that is not credit bid or rolled up pursuant to the Carlyle DIP Facility (a "***Carlyle Secured Claim***" and the holder of such claim, a "***Holder***").

The Plan is attached as <u>Exhibit A</u> to the *Disclosure Statement for Joint Chapter 11 Plan of Pine Gate Renewables, LLC and Its Debtor Affiliates* [Docket No [ ● ]] (as amended, modified, or supplemented from time to time, the "***Disclosure Statement***"), which was included in the package (the "***Solicitation Package***") you received with this Ballot.  The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan.  The recoveries described in the Disclosure Statement are subject to confirmation of the Plan.  If you do not have the Solicitation Package, you may obtain a copy (a) from Omni Agent Solutions, Inc. (the "***Balloting Agent***") at no charge by: (i) visiting the Balloting Agent's website at https://omniagentsolutions.com/PGR or using the QR Code below, (ii) calling (747) 263-0193 (international) or +1 (888) 812-2572 (U.S./Canada, toll free), or (iii) sending an electronic message to PGRInquiries@OmniAgnt.com with "**PGR Solicitation Inquiry**" in the subject line and requesting a copy be provided to you; or (b) for a fee via PACER at https://www.txs.uscourts.gov/bankruptcy.  You should review the Disclosure Statement and the Plan before you vote.  You may wish to seek independent legal, financial or tax advice concerning the Plan and your classification and treatment under the Plan.  If you believe you have received this Ballot in error, or if you believe that you have received the wrong Ballot or a Ballot in the wrong amount, please contact the Balloting Agent **immediately** at the address, telephone number, or email address set forth below.



On November 6, 2025, the Debtors commenced voluntary cases under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "***Bankruptcy Code***").  The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by the Holders of at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in each Voting Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code.  **If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan, and (b) otherwise satisfies the requirements of section 1129 of the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.**  To have your vote counted, you must complete, sign, and return this Ballot to the Balloting Agent by the Voting Deadline.

*[Remainder of page left intentionally blank]*

**IMPORTANT NOTICE REGARDING TREATMENT
FOR HOLDERS OF CLASS 3(b) CARLYLE SECURED CLAIMS**

As described in more detail in the Disclosure Statement and Plan, if the Plan is confirmed, and the Effective Date occurs, then on or as soon as reasonably practicable after the Effective Date, in full and final satisfaction, compromise, settlement, and release of its Claim (unless the applicable Holder agrees to a less favorable treatment), each Holder of a Carlyle Secured Claim shall receive its Pro Rata Share of the Distributable Proceeds pursuant to the Waterfall Recovery.

**Upon entry of the Final DIP Order and rollup of all Carlyle Secured Claims pursuant to the Carlyle DIP Facility, Class 3(b) will be deemed eliminated from the Plan for purposes of receiving distributions under the Plan, voting to accept or reject the Plan, and determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.**

**Please be advised that if the Plan is consummated, Holders of Class 3(b) Carlyle Secured Claims will be bound by the release, injunction, and exculpation provisions contained in Article 10 of the Plan and set forth in <u>Appendix A</u>, and if such Holders opt out of the Third-Party Release, they will not be deemed to have granted such releases and will not receive releases under the Plan.**

[*Remainder of page left intentionally blank*]

---

**IMPORTANT**

YOU SHOULD CAREFULLY REVIEW THE DISCLOSURE STATEMENT AND PLAN BEFORE YOU VOTE.  YOU MAY WISH TO SEEK LEGAL ADVICE CONCERNING THE PLAN AND THE CLASSIFICATION AND TREATMENT OF YOUR CLAIMS UNDER THE PLAN.

THE BALLOTING AGENT IS NOT AUTHORIZED TO (AND WILL NOT) PROVIDE LEGAL ADVICE.

VOTING RECORD DATE:  DECEMBER 18, 2025

VOTING DEADLINE:  4:00 P.M. PREVAILING CENTRAL TIME ON JANUARY 26, 2026 (UNLESS EXTENDED BY THE DEBTORS IN THEIR SOLE DISCRETION)

---

FOR YOUR VOTE TO COUNT, YOU MUST SUBMIT THIS BALLOT TO THE BALLOTING AGENT, SUCH THAT THE BALLOT IS <u>ACTUALLY RECEIVED</u> BY THE BALLOTING AGENT BY THE VOTING DEADLINE.  IF THE BALLOTING AGENT DOES NOT <u>ACTUALLY RECEIVE</u> THE BALLOT INDICATING YOUR VOTE CAST ON YOUR BALLOT BY THE VOTING DEADLINE, YOUR VOTE WILL NOT BE COUNTED, EXCEPT AS DIRECTED BY THE DEBTORS IN THEIR SOLE DISCRETION, AND ANY ELECTION TO OPT OUT OF THE THIRD-PARTY RELEASE WILL NOT BE VALID.

YOU SHOULD NOT SEND YOUR BALLOT TO ANY OF THE DEBTOR ENTITIES, DEBTORS' AGENTS (OTHER THAN THE BALLOTING AGENT), OR DEBTORS' FINANCIAL OR LEGAL ADVISORS.  IF SO SENT, THE BALLOT WILL NOT BE COUNTED IN CONNECTION WITH THE PLAN.

IF THE PLAN IS CONFIRMED BY THE BANKRUPTCY COURT, IT WILL BE BINDING ON YOU WHETHER OR NOT YOU VOTE.

---

[*Remainder of page left intentionally blank*]

4

## **BALLOT INSTRUCTIONS**

1. Complete Item 1.

2. Complete Item 2.

3. If you elect not to grant the Third-Party Release, check the box in Item 3.  Election to withhold consent to the Third-Party Release is at your option.  If you submit your Ballot without the box in Item 3 checked, you will be deemed to consent to the Third-Party Release to the fullest extent permitted by applicable law.

4. Review the certification contained in Item 4.

5. Sign and date the Ballot and fill out the other required information.

6. Return your completed Ballot to the Balloting Agent no later than January 26, 2026, at 4:00 p.m. (prevailing Central Time).

7. The Ballot does not constitute, and shall not be deemed to be, a proof of claim or interest or an assertion or admission of a Claim or Interest. The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

8. You must vote the full amount of your Class 3(b) Carlyle Secured Claim *either* to accept *or* reject the Plan and may not split your vote. An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan will not be counted, unless otherwise determined by the Debtors, in their sole discretion.

9. If you cast more than one Ballot voting the same Claim before the Voting Deadline, the last received, properly executed Ballot submitted to the Balloting Agent will supersede and revoke any prior Ballot, provided that, if a Holder timely submits both a paper Ballot and electronic Ballot on account of the same Claim, the electronic Ballot shall supersede the paper Ballot.

10. For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single Holder in a particular Class will be aggregated and treated as if such Holder held one Claim in such Class, and all votes related to such Claim will be treated as a single vote to accept or reject the Plan; *provided*, *however*, that if separate affiliated entities hold Claims in a particular Class, these Claims will not be aggregated and will not be treated as if such Holder held one Claim in such Class, and the vote of each affiliated entity will be counted separately as a vote to accept or reject the Plan.

11. The following Ballots will not be counted in determining the acceptance or rejection of the Plan: (i) any Ballot that is illegible or contains insufficient information to permit the identification of the Holder, (ii) any Ballot cast by a Person or Entity that does not hold a Claim in a Class entitled to vote on the Plan, (iii) any unsigned Ballot, (iv) any Ballot that does not contain an original signature, and (v) any Ballot not marked to accept or reject the Plan, or marked both to accept and reject the Plan.

12. If a Ballot with your vote is received after the Voting Deadline, it will not be counted, unless otherwise determined by the Debtors, in their sole discretion. The method of delivery of the Ballot to the Balloting Agent is at your election and risk.

13. The Ballot should not be sent to the Debtors, the Bankruptcy Court, or the Debtors' financial or legal advisors.

14. In the event that (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

15. There may be changes made to the Plan that do not have material adverse effects on an accepting Class. If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

NO PERSON, INCLUDING THE BALLOTING AGENT, HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

PLEASE RETURN YOUR BALLOT PROMPTLY TO THE BALLOTING AGENT BY ONE OF THE METHODS BELOW. IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CALL THE BALLOTING AGENT AT (747) 263-0193 (INTERNATIONAL) OR +1 (888) 812-2572 (U.S./CANADA, TOLL FREE) OR BY SENDING AN EMAIL TO PGRINQUIRIES@OMNIAGNT.COM WITH "PGR SOLICITATION INQUIRY" IN THE SUBJECT LINE. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

[*Remainder of page left intentionally blank*]

**YOUR COMPLETED BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THE BALLOTING AGENT BY THE VOTING DEADLINE IN ONE OF THE MANNERS SET FORTH BELOW:**

<div style="border: 1px solid black;">

**<u>If by Regular Mail, Hand Delivery, or Overnight Courier</u>**

**Please complete your Ballot in accordance with these instructions, clearly indicate your decision to accept or reject the Plan in the boxes provided in Item 2 of the Ballot, clearly sign and date your Ballot, and return your original Ballot in the enclosed, pre-addressed, pre-paid envelope or via first class mail, overnight courier or hand delivery to the following address:**

**PGR Ballot Processing**
**c/o Omni Agent Solutions, Inc.**
**5955 De Soto Avenue, Suite 100**
**Woodland Hills, CA 91367**

**If you would like to coordinate hand delivery of your Ballot, please send an email to PGRInquiries@OmniAgnt.com with "PGR Ballot Delivery" in the subject line at least 24 hours before your arrival at the address above and provide the anticipated date and time of your delivery.**

**<u>Via E-Ballot Portal</u>**

**Submit your Ballot via the Balloting Agent's online portal at https://omniagentsolutions.com/PGR.  Click on the "Balloting" tab of the Debtors' website, select "Submit E-Ballot" and follow the instructions to submit your Ballot.**

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique E-Ballot ID#: _____**

**The Balloting Agent's online portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.**

**Each Unique E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.  Please complete and submit an electronic Ballot for each Unique E-Ballot ID# you receive, as applicable.**

**Holders of Claims who cast a Ballot using the Balloting Agent's online portal should NOT also submit a paper Ballot.**

</div>

**THE VOTING DEADLINE IS JANUARY 26, 2026, AT 4:00 P.M. (PREVAILING CENTRAL TIME). IF THE BALLOTING AGENT DOES NOT *ACTUALLY RECEIVE* THIS BALLOT ON OR BEFORE THE DEADLINE, YOUR VOTE TRANSMITTED BY THIS BALLOT MAY BE COUNTED TOWARD CONFIRMATION OF THE PLAN ONLY IN THE DISCRETION OF THE DEBTORS.**

**Item 1.**          **Principal Amount of Claim**

The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Holder (or authorized signatory of such Holder) of a Carlyle Secured Claim in the aggregate unpaid **principal** amount inserted into the box below, without regard to any accrued but unpaid interest.

> $ _____

**Item 2.**          **Vote on Plan**

Please vote below either to accept or to reject the Plan with respect to your Claims in Class 3(b). Any Ballot not marked either to accept or reject the Plan, or marked both to accept and to reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

> **Before voting on the Plan, please note the following:**
>
> **If you (a) abstain from voting, (b) vote to reject the Plan, or (c) vote to accept the Plan, and, in each case, do not check the box in Item 3 below, you shall be deemed to have consented to the Third-Party Release.**
>
> **The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions in Article 10 of the Plan.**
>
> **Please be advised that your decision to opt out does not affect the amount of distribution you will receive under the Plan. Specifically, your recovery under the Plan will be the same if you opt out.**

The undersigned Holder of a Class 3(b) Carlyle Secured Claim identified in Item 1 votes to (check one box):

> ☐ **ACCEPT** (vote FOR) the Plan.          ☐ **REJECT** (vote AGAINST) the Plan.

THE DEBTORS RECOMMEND THAT YOU VOTE TO ACCEPT THE PLAN.

**Item 3.**          **Optional Release Election**

Regardless of if you voted to accept or reject the Plan in Item 2 above or if you abstained from voting on the Plan, check this box if you elect not to grant the Third-Party Release. Election to withhold consent to the Third-Party Release is at your option. If you submit your Ballot without this box checked, or if you do not submit your Ballot by the Voting Deadline, you will be deemed to consent to the Third-Party Release to the fullest extent permitted by applicable law.

☐ **Opt Out of the Third-Party Release**

**PLAN RELEASE, EXCULPATION AND INJUNCTION PROVISIONS**

If you are entitled to vote on the Plan and you submit a Ballot and do not check the box in Item 3 above, you shall be deemed to have consented to the Third-Party Release in the Plan and attached hereto as <u>Appendix A</u>.  The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation.

**Item 4.       Acknowledgments**

By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that

    (i)       it has the power and authority to vote to accept or reject the Plan;

    (ii)      it was the Holder (or is entitled to vote on behalf of such Holder) of the Claims described in Item 1 as of the Voting Record Date;

    (iii)     it has cast the same vote with respect to all of its Claims in the same Class as the Claims described in Item 1;

    (iv)     no other Ballots with respect to the Claims identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Claims, then any such earlier received Ballots are hereby revoked;

    (v)      all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned; and

    (vi)     the undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan, or indicating both acceptance and rejection of the Plan, will not be counted.

_____

Name of Holder of Class 3(b) Carlyle Secured Claim

_____

Signature

_____

_____

If by Authorized Agent, Name and Title

_____

Name of Institution

_____

Street Address

_____

City, State, Zip Code

_____

Telephone Number

_____

Email Address

_____

Date Completed


**YOU MUST SEND YOUR BALLOT TO THE BALLOTING AGENT SO THAT THE BALLOTING AGENT ACTUALLY RECEIVES THE BALLOT BY 4:00 P.M. (PREVAILING CENTRAL TIME) ON JANUARY 26, 2026, OR YOUR VOTE WILL NOT BE COUNTED.**

<u>Appendix A</u>
Release, Injunction, And Exculpation Provisions in the Plan[1]

---

[1]    Capitalized terms used but not defined in this <u>Appendix A</u> have the meanings given to them in the Plan.

<u>**Article X**</u>

**RELEASE, EXCULPATION AND INJUNCTION PROVISIONS**[1]

*__Defined Terms__*

"***Exculpated Parties***" means collectively: (a) the Debtors; and (b) the Independent Managers.

"***Related Parties***" means with respect to an Entity, such Entity's current and former Affiliates, and such Entity's and its current and former Affiliates' current and former directors, managers, officers, equity holders (including preferred equity holders and regardless of whether such interests are held directly or indirectly), interest holders, predecessors, participants, successors, and assigns, subsidiaries, affiliates, managed accounts or funds, and each of their respective current and former equity holders (including preferred equity holders), officers, directors, managers, principals, shareholders, members, management companies, fund advisors, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

"***Released Parties***" means, each of, and in each case solely in its capacity as such: (a) each Debtor and each Post-Effective Date Debtor; (b) the Debtors' current and former officers, directors, and managers; (c) the DIP Secured Parties and the Prepetition Secured Parties (including, but not limited to, for each, in their capacities as prepetition lenders); (d) the administrative and collateral agents under the Prepetition Credit Agreements; (e) the Successful Bidder(s); (f) the Plan Administrator; and (g) with respect to each of the foregoing Entities in clauses (a) through (g), such Entity and its Related Parties; *provided*, that, in each case, a Person shall not be a Released Party if such Person: (x) elects to opt out of the Third-Party Release or (y) timely objects to the Third-Party Release, either through (i) formal objection filed on the docket of the Chapter 11 Cases or (ii) informal objection provided to the Debtors in writing, including by electronic mail, and such objection is not withdrawn from the docket of the Chapter 11 Cases or in writing, including via electronic mail, as applicable, before Confirmation.

"***Releasing Parties***" means collectively: (a) the Released Parties; (b) all Holders of Claims who vote to accept the Plan; (c) all Holders of Claims who abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable form indicating that they opt not to grant the releases provided in the Plan; (d) all Holders of Claims and Interests who, in each case do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable form indicating that they opt not to grant the releases provided in the Plan in accordance with the procedures set forth in the Disclosure Statement Order, (i) vote to reject the Plan, (ii) are deemed to reject the Plan, or (iii) are presumed to accept the Plan; and (e) each Related Party of the Debtors, the Post-Effective Date Debtors, and each of the foregoing Entities in clauses (a) through (d), solely to the extent such Related Party (I) would be obligated to grant a release under the principles of agency if it were so directed by the Debtors, the Post-Effective Date Debtors, or the Entity in the foregoing clauses (a) through (d) to whom they are related or (II) may assert Claims or Causes of Action on behalf of or in a derivative capacity by or through the Debtors, the Post-Effective Date Debtors or an Entity in the foregoing clauses

---

[1]   Capitalized terms used but not defined in this <u>Appendix A</u> have the meanings given to them in the Plan.

(a) through (d).  A Person shall not be a Releasing Party if such Person timely objects to the Third-Party Release, either through (i) formal objection filed on the docket of the Chapter 11 Cases or (ii) informal objection provided to the Debtors in writing, including by electronic mail, and such objection is not withdrawn from the docket of the Chapter 11 Cases or in writing, including via electronic mail, as applicable, before Confirmation.

*10.2.   Debtor Release*[2]

**As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the obligations contemplated by the Plan and the documents in the Plan Supplement, or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, to the maximum extent permitted by law, by the Debtors, the Post-Effective Date Debtors, and the Estates, in each case on behalf of themselves and their respective successors, including the Plan Administrator, assigns, and Representatives and any and all other Persons that may purport to assert any Causes of Action derivatively, by or through the foregoing Persons, from any and all Claims and Causes of Action (including any derivative claims, asserted or assertable on behalf of the Debtors, the Post-Effective Date Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that the Debtors, the Post-Effective Date Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person (collectively, the "Debtor Released Claims"), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, or operation thereof or otherwise), the Post-Effective Date Debtors, or their Estates, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any asset or security of the Debtors or the Post-Effective Date Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan (including related to the Prepetition Funded Debt Facilities and the DIP Facilities), the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in or out-of-court restructuring, sale, and recapitalization efforts (including related to the Forbearance Documents), intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the documents in the Plan Supplement, any 363 Sale Order, the 363 Sale Transaction Documentation, the Disclosure Statement, the DIP Order and the DIP Documents, the Plan, and related agreements, instruments, and other documents, and the negotiation, formulation, preparation, dissemination, filing, pursuit of consummation, or implementation thereof, the solicitation**

---

[2]  Any and all releases by the Debtors and their Estates remain subject to the ongoing internal investigation.  Nothing herein shall constitute or be deemed a waiver of any Causes of Action that the Debtors may hold against any Entity.

of votes with respect to the Plan, the distribution of property under the Plan, or any other act or omission; provided, however, that the foregoing "Debtor Release" shall not operate to waive or release, and the "Debtor Released Claims" shall not include, any Cause of Action of any Debtor or Post-Effective Date Debtor or its Estate: (1) against a Released Party arising from any obligations owed to the Debtors or Post-Effective Date Debtors pursuant to an Executory Contract or Unexpired Lease that is not otherwise rejected by the Debtors pursuant to section 365 of the Bankruptcy Code before, after, or as of the Effective Date; (2) expressly set forth in and preserved by the Plan or related documents or the 363 Sale Transaction Documentation; (3) that is of a commercial nature and arising in the ordinary course of business, such as accounts receivable and accounts payable on account of goods and services being performed; (4) against a Holder of a Disputed Claim to the extent necessary to administer and resolve such Disputed Claim solely in accordance with the Plan; or (5) arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, gross negligence, or willful misconduct.  Notwithstanding anything to the contrary in the foregoing, the "Debtor Release" set forth above does not release any post-Effective Date obligations of any Entity under the Plan or any document, instrument or agreement (including those set forth in the Plan Supplement) executed in connection with the Plan or the implementation thereof with respect to the Debtors, the Post-Effective Date Debtors, or the Estates.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by each of the Released Parties, including the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (2) a good-faith settlement and compromise of the Claims released by the Debtors; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Debtors' Estates, or the Plan Administrator asserting any Claim or Cause of Action released pursuant to the Debtor Release.

### 10.3.   *Release by Holders of Claims and Interests*

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, and the obligations contemplated by the Plan and the documents in the Plan Supplement, or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, to the maximum extent permitted by law, by the Releasing Parties, in each case from any and all Claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors, the Post-Effective Date Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international,

foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such Holders or their estates, affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, Representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person (collectively, the "Third Party Released Claims"), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, or operation thereof or otherwise), the Post-Effective Date Debtors, or the Estates, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any asset or security of the Debtors or the Post-Effective Date Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan (including related to the Prepetition Funded Debt Facilities and the DIP Facilities), the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in or out-of-court restructuring, sale, and recapitalization efforts (including related to the Forbearance Documents), intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the documents in the Plan Supplement, any 363 Sale Order, the 363 Sale Transaction Documentation, Disclosure Statement, the DIP Order and the DIP Documents, the Plan, and related agreements, instruments, and other documents, and the negotiation, formulation, preparation, dissemination, filing, pursuit of consummation, or implementation thereof, the solicitation of votes with respect to the Plan, the distribution of property under the Plan, or any other act or omission; provided, however, that the foregoing Third-Party Release shall not operate to waive or release, and the "Third-Party Released Claims" shall not include, any Cause of Action of any Releasing Party: (1) against a Released Party arising from any obligations owed to the Releasing Party that are wholly unrelated to the Debtors or the Post-Effective Date Debtors; (2) expressly set forth in and preserved by the Plan or related documents; or (3) arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, gross negligence, or willful misconduct.  Notwithstanding anything to the contrary in the foregoing, the "Third-Party Release" set forth above does not release any post-Effective Date obligations of any Entity under the Plan or any document, instrument or agreement (including those set forth in the Plan Supplement) executed in connection with the Plan or the implementation thereof.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) consensual; (2) given and made after due notice and opportunity for hearing; and (3) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release; (4) in exchange for good and valuable consideration provided by each of the Released Parties, including the Released Parties' substantial contributions to facilitating the

**363 Sale Transaction and implementing the Plan; (5) fair, equitable, and reasonable; and (6) essential to the Confirmation of the Plan.**

## 10.4. *Exculpation*

**To the fullest extent permitted by applicable law, and without affecting or limiting the releases set forth in <u>Article 10.2</u> or <u>Article 10.3</u> of the Plan, effective as of the Effective Date, the Exculpated Parties shall neither have nor incur any liability to any Person or entity for any claims, causes of action or for any act taken or omitted to be taken on or after the Petition Date and prior to or on the Effective Date in connection with or arising out of: the administration of the Chapter 11 Cases, commencement of the Chapter 11 Cases, pursuit of Confirmation and Consummation of the Plan, making Distributions, implementing the Wind-Down, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the 363 Sale Transaction, the Plan, the Plan Supplement, or any contract, instrument, release, or other agreement or document created or entered into in connection therewith, or the solicitation of votes for, or Confirmation of, the Plan; the occurrence of the Effective Date; the administration of the Plan or the property to be distributed under the Plan; the issuance of securities under or in connection with the Plan; the purchase, sale, or rescission of the purchase or sale of any asset or security of the Debtors; or the transactions in furtherance of any of the foregoing; <u>provided</u>, <u>however</u>, that none of the foregoing provisions shall operate to waive or release (i) any Claims or Causes of Action arising out of or related to any act or omission of an Exculpated Party that constitutes intentional fraud, criminal conduct, or willful misconduct, as determined by a Final Order, and (ii) the Exculpated Parties' rights and obligations arising on or after the Effective Date under the Plan, the Plan Supplement documents, and the Confirmation Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation of votes on the Plan and, therefore, are not, and will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or Distributions made pursuant to the Plan. The Exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.**

## 10.5. *Permanent Injunction*

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to the Plan, including the Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in the Plan or the Confirmation Order.

**No Person or Entity may commence or pursue a Claim or Cause of Action, as applicable, of any kind against the Debtors, the Post-Effective Date Debtors, the Exculpated Parties, or the Released Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action, as**

applicable, subject to <u>Article 10.2</u>, <u>Article 10.3</u>, <u>Article 10.4</u>, and <u>Article 10.5</u> hereof, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action, as applicable, represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action, as applicable, against any such Debtor, Post-Effective Date Debtor, Exculpated Party, or Released Party, as applicable.  At the hearing for the Bankruptcy Court to determine whether such Claim or Cause of Action represents a colorable Claim of any kind, the Bankruptcy Court may, or shall if any Debtor, Post-Effective Date Debtor, Exculpated Party, Released Party, or other party in interest requests by motion (oral motion being sufficient), direct that such Person or Entity seeking to commence or pursue such Claim or Cause of Action file a proposed complaint with the Bankruptcy Court embodying such Claim or Cause of Action, such complaint satisfying the applicable Rules of Federal Procedure, including, but not limited to, Rule 8 and Rule 9 (as applicable), which the Bankruptcy Court shall assess before making a determination.  For the avoidance of doubt, any party that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any claims or causes of action not explicitly included in the authorized complaint or petition must obtain authorization from the Bankruptcy Court before filing any such amendment in the court where such complaint or petition is pending.  The Bankruptcy Court reserves jurisdiction to adjudicate any such claims to the maximum extent provided by the law.

**EXHIBIT 3-C**

Form of Ballot for Class 3(c)

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

```
------------------------------------------------------- x
                                            :
In re:                                      :   Chapter 11
                                            :
PINE GATE RENEWABLES, LLC, et al.,          :   Case No. 25-90669 (CML)
                                            :
        Debtors¹                            :   (Jointly Administered)
                                            :
------------------------------------------------------- x
```

### BALLOT FOR HOLDERS OF CLAIMS
### IN CLASS 3(c) (FUNDAMENTAL SECURED CLAIMS)
### FOR VOTING TO ACCEPT OR REJECT THE JOINT CHAPTER 11
### PLAN OF PINE GATE RENEWABLES, LLC AND ITS DEBTOR AFFILIATES

---

**The voting deadline to accept or reject the Plan is 4:00 p.m. (prevailing Central Time), on <u>January 26, 2026</u> (the "*Voting Deadline*"), unless extended by the Debtors.**

**Please be advised that Article 10 of the Plan contains release, exculpation and injunction provisions. These provisions are included in the Ballot. You are advised to review and consider the Plan carefully because your rights might be affected thereunder even if you abstain from voting. If you (a) abstain from voting or (b) vote to reject the Plan and, in each case, do not check the box in Item 3 below, you will be deemed to have consented to the release provisions set forth in Article 10.3 of the Plan (the "*Third-Party Release*").**

**Please be advised that your decision to opt out does not affect the amount of distribution you will receive under the Plan. Specifically, your recovery under the Plan will be the same if you opt out.**

---

This ballot (the "***Ballot***") is provided to you to solicit your vote to accept or reject the *Joint Chapter 11 Plan of Pine Gate Renewables, LLC and Its Debtor Affiliates* [Docket No. [ ● ]] (as may be amended from time to time, the "***Plan***") for Pine Gate Renewables, LLC ("***PGR***") and its debtor affiliates (together with PGR, the "***Debtors***").²

---

¹ A complete list of each of the Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number (if applicable) may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/PGR. The Debtors' mailing address for the purposes of the Chapter 11 Cases is 130 Roberts Street, Asheville, North Carolina 28801.

² Capitalized but undefined terms herein shall have the meanings ascribed to them in the Plan.

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of December 18, 2025 (the "***Voting Record Date***"), a holder of any claim arising under or related to the Fundamental Prepetition Credit Agreements that is not credit bid or rolled up pursuant to the Fundamental DIP Facility (a "***Fundamental Secured Claim***" and the holder of such claim, a "***Holder***").

The Plan is attached as <u>Exhibit A</u> to the *Disclosure Statement for Joint Chapter 11 Plan of Pine Gate Renewables, LLC and Its Debtor Affiliates* [Docket No [ ● ]] (as amended, modified, or supplemented from time to time, the "***Disclosure Statement***"), which was included in the package (the "***Solicitation Package***") you received with this Ballot. The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan. The recoveries described in the Disclosure Statement are subject to confirmation of the Plan. If you do not have the Solicitation Package, you may obtain a copy (a) from Omni Agent Solutions, Inc. (the "***Balloting Agent***") at no charge by: (i) visiting the Balloting Agent's website at https://omniagentsolutions.com/PGR or using the QR Code below, (ii) calling (747) 263-0193 (international) or +1 (888) 812-2572 (U.S./Canada, toll free), or (iii) sending an electronic message to PGRInquiries@OmniAgnt.com with "***PGR Solicitation Inquiry***" in the subject line and requesting a copy be provided to you; or (b) for a fee via PACER at https://www.txs.uscourts.gov/bankruptcy. You should review the Disclosure Statement and the Plan before you vote. You may wish to seek independent legal, financial or tax advice concerning the Plan and your classification and treatment under the Plan. If you believe you have received this Ballot in error, or if you believe that you have received the wrong Ballot or a Ballot in the wrong amount, please contact the Balloting Agent **immediately** at the address, telephone number, or email address set forth below.



On November 6, 2025, the Debtors commenced voluntary cases under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "***Bankruptcy Code***"). The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by the Holders of at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in each Voting Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code. **If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan, and (b) otherwise satisfies the requirements of section 1129 of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.** To have your vote counted, you must complete, sign, and return this Ballot to the Balloting Agent by the Voting Deadline.

*[Remainder of page left intentionally blank]*

**IMPORTANT NOTICE REGARDING TREATMENT
FOR HOLDERS OF CLASS 3(c) FUNDAMENTAL SECURED CLAIMS**

As described in more detail in the Disclosure Statement and Plan, if the Plan is confirmed, and the Effective Date occurs, then on or as soon as reasonably practicable after the Effective Date, in full and final satisfaction, compromise, settlement, and release of its Claim (unless the applicable Holder agrees to a less favorable treatment), each Holder of a Fundamental Secured Claim shall receive its Pro Rata Share of the Distributable Proceeds pursuant to the Waterfall Recovery; *provided*, for the avoidance of doubt, that until all Allowed Fundamental Secured Claims have been indefeasibly paid in full, the applicable Holder's Liens and security interests on account of the Fundamental Prepetition Documents shall remain valid, perfected, and enforceable.

**Please be advised that if the Plan is consummated, Holders of Class 3(c) Fundamental Secured Claims will be bound by the release, injunction, and exculpation provisions contained in Article 10 of the Plan and set forth in <u>Appendix A</u>, and if such Holders opt out of the Third-Party Release, they will not be deemed to have granted such releases and will not receive releases under the Plan.**

[*Remainder of page left intentionally blank*]

**IMPORTANT**

YOU SHOULD CAREFULLY REVIEW THE DISCLOSURE STATEMENT AND PLAN BEFORE YOU VOTE.  YOU MAY WISH TO SEEK LEGAL ADVICE CONCERNING THE PLAN AND THE CLASSIFICATION AND TREATMENT OF YOUR CLAIMS UNDER THE PLAN.

THE BALLOTING AGENT IS NOT AUTHORIZED TO (AND WILL NOT) PROVIDE LEGAL ADVICE.

VOTING RECORD DATE:  DECEMBER 18, 2025

VOTING DEADLINE:  4:00 P.M. PREVAILING CENTRAL TIME ON JANUARY 26, 2026 (UNLESS EXTENDED BY THE DEBTORS IN THEIR SOLE DISCRETION)

---

FOR YOUR VOTE TO COUNT, YOU MUST SUBMIT THIS BALLOT TO THE BALLOTING AGENT, SUCH THAT THE BALLOT IS <u>ACTUALLY RECEIVED</u> BY THE BALLOTING AGENT BY THE VOTING DEADLINE.  IF THE BALLOTING AGENT DOES NOT <u>ACTUALLY RECEIVE</u> THE BALLOT INDICATING YOUR VOTE CAST ON YOUR BALLOT BY THE VOTING DEADLINE, YOUR VOTE WILL NOT BE COUNTED, EXCEPT AS DIRECTED BY THE DEBTORS IN THEIR SOLE DISCRETION, AND ANY ELECTION TO OPT OUT OF THE THIRD-PARTY RELEASE WILL NOT BE VALID.

YOU SHOULD NOT SEND YOUR BALLOT TO ANY OF THE DEBTOR ENTITIES, DEBTORS' AGENTS (OTHER THAN THE BALLOTING AGENT), OR DEBTORS' FINANCIAL OR LEGAL ADVISORS.  IF SO SENT, THE BALLOT WILL NOT BE COUNTED IN CONNECTION WITH THE PLAN.

IF THE PLAN IS CONFIRMED BY THE BANKRUPTCY COURT, IT WILL BE BINDING ON YOU WHETHER OR NOT YOU VOTE.

[*Remainder of page left intentionally blank*]

4

**BALLOT INSTRUCTIONS**

1.      Complete Item 1.

2.      Complete Item 2.

3.      If you elect not to grant the Third-Party Release, check the box in Item 3.  Election to withhold consent to the Third-Party Release is at your option.  If you submit your Ballot without the box in Item 3 checked, you will be deemed to consent to the Third-Party Release to the fullest extent permitted by applicable law.

4.      Review the certification contained in Item 4.

5.      Sign and date the Ballot and fill out the other required information.

6.      Return your completed Ballot to the Balloting Agent no later than January 26, 2026, at 4:00 p.m. (prevailing Central Time).

7.      The Ballot does not constitute, and shall not be deemed to be, a proof of claim or interest or an assertion or admission of a Claim or Interest. The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

8.      You must vote the full amount of your Class 3(c) Fundamental Secured Claim *either* to accept *or* reject the Plan and may not split your vote. An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan will not be counted, unless otherwise determined by the Debtors, in their sole discretion.

9.      If you cast more than one Ballot voting the same Claim before the Voting Deadline, the last received, properly executed Ballot submitted to the Balloting Agent will supersede and revoke any prior Ballot, provided that, if a Holder timely submits  both a paper Ballot and electronic Ballot on account of the same Claim, the electronic Ballot shall supersede the paper Ballot.

10.     For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single Holder in a particular Class will be aggregated and treated as if such Holder held one Claim in such Class, and all votes related to such Claim will be treated as a single vote to accept or reject the Plan; *provided*, *however*, that if separate affiliated entities hold Claims in a particular Class, these Claims will not be aggregated and will not be treated as if such Holder held one Claim in such Class, and the vote of each affiliated entity will be counted separately as a vote to accept or reject the Plan.

11.     The following Ballots will not be counted in determining the acceptance or rejection of the Plan: (i) any Ballot that is illegible or contains insufficient information to permit the identification of the Holder, (ii) any Ballot cast by a Person or Entity that does not hold a Claim in a Class entitled to vote on the Plan, (iii) any unsigned Ballot, (iv) any Ballot that does not contain an original signature, and (v) any Ballot not marked to accept or reject the Plan, or marked both to accept and reject the Plan.

12. If a Ballot with your vote is received after the Voting Deadline, it will not be counted, unless otherwise determined by the Debtors, in their sole discretion. The method of delivery of the Ballot to the Balloting Agent is at your election and risk.

13. The Ballot should not be sent to the Debtors, the Bankruptcy Court, or the Debtors' financial or legal advisors.

14. In the event that (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

15. There may be changes made to the Plan that do not have material adverse effects on an accepting Class. If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

NO PERSON, INCLUDING THE BALLOTING AGENT, HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

PLEASE RETURN YOUR BALLOT PROMPTLY TO THE BALLOTING AGENT BY ONE OF THE METHODS BELOW. IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CALL THE BALLOTING AGENT AT (747) 263-0193 (INTERNATIONAL) OR +1 (888) 812-2572 (U.S./CANADA, TOLL FREE) OR BY SENDING AN EMAIL TO PGRINQUIRIES@OMNIAGNT.COM WITH "PGR SOLICITATION INQUIRY" IN THE SUBJECT LINE. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

[*Remainder of page left intentionally blank*]

6

**YOUR COMPLETED BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THE BALLOTING AGENT BY THE VOTING DEADLINE IN ONE OF THE MANNERS SET FORTH BELOW:**

---

<u>**If by Regular Mail, Hand Delivery, or Overnight Courier**</u>

**Please complete your Ballot in accordance with these instructions, clearly indicate your decision to accept or reject the Plan in the boxes provided in Item 2 of the Ballot, clearly sign and date your Ballot, and return your original Ballot in the enclosed, pre-addressed, pre-paid envelope or via first class mail, overnight courier or hand delivery to the following address:**

**PGR Ballot Processing**
**c/o Omni Agent Solutions, Inc.**
**5955 De Soto Avenue, Suite 100**
**Woodland Hills, CA 91367**

**If you would like to coordinate hand delivery of your Ballot, please send an email to PGRInquiries@OmniAgnt.com with "PGR Ballot Delivery" in the subject line at least 24 hours before your arrival at the address above and provide the anticipated date and time of your delivery.**

<u>**Via E-Ballot Portal**</u>

**Submit your Ballot via the Balloting Agent's online portal at https://omniagentsolutions.com/PGR.  Click on the "Balloting" tab of the Debtors' website, select "Submit E-Ballot" and follow the instructions to submit your Ballot.**

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique E-Ballot ID#: _____**

**The Balloting Agent's online portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.**

**Each Unique E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.  Please complete and submit an electronic Ballot for each Unique E-Ballot ID# you receive, as applicable.**

**Holders of Claims who cast a Ballot using the Balloting Agent's online portal should NOT also submit a paper Ballot.**

---

**THE VOTING DEADLINE IS JANUARY 26, 2026, AT 4:00 P.M. (PREVAILING CENTRAL TIME). IF THE BALLOTING AGENT DOES NOT *ACTUALLY RECEIVE* THIS BALLOT ON OR BEFORE THE DEADLINE, YOUR VOTE TRANSMITTED BY THIS BALLOT MAY BE COUNTED TOWARD CONFIRMATION OF THE PLAN ONLY IN THE DISCRETION OF THE DEBTORS.**

**Item 1.          Principal Amount of Claim**

The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Holder (or authorized signatory of such Holder) of a Fundamental Secured Claim in the aggregate unpaid **principal** amount inserted into the box below, without regard to any accrued but unpaid interest.

$$\$\ \underline{\hspace{10cm}}$$

**Item 2.          Vote on Plan**

Please vote below either to accept or to reject the Plan with respect to your Claims in Class 3(c). Any Ballot not marked either to accept or reject the Plan, or marked both to accept and to reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

<div style="border:1px solid black; padding:10px;">

**Before voting on the Plan, please note the following:**

**If you (a) abstain from voting, (b) vote to reject the Plan, or (c) vote to accept the Plan, and, in each case, do not check the box in Item 3 below, you shall be deemed to have consented to the Third-Party Release.**

**The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions in Article 10 of the Plan.**

**Please be advised that your decision to opt out does not affect the amount of distribution you will receive under the Plan.  Specifically, your recovery under the Plan will be the same if you opt out.**

</div>

The undersigned Holder of a Class 3(c) Fundamental Secured Claim identified in Item 1 votes to (check one box):

<div style="border:1px solid black; padding:10px;">

☐ **ACCEPT** (vote FOR) the Plan.          ☐ **REJECT** (vote AGAINST) the Plan.

</div>

THE DEBTORS RECOMMEND THAT YOU VOTE TO ACCEPT THE PLAN.

**Item 3.          Optional Release Election**

Regardless of if you voted to accept or reject the Plan in Item 2 above or if you abstained from voting on the Plan, check this box if you elect not to grant the Third-Party Release.  Election to withhold consent to the Third-Party Release is at your option.  If you submit your Ballot without this box checked, or if you do not submit your Ballot by the Voting Deadline, you will be deemed to consent to the Third-Party Release to the fullest extent permitted by applicable law.

---

☐ **Opt Out of the Third-Party Release**

---

**PLAN RELEASE, EXCULPATION AND INJUNCTION PROVISIONS**

If you are entitled to vote on the Plan and you submit a Ballot and do not check the box in Item 3 above, you shall be deemed to have consented to the Third-Party Release in the Plan and attached hereto as <u>Appendix A</u>. The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation.

**Item 4.        Acknowledgments**

By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that

(i)      it has the power and authority to vote to accept or reject the Plan;

(ii)     it was the Holder (or is entitled to vote on behalf of such Holder) of the Claims described in Item 1 as of the Voting Record Date;

(iii)    it has cast the same vote with respect to all of its Claims in the same Class as the Claims described in Item 1;

(iv)    no other Ballots with respect to the Claims identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Claims, then any such earlier received Ballots are hereby revoked;

(v)     all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned; and

(vi)    the undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan, or indicating both acceptance and rejection of the Plan, will not be counted.

---

Name of Holder of Class 3(c) Fundamental Secured Claim

---

Signature

---

_____

If by Authorized Agent, Name and Title

_____

Name of Institution

_____

Street Address

_____

City, State, Zip Code

_____

Telephone Number

_____

Email Address

_____

Date Completed


**YOU MUST SEND YOUR BALLOT TO THE BALLOTING AGENT SO THAT THE BALLOTING AGENT ACTUALLY RECEIVES THE BALLOT BY 4:00 P.M. (PREVAILING CENTRAL TIME) ON JANUARY 26, 2026, OR YOUR VOTE WILL NOT BE COUNTED.**

<u>Appendix A</u>
Release, Injunction, And Exculpation Provisions in the Plan[1]

---

[1]    Capitalized terms used but not defined in this <u>Appendix A</u> have the meanings given to them in the Plan.

## Article X

## RELEASE, EXCULPATION AND INJUNCTION PROVISIONS[1]

***Defined Terms***

"***Exculpated Parties***" means collectively: (a) the Debtors; and (b) the Independent Managers.

"***Related Parties***" means with respect to an Entity, such Entity's current and former Affiliates, and such Entity's and its current and former Affiliates' current and former directors, managers, officers, equity holders (including preferred equity holders and regardless of whether such interests are held directly or indirectly), interest holders, predecessors, participants, successors, and assigns, subsidiaries, affiliates, managed accounts or funds, and each of their respective current and former equity holders (including preferred equity holders), officers, directors, managers, principals, shareholders, members, management companies, fund advisors, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

"***Released Parties***" means, each of, and in each case solely in its capacity as such: (a) each Debtor and each Post-Effective Date Debtor; (b) the Debtors' current and former officers, directors, and managers; (c) the DIP Secured Parties and the Prepetition Secured Parties (including, but not limited to, for each, in their capacities as prepetition lenders); (d) the administrative and collateral agents under the Prepetition Credit Agreements; (e) the Successful Bidder(s); (f) the Plan Administrator; and (g) with respect to each of the foregoing Entities in clauses (a) through (g), such Entity and its Related Parties; *provided*, that, in each case, a Person shall not be a Released Party if such Person: (x) elects to opt out of the Third-Party Release or (y) timely objects to the Third-Party Release, either through (i) formal objection filed on the docket of the Chapter 11 Cases or (ii) informal objection provided to the Debtors in writing, including by electronic mail, and such objection is not withdrawn from the docket of the Chapter 11 Cases or in writing, including via electronic mail, as applicable, before Confirmation.

"***Releasing Parties***" means collectively: (a) the Released Parties; (b) all Holders of Claims who vote to accept the Plan; (c) all Holders of Claims who abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable form indicating that they opt not to grant the releases provided in the Plan; (d) all Holders of Claims and Interests who, in each case do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable form indicating that they opt not to grant the releases provided in the Plan in accordance with the procedures set forth in the Disclosure Statement Order, (i) vote to reject the Plan, (ii) are deemed to reject the Plan, or (iii) are presumed to accept the Plan; and (e) each Related Party of the Debtors, the Post-Effective Date Debtors, and each of the foregoing Entities in clauses (a) through (d), solely to the extent such Related Party (I) would be obligated to grant a release under the principles of agency if it were so directed by the Debtors, the Post-Effective Date Debtors, or the Entity in the foregoing clauses (a) through (d) to whom they are related or (II) may assert Claims or Causes of Action on behalf of or in a derivative capacity by or through the Debtors, the Post-Effective Date Debtors or an Entity in the foregoing clauses

---

[1]   Capitalized terms used but not defined in this <u>Appendix A</u> have the meanings given to them in the Plan.

(a) through (d).  A Person shall not be a Releasing Party if such Person timely objects to the Third-Party Release, either through (i) formal objection filed on the docket of the Chapter 11 Cases or (ii) informal objection provided to the Debtors in writing, including by electronic mail, and such objection is not withdrawn from the docket of the Chapter 11 Cases or in writing, including via electronic mail, as applicable, before Confirmation.

10.2.   *Debtor Release*[2]

**As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the obligations contemplated by the Plan and the documents in the Plan Supplement, or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, to the maximum extent permitted by law, by the Debtors, the Post-Effective Date Debtors, and the Estates, in each case on behalf of themselves and their respective successors, including the Plan Administrator, assigns, and Representatives and any and all other Persons that may purport to assert any Causes of Action derivatively, by or through the foregoing Persons, from any and all Claims and Causes of Action (including any derivative claims, asserted or assertable on behalf of the Debtors, the Post-Effective Date Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that the Debtors, the Post-Effective Date Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person (collectively, the "_Debtor Released Claims_"), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, or operation thereof or otherwise), the Post-Effective Date Debtors, or their Estates, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any asset or security of the Debtors or the Post-Effective Date Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan (including related to the Prepetition Funded Debt Facilities and the DIP Facilities), the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in or out-of-court restructuring, sale, and recapitalization efforts (including related to the Forbearance Documents), intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the documents in the Plan Supplement, any 363 Sale Order, the 363 Sale Transaction Documentation, the Disclosure Statement, the DIP Order and the DIP Documents, the Plan, and related agreements, instruments, and other documents, and the negotiation, formulation, preparation, dissemination, filing, pursuit of consummation, or implementation thereof, the solicitation**

---

2   Any and all releases by the Debtors and their Estates remain subject to the ongoing internal investigation.  Nothing herein shall constitute or be deemed a waiver of any Causes of Action that the Debtors may hold against any Entity.

of votes with respect to the Plan, the distribution of property under the Plan, or any other act or omission; provided, however, that the foregoing "Debtor Release" shall not operate to waive or release, and the "Debtor Released Claims" shall not include, any Cause of Action of any Debtor or Post-Effective Date Debtor or its Estate: (1) against a Released Party arising from any obligations owed to the Debtors or Post-Effective Date Debtors pursuant to an Executory Contract or Unexpired Lease that is not otherwise rejected by the Debtors pursuant to section 365 of the Bankruptcy Code before, after, or as of the Effective Date; (2) expressly set forth in and preserved by the Plan or related documents or the 363 Sale Transaction Documentation; (3) that is of a commercial nature and arising in the ordinary course of business, such as accounts receivable and accounts payable on account of goods and services being performed; (4) against a Holder of a Disputed Claim to the extent necessary to administer and resolve such Disputed Claim solely in accordance with the Plan; or (5) arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, gross negligence, or willful misconduct. Notwithstanding anything to the contrary in the foregoing, the "Debtor Release" set forth above does not release any post-Effective Date obligations of any Entity under the Plan or any document, instrument or agreement (including those set forth in the Plan Supplement) executed in connection with the Plan or the implementation thereof with respect to the Debtors, the Post-Effective Date Debtors, or the Estates.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by each of the Released Parties, including the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (2) a good-faith settlement and compromise of the Claims released by the Debtors; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Debtors' Estates, or the Plan Administrator asserting any Claim or Cause of Action released pursuant to the Debtor Release.

## 10.3.   *Release by Holders of Claims and Interests*

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, and the obligations contemplated by the Plan and the documents in the Plan Supplement, or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, to the maximum extent permitted by law, by the Releasing Parties, in each case from any and all Claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors, the Post-Effective Date Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international,

foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such Holders or their estates, affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, Representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person (collectively, the "Third Party Released Claims"), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, or operation thereof or otherwise), the Post-Effective Date Debtors, or the Estates, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any asset or security of the Debtors or the Post-Effective Date Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan (including related to the Prepetition Funded Debt Facilities and the DIP Facilities), the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in or out-of-court restructuring, sale, and recapitalization efforts (including related to the Forbearance Documents), intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the documents in the Plan Supplement, any 363 Sale Order, the 363 Sale Transaction Documentation, Disclosure Statement, the DIP Order and the DIP Documents, the Plan, and related agreements, instruments, and other documents, and the negotiation, formulation, preparation, dissemination, filing, pursuit of consummation, or implementation thereof, the solicitation of votes with respect to the Plan, the distribution of property under the Plan, or any other act or omission; provided, however, that the foregoing Third-Party Release shall not operate to waive or release, and the "Third-Party Released Claims" shall not include, any Cause of Action of any Releasing Party: (1) against a Released Party arising from any obligations owed to the Releasing Party that are wholly unrelated to the Debtors or the Post-Effective Date Debtors; (2) expressly set forth in and preserved by the Plan or related documents; or (3) arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, gross negligence, or willful misconduct.  Notwithstanding anything to the contrary in the foregoing, the "Third-Party Release" set forth above does not release any post-Effective Date obligations of any Entity under the Plan or any document, instrument or agreement (including those set forth in the Plan Supplement) executed in connection with the Plan or the implementation thereof.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) consensual; (2) given and made after due notice and opportunity for hearing; and (3) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release; (4) in exchange for good and valuable consideration provided by each of the Released Parties, including the Released Parties' substantial contributions to facilitating the

**363 Sale Transaction and implementing the Plan; (5) fair, equitable, and reasonable; and (6) essential to the Confirmation of the Plan.**

### 10.4.  *Exculpation*

**To the fullest extent permitted by applicable law, and without affecting or limiting the releases set forth in <u>Article 10.2</u> or <u>Article 10.3</u> of the Plan, effective as of the Effective Date, the Exculpated Parties shall neither have nor incur any liability to any Person or entity for any claims, causes of action or for any act taken or omitted to be taken on or after the Petition Date and prior to or on the Effective Date in connection with or arising out of: the administration of the Chapter 11 Cases, commencement of the Chapter 11 Cases, pursuit of Confirmation and Consummation of the Plan, making Distributions, implementing the Wind-Down, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the 363 Sale Transaction, the Plan, the Plan Supplement, or any contract, instrument, release, or other agreement or document created or entered into in connection therewith, or the solicitation of votes for, or Confirmation of, the Plan; the occurrence of the Effective Date; the administration of the Plan or the property to be distributed under the Plan; the issuance of securities under or in connection with the Plan; the purchase, sale, or rescission of the purchase or sale of any asset or security of the Debtors; or the transactions in furtherance of any of the foregoing; <u>provided</u>, <u>however</u>, that none of the foregoing provisions shall operate to waive or release (i) any Claims or Causes of Action arising out of or related to any act or omission of an Exculpated Party that constitutes intentional fraud, criminal conduct, or willful misconduct, as determined by a Final Order, and (ii) the Exculpated Parties' rights and obligations arising on or after the Effective Date under the Plan, the Plan Supplement documents, and the Confirmation Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation of votes on the Plan and, therefore, are not, and will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or Distributions made pursuant to the Plan. The Exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.**

### 10.5.  *Permanent Injunction*

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to the Plan, including the Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in the Plan or the Confirmation Order.

**No Person or Entity may commence or pursue a Claim or Cause of Action, as applicable, of any kind against the Debtors, the Post-Effective Date Debtors, the Exculpated Parties, or the Released Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action, as**

applicable, subject to <u>Article 10.2</u>, <u>Article 10.3</u>, <u>Article 10.4</u>, and <u>Article 10.5</u> hereof, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action, as applicable, represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action, as applicable, against any such Debtor, Post-Effective Date Debtor, Exculpated Party, or Released Party, as applicable.  At the hearing for the Bankruptcy Court to determine whether such Claim or Cause of Action represents a colorable Claim of any kind, the Bankruptcy Court may, or shall if any Debtor, Post-Effective Date Debtor, Exculpated Party, Released Party, or other party in interest requests by motion (oral motion being sufficient), direct that such Person or Entity seeking to commence or pursue such Claim or Cause of Action file a proposed complaint with the Bankruptcy Court embodying such Claim or Cause of Action, such complaint satisfying the applicable Rules of Federal Procedure, including, but not limited to, Rule 8 and Rule 9 (as applicable), which the Bankruptcy Court shall assess before making a determination.  For the avoidance of doubt, any party that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any claims or causes of action not explicitly included in the authorized complaint or petition must obtain authorization from the Bankruptcy Court before filing any such amendment in the court where such complaint or petition is pending.  The Bankruptcy Court reserves jurisdiction to adjudicate any such claims to the maximum extent provided by the law.

# **EXHIBIT 4**

Form of Ballot for Class 4

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

```
------------------------------------------------------------ x
                                                             :
In re:                                                       :   Chapter 11
                                                             :
PINE GATE RENEWABLES, LLC, et al.,                           :   Case No. 25-90669 (CML)
                                                             :
             Debtors¹                                        :   (Jointly Administered)
                                                             :
------------------------------------------------------------ x
```

**BALLOT FOR HOLDERS OF CLAIMS**
**IN CLASS 4 (GENERAL UNSECURED CLAIMS)**
**FOR VOTING TO ACCEPT OR REJECT THE JOINT CHAPTER 11**
**PLAN OF PINE GATE RENEWABLES, LLC AND ITS DEBTOR AFFILIATES**

---

**The voting deadline to accept or reject the Plan is 4:00 p.m. (prevailing Central Time), on <u>January 26, 2026</u> (the "*Voting Deadline*"), unless extended by the Debtors.**

**Please be advised that Article 10 of the Plan contains release, exculpation and injunction provisions. These provisions are included in the Ballot. You are advised to review and consider the Plan carefully because your rights might be affected thereunder even if you abstain from voting. If you (a) abstain from voting or (b) vote to reject the Plan and, in each case, do not check the box in Item 3 below, you will be deemed to have consented to the release provisions set forth in Article 10.3 of the Plan (the "*Third-Party Release*").**

**Please be advised that your decision to opt out does not affect the amount of distribution you will receive under the Plan. Specifically, your recovery under the Plan will be the same if you opt out.**

---

This ballot (the "***Ballot***") is provided to you to solicit your vote to accept or reject the *Joint Chapter 11 Plan of Pine Gate Renewables, LLC and Its Debtor Affiliates* [Docket No. [ ● ]] (as may be amended from time to time, the "***Plan***") for Pine Gate Renewables, LLC ("***PGR***") and its debtor affiliates (together with PGR, the "***Debtors***").²

---

¹ A complete list of each of the Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number (if applicable) may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/PGR. The Debtors' mailing address for the purposes of the Chapter 11 Cases is 130 Roberts Street, Asheville, North Carolina 28801.

² Capitalized but undefined terms herein shall have the meanings ascribed to them in the Plan.

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of December 18, 2025 (the "***Voting Record Date***"), a holder of a General Unsecured Claim (a "***Holder***") against the Debtors.

**PLEASE NOTE THAT IF YOU ARE A COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE YOU ARE RECEIVING THIS BALLOT BECAUSE YOU MAY HAVE A CLASS 4 CLAIM AGAINST ONE OR MORE OF THE DEBTORS.  RECEIPT OF THIS BALLOT DOES NOT REFLECT THE INTENDED TREATMENT OF THE EXECUTORY CONTRACT(S) OR UNEXPIRED LEASE(S) TO WHICH YOU ARE A PARTY AND DOES NOT MEAN THAT SUCH EXECUTORY CONTRACT OR UNEXPIRED LEASE WILL OR WILL NOT BE ASSUMED OR ASSUMED AND ASSIGNED TO THE SUCCESSFUL BIDDER(S).**

The Plan is attached as <u>Exhibit A</u> to the *Disclosure Statement for Joint Chapter 11 Plan of Pine Gate Renewables, LLC and Its Debtor Affiliates* [Docket No [ ● ]] (as amended, modified, or supplemented from time to time, the "***Disclosure Statement***"), which was included in the package (the "***Solicitation Package***") you received with this Ballot.  The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan.  The recoveries described in the Disclosure Statement are subject to confirmation of the Plan.  If you do not have the Solicitation Package, you may obtain a copy (a) from Omni Agent Solutions, Inc. (the "***Balloting Agent***") at no charge by: (i) visiting the Balloting Agent's website at https://omniagentsolutions.com/PGR or using the QR Code below, (ii) calling (747) 263-0193 (international) or +1 (888) 812-2572 (U.S./Canada, toll free), or (iii) sending an electronic message to PGRInquiries@OmniAgnt.com with "**PGR Solicitation Inquiry**" in the subject line and requesting a copy be provided to you; or (b) for a fee via PACER at https://www.txs.uscourts.gov/bankruptcy.  You should review the Disclosure Statement and the Plan before you vote.  You may wish to seek independent legal, financial or tax advice concerning the Plan and your classification and treatment under the Plan.  If you believe you have received this Ballot in error, or if you believe that you have received the wrong Ballot or a Ballot in the wrong amount, please contact the Balloting Agent **immediately** at the address, telephone number, or email address set forth below.



On November 6, 2025, the Debtors commenced voluntary cases under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "***Bankruptcy Code***").  The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by the Holders of at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in each Voting Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code.  **If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan, and (b) otherwise satisfies the requirements of section 1129 of the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.**  To have your

vote counted, you must complete, sign, and return this Ballot to the Balloting Agent by the Voting Deadline.

*[Remainder of page left intentionally blank]*

**IMPORTANT NOTICE REGARDING TREATMENT
FOR HOLDERS OF CLASS 4 GENERAL UNSECURED CLAIMS**

As described in more detail in the Disclosure Statement and Plan, if the Plan is confirmed, and the Effective Date occurs, then on or as soon as reasonably practicable after the Effective Date, in full and final satisfaction, compromise, settlement, and release of its Claim (unless the applicable Holder agrees to a less favorable treatment), each Holder of an Allowed General Unsecured Claim that is not assumed by the Successful Bidder(s) shall receive its Pro Rata Share of the Distributable Proceeds pursuant to the Waterfall Recovery.

**Please be advised that if the Plan is consummated, Holders of Class 4 General Unsecured Claims will be bound by the release, injunction, and exculpation provisions contained in Article 10 of the Plan and set forth in <u>Appendix A</u>, and if such Holders opt out of the Third-Party Release, they will not be deemed to have granted such releases and will not receive releases under the Plan.**

[*Remainder of page left intentionally blank*]

4

**IMPORTANT**

YOU SHOULD CAREFULLY REVIEW THE DISCLOSURE STATEMENT AND PLAN BEFORE YOU VOTE.  YOU MAY WISH TO SEEK LEGAL ADVICE CONCERNING THE PLAN AND THE CLASSIFICATION AND TREATMENT OF YOUR CLAIMS UNDER THE PLAN.

THE BALLOTING AGENT IS NOT AUTHORIZED TO (AND WILL NOT) PROVIDE LEGAL ADVICE.

VOTING RECORD DATE:  DECEMBER 18, 2025

VOTING DEADLINE:  4:00 P.M. PREVAILING CENTRAL TIME ON JANUARY 26, 2026 (UNLESS EXTENDED BY THE DEBTORS IN THEIR SOLE DISCRETION)

---

FOR YOUR VOTE TO COUNT, YOU MUST SUBMIT THIS BALLOT TO THE BALLOTING AGENT, SUCH THAT THE BALLOT IS <u>ACTUALLY RECEIVED</u> BY THE BALLOTING AGENT BY THE VOTING DEADLINE.  IF THE BALLOTING AGENT DOES NOT <u>ACTUALLY RECEIVE</u> THE BALLOT INDICATING YOUR VOTE CAST ON YOUR BALLOT BY THE VOTING DEADLINE, YOUR VOTE WILL NOT BE COUNTED, EXCEPT AS DIRECTED BY THE DEBTORS IN THEIR SOLE DISCRETION, AND ANY ELECTION TO OPT OUT OF THE THIRD-PARTY RELEASE WILL NOT BE VALID.

YOU SHOULD NOT SEND YOUR BALLOT TO ANY OF THE DEBTOR ENTITIES, DEBTORS' AGENTS (OTHER THAN THE BALLOTING AGENT), OR DEBTORS' FINANCIAL OR LEGAL ADVISORS.  IF SO SENT, THE BALLOT WILL NOT BE COUNTED IN CONNECTION WITH THE PLAN.

IF THE PLAN IS CONFIRMED BY THE BANKRUPTCY COURT, IT WILL BE BINDING ON YOU WHETHER OR NOT YOU VOTE.

*[Remainder of page left intentionally blank]*

## **BALLOT INSTRUCTIONS**

1.      Complete Item 1.

2.      Complete Item 2.

3.      If you elect not to grant the Third-Party Release, check the box in Item 3.  Election to withhold consent to the Third-Party Release is at your option.  If you submit your Ballot without the box in Item 3 checked, you will be deemed to consent to the Third-Party Release to the fullest extent permitted by applicable law.

4.      Review the certification contained in Item 4.

5.      Sign and date the Ballot and fill out the other required information.

6.      Return your completed Ballot to the Balloting Agent no later than January 26, 2026, at 4:00 p.m. (prevailing Central Time).

7.      The Ballot does not constitute, and shall not be deemed to be, a proof of claim or interest or an assertion or admission of a Claim or Interest. The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

8.      You must vote the full amount of your Class 4 General Unsecured Claim *either* to accept *or* reject the Plan and may not split your vote. An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan will not be counted, unless otherwise determined by the Debtors, in their sole discretion.

9.      If you cast more than one Ballot voting the same Claim before the Voting Deadline, the last received, properly executed Ballot submitted to the Balloting Agent will supersede and revoke any prior Ballot, provided that, if a Holder timely submits  both a paper Ballot and electronic Ballot on account of the same Claim, the electronic Ballot shall supersede the paper Ballot.

10.     For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single Holder in a particular Class will be aggregated and treated as if such Holder held one Claim in such Class, and all votes related to such Claim will be treated as a single vote to accept or reject the Plan; *provided*, *however*, that if separate affiliated entities hold Claims in a particular Class, these Claims will not be aggregated and will not be treated as if such Holder held one Claim in such Class, and the vote of each affiliated entity will be counted separately as a vote to accept or reject the Plan.

11.     The following Ballots will not be counted in determining the acceptance or rejection of the Plan: (i) any Ballot that is illegible or contains insufficient information to permit the identification of the Holder, (ii) any Ballot cast by a Person or Entity that does not hold a Claim in a Class entitled to vote on the Plan, (iii) any unsigned Ballot, (iv) any Ballot that does not contain an original signature, and (v) any Ballot not marked to accept or reject the Plan, or marked both to accept and reject the Plan.

12. If a Ballot with your vote is received after the Voting Deadline, it will not be counted, unless otherwise determined by the Debtors, in their sole discretion. The method of delivery of the Ballot to the Balloting Agent is at your election and risk.

13. The Ballot should not be sent to the Debtors, the Bankruptcy Court, or the Debtors' financial or legal advisors.

14. In the event that (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

15. There may be changes made to the Plan that do not have material adverse effects on an accepting Class. If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

NO PERSON, INCLUDING THE BALLOTING AGENT, HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

PLEASE RETURN YOUR BALLOT PROMPTLY TO THE BALLOTING AGENT BY ONE OF THE METHODS BELOW. IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CALL THE BALLOTING AGENT AT (747) 263-0193 (INTERNATIONAL) OR +1 (888) 812-2572 (U.S./CANADA, TOLL FREE) OR BY SENDING AN EMAIL TO PGRINQUIRIES@OMNIAGNT.COM WITH "PGR SOLICITATION INQUIRY" IN THE SUBJECT LINE. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

*[Remainder of page left intentionally blank]*

7

**YOUR COMPLETED BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THE BALLOTING AGENT BY THE VOTING DEADLINE IN ONE OF THE MANNERS SET FORTH BELOW:**

<div style="border:1px solid black">

**<u>If by Regular Mail, Hand Delivery, or Overnight Courier</u>**

**Please complete your Ballot in accordance with these instructions, clearly indicate your decision to accept or reject the Plan in the boxes provided in Item 2 of the Ballot, clearly sign and date your Ballot, and return your original Ballot in the enclosed, pre-addressed, pre-paid envelope or via first class mail, overnight courier or hand delivery to the following address:**

**PGR Ballot Processing**
**c/o Omni Agent Solutions, Inc.**
**5955 De Soto Avenue, Suite 100**
**Woodland Hills, CA 91367**

**If you would like to coordinate hand delivery of your Ballot, please send an email to PGRInquiries@OmniAgnt.com with "PGR Ballot Delivery" in the subject line at least 24 hours before your arrival at the address above and provide the anticipated date and time of your delivery.**

**<u>Via E-Ballot Portal</u>**

**Submit your Ballot via the Balloting Agent's online portal at https://omniagentsolutions.com/PGR.  Click on the "Balloting" tab of the Debtors' website, select "Submit E-Ballot" and follow the instructions to submit your Ballot.**

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique E-Ballot ID#: _____**

**The Balloting Agent's online portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.**

**Each Unique E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.  Please complete and submit an electronic Ballot for each Unique E-Ballot ID# you receive, as applicable.**

**Holders of Claims who cast a Ballot using the Balloting Agent's online portal should NOT also submit a paper Ballot.**

</div>

**THE VOTING DEADLINE IS JANUARY 26, 2026, AT 4:00 P.M. (PREVAILING CENTRAL TIME). IF THE BALLOTING AGENT DOES NOT *ACTUALLY RECEIVE* THIS BALLOT ON OR BEFORE THE DEADLINE, YOUR VOTE TRANSMITTED BY THIS BALLOT MAY BE COUNTED TOWARD CONFIRMATION OF THE PLAN ONLY IN THE DISCRETION OF THE DEBTORS.**

**Item 1.**          **Principal Amount of Claim**

The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Holder (or authorized signatory of such Holder) of a General Unsecured Claim in the aggregate unpaid **<u>principal</u>** amount inserted into the box below, without regard to any accrued but unpaid interest.

$ _____

**Item 2.**          **Vote on Plan**

Please vote below either to accept or to reject the Plan with respect to your Claims in Class 4. Any Ballot not marked either to accept or reject the Plan, or marked both to accept and to reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

---

**Before voting on the Plan, please note the following:**

**If you (a) abstain from voting, (b) vote to reject the Plan, or (c) vote to accept the Plan, and, in each case, do not check the box in Item 3 below, you shall be deemed to have consented to the Third-Party Release.**

**The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions in Article 10 of the Plan.**

**Please be advised that your decision to opt out does not affect the amount of distribution you will receive under the Plan. Specifically, your recovery under the Plan will be the same if you opt out.**

---

The undersigned Holder of a Class 4 General Unsecured Claim identified in Item 1 votes to (check one box):

---

☐ **ACCEPT** (vote FOR) the Plan.          ☐ **REJECT** (vote AGAINST) the Plan.

---

THE DEBTORS RECOMMEND THAT YOU VOTE TO ACCEPT THE PLAN.

**Item 3.**          **Optional Release Election**

Regardless of if you voted to accept or reject the Plan in Item 2 above or if you abstained from voting on the Plan, check this box if you elect not to grant the Third-Party Release. Election to withhold consent to the Third-Party Release is at your option. If you submit your Ballot without this box checked, or if you do not submit your Ballot by the Voting Deadline, you will be deemed to consent to the Third-Party Release to the fullest extent permitted by applicable law.

☐ **Opt Out of the Third-Party Release**

**PLAN RELEASE, EXCULPATION AND INJUNCTION PROVISIONS**

If you are entitled to vote on the Plan and you submit a Ballot and do not check the box in Item 3 above, you shall be deemed to have consented to the Third-Party Release in the Plan and attached hereto as <u>Appendix A</u>.  The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation.

**Item 4.**      **Acknowledgments**

By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that

(i)      it has the power and authority to vote to accept or reject the Plan;

(ii)      it was the Holder (or is entitled to vote on behalf of such Holder) of the Claims described in Item 1 as of the Voting Record Date;

(iii)      it has cast the same vote with respect to all of its Claims in the same Class as the Claims described in Item 1;

(iv)      no other Ballots with respect to the Claims identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Claims, then any such earlier received Ballots are hereby revoked;

(v)      all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned; and

(vi)      the undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan, or indicating both acceptance and rejection of the Plan, will not be counted.

_____

Name of Holder of Class 4 General Unsecured Claim

_____

Signature

10

_____

If by Authorized Agent, Name and Title

_____

Name of Institution

_____

Street Address

_____

City, State, Zip Code

_____

Telephone Number

_____

Email Address

_____

Date Completed


**YOU MUST SEND YOUR BALLOT TO THE BALLOTING AGENT SO THAT THE BALLOTING AGENT ACTUALLY RECEIVES THE BALLOT BY 4:00 P.M. (PREVAILING CENTRAL TIME) ON JANUARY 26, 2026, OR YOUR VOTE WILL NOT BE COUNTED.**

Appendix A
Release, Injunction, And Exculpation Provisions in the Plan[1]

---

[1]   Capitalized terms used but not defined in this <u>Appendix A</u> have the meanings given to them in the Plan.

## Article X

## RELEASE, EXCULPATION AND INJUNCTION PROVISIONS[1]

### *Defined Terms*

"***Exculpated Parties***" means collectively: (a) the Debtors; and (b) the Independent Managers.

"***Related Parties***" means with respect to an Entity, such Entity's current and former Affiliates, and such Entity's and its current and former Affiliates' current and former directors, managers, officers, equity holders (including preferred equity holders and regardless of whether such interests are held directly or indirectly), interest holders, predecessors, participants, successors, and assigns, subsidiaries, affiliates, managed accounts or funds, and each of their respective current and former equity holders (including preferred equity holders), officers, directors, managers, principals, shareholders, members, management companies, fund advisors, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

"***Released Parties***" means, each of, and in each case solely in its capacity as such: (a) each Debtor and each Post-Effective Date Debtor; (b) the Debtors' current and former officers, directors, and managers; (c) the DIP Secured Parties and the Prepetition Secured Parties (including, but not limited to, for each, in their capacities as prepetition lenders); (d) the administrative and collateral agents under the Prepetition Credit Agreements; (e) the Successful Bidder(s); (f) the Plan Administrator; and (g) with respect to each of the foregoing Entities in clauses (a) through (g), such Entity and its Related Parties; *provided*, that, in each case, a Person shall not be a Released Party if such Person: (x) elects to opt out of the Third-Party Release or (y) timely objects to the Third-Party Release, either through (i) formal objection filed on the docket of the Chapter 11 Cases or (ii) informal objection provided to the Debtors in writing, including by electronic mail, and such objection is not withdrawn from the docket of the Chapter 11 Cases or in writing, including via electronic mail, as applicable, before Confirmation.

"***Releasing Parties***" means collectively: (a) the Released Parties; (b) all Holders of Claims who vote to accept the Plan; (c) all Holders of Claims who abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable form indicating that they opt not to grant the releases provided in the Plan; (d) all Holders of Claims and Interests who, in each case do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable form indicating that they opt not to grant the releases provided in the Plan in accordance with the procedures set forth in the Disclosure Statement Order, (i) vote to reject the Plan, (ii) are deemed to reject the Plan, or (iii) are presumed to accept the Plan; and (e) each Related Party of the Debtors, the Post-Effective Date Debtors, and each of the foregoing Entities in clauses (a) through (d), solely to the extent such Related Party (I) would be obligated to grant a release under the principles of agency if it were so directed by the Debtors, the Post-Effective Date Debtors, or the Entity in the foregoing clauses (a) through (d) to whom they are related or (II) may assert Claims or Causes of Action on behalf of or in a derivative capacity by or through the Debtors, the Post-Effective Date Debtors or an Entity in the foregoing clauses

---

[1]    Capitalized terms used but not defined in this <u>Appendix A</u> have the meanings given to them in the Plan.

(a) through (d).  A Person shall not be a Releasing Party if such Person timely objects to the Third-Party Release, either through (i) formal objection filed on the docket of the Chapter 11 Cases or (ii) informal objection provided to the Debtors in writing, including by electronic mail, and such objection is not withdrawn from the docket of the Chapter 11 Cases or in writing, including via electronic mail, as applicable, before Confirmation.

### 10.2.  *Debtor Release*[2]

**As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the obligations contemplated by the Plan and the documents in the Plan Supplement, or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, to the maximum extent permitted by law, by the Debtors, the Post-Effective Date Debtors, and the Estates, in each case on behalf of themselves and their respective successors, including the Plan Administrator, assigns, and Representatives and any and all other Persons that may purport to assert any Causes of Action derivatively, by or through the foregoing Persons, from any and all Claims and Causes of Action (including any derivative claims, asserted or assertable on behalf of the Debtors, the Post-Effective Date Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that the Debtors, the Post-Effective Date Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person (collectively, the "Debtor Released Claims"), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, or operation thereof or otherwise), the Post-Effective Date Debtors, or their Estates, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any asset or security of the Debtors or the Post-Effective Date Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan (including related to the Prepetition Funded Debt Facilities and the DIP Facilities), the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in or out-of-court restructuring, sale, and recapitalization efforts (including related to the Forbearance Documents), intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the documents in the Plan Supplement, any 363 Sale Order, the 363 Sale Transaction Documentation, the Disclosure Statement, the DIP Order and the DIP Documents, the Plan, and related agreements, instruments, and other documents, and the negotiation, formulation, preparation, dissemination, filing, pursuit of consummation, or implementation thereof, the solicitation**

---

[2]  Any and all releases by the Debtors and their Estates remain subject to the ongoing internal investigation.  Nothing herein shall constitute or be deemed a waiver of any Causes of Action that the Debtors may hold against any Entity.

of votes with respect to the Plan, the distribution of property under the Plan, or any other act or omission; provided, however, that the foregoing "Debtor Release" shall not operate to waive or release, and the "Debtor Released Claims" shall not include, any Cause of Action of any Debtor or Post-Effective Date Debtor or its Estate: (1) against a Released Party arising from any obligations owed to the Debtors or Post-Effective Date Debtors pursuant to an Executory Contract or Unexpired Lease that is not otherwise rejected by the Debtors pursuant to section 365 of the Bankruptcy Code before, after, or as of the Effective Date; (2) expressly set forth in and preserved by the Plan or related documents or the 363 Sale Transaction Documentation; (3) that is of a commercial nature and arising in the ordinary course of business, such as accounts receivable and accounts payable on account of goods and services being performed; (4) against a Holder of a Disputed Claim to the extent necessary to administer and resolve such Disputed Claim solely in accordance with the Plan; or (5) arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, gross negligence, or willful misconduct.  Notwithstanding anything to the contrary in the foregoing, the "Debtor Release" set forth above does not release any post-Effective Date obligations of any Entity under the Plan or any document, instrument or agreement (including those set forth in the Plan Supplement) executed in connection with the Plan or the implementation thereof with respect to the Debtors, the Post-Effective Date Debtors, or the Estates.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by each of the Released Parties, including the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (2) a good-faith settlement and compromise of the Claims released by the Debtors; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Debtors' Estates, or the Plan Administrator asserting any Claim or Cause of Action released pursuant to the Debtor Release.

## 10.3.   *Release by Holders of Claims and Interests*

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, and the obligations contemplated by the Plan and the documents in the Plan Supplement, or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, to the maximum extent permitted by law, by the Releasing Parties, in each case from any and all Claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors, the Post-Effective Date Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international,

foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such Holders or their estates, affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, Representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person (collectively, the "**Third Party Released Claims**"), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, or operation thereof or otherwise), the Post-Effective Date Debtors, or the Estates, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any asset or security of the Debtors or the Post-Effective Date Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan (including related to the Prepetition Funded Debt Facilities and the DIP Facilities), the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in or out-of-court restructuring, sale, and recapitalization efforts (including related to the Forbearance Documents), intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the documents in the Plan Supplement, any 363 Sale Order, the 363 Sale Transaction Documentation, Disclosure Statement, the DIP Order and the DIP Documents, the Plan, and related agreements, instruments, and other documents, and the negotiation, formulation, preparation, dissemination, filing, pursuit of consummation, or implementation thereof, the solicitation of votes with respect to the Plan, the distribution of property under the Plan, or any other act or omission; _provided_, _however_, that the foregoing Third-Party Release shall not operate to waive or release, and the "Third-Party Released Claims" shall not include, any Cause of Action of any Releasing Party: (1) against a Released Party arising from any obligations owed to the Releasing Party that are wholly unrelated to the Debtors or the Post-Effective Date Debtors; (2) expressly set forth in and preserved by the Plan or related documents; or (3) arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, gross negligence, or willful misconduct.  Notwithstanding anything to the contrary in the foregoing, the "**Third-Party Release**" set forth above does not release any post-Effective Date obligations of any Entity under the Plan or any document, instrument or agreement (including those set forth in the Plan Supplement) executed in connection with the Plan or the implementation thereof.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) consensual; (2) given and made after due notice and opportunity for hearing; and (3) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release; (4) in exchange for good and valuable consideration provided by each of the Released Parties, including the Released Parties' substantial contributions to facilitating the

**363 Sale Transaction and implementing the Plan; (5) fair, equitable, and reasonable; and (6) essential to the Confirmation of the Plan.**

### 10.4.   *Exculpation*

**To the fullest extent permitted by applicable law, and without affecting or limiting the releases set forth in <u>Article 10.2</u> or <u>Article 10.3</u> of the Plan, effective as of the Effective Date, the Exculpated Parties shall neither have nor incur any liability to any Person or entity for any claims, causes of action or for any act taken or omitted to be taken on or after the Petition Date and prior to or on the Effective Date in connection with or arising out of: the administration of the Chapter 11 Cases, commencement of the Chapter 11 Cases, pursuit of Confirmation and Consummation of the Plan, making Distributions, implementing the Wind-Down, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the 363 Sale Transaction, the Plan, the Plan Supplement, or any contract, instrument, release, or other agreement or document created or entered into in connection therewith, or the solicitation of votes for, or Confirmation of, the Plan; the occurrence of the Effective Date; the administration of the Plan or the property to be distributed under the Plan; the issuance of securities under or in connection with the Plan; the purchase, sale, or rescission of the purchase or sale of any asset or security of the Debtors; or the transactions in furtherance of any of the foregoing; <u>provided</u>, <u>however</u>, that none of the foregoing provisions shall operate to waive or release (i) any Claims or Causes of Action arising out of or related to any act or omission of an Exculpated Party that constitutes intentional fraud, criminal conduct, or willful misconduct, as determined by a Final Order, and (ii) the Exculpated Parties' rights and obligations arising on or after the Effective Date under the Plan, the Plan Supplement documents, and the Confirmation Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation of votes on the Plan and, therefore, are not, and will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or Distributions made pursuant to the Plan. The Exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.**

### 10.5.   *Permanent Injunction*

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to the Plan, including the Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in the Plan or the Confirmation Order.

**No Person or Entity may commence or pursue a Claim or Cause of Action, as applicable, of any kind against the Debtors, the Post-Effective Date Debtors, the Exculpated Parties, or the Released Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action, as**

5

applicable, subject to <u>Article 10.2</u>, <u>Article 10.3</u>, <u>Article 10.4</u>, and <u>Article 10.5</u> hereof, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action, as applicable, represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action, as applicable, against any such Debtor, Post-Effective Date Debtor, Exculpated Party, or Released Party, as applicable.  At the hearing for the Bankruptcy Court to determine whether such Claim or Cause of Action represents a colorable Claim of any kind, the Bankruptcy Court may, or shall if any Debtor, Post-Effective Date Debtor, Exculpated Party, Released Party, or other party in interest requests by motion (oral motion being sufficient), direct that such Person or Entity seeking to commence or pursue such Claim or Cause of Action file a proposed complaint with the Bankruptcy Court embodying such Claim or Cause of Action, such complaint satisfying the applicable Rules of Federal Procedure, including, but not limited to, Rule 8 and Rule 9 (as applicable), which the Bankruptcy Court shall assess before making a determination.  For the avoidance of doubt, any party that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any claims or causes of action not explicitly included in the authorized complaint or petition must obtain authorization from the Bankruptcy Court before filing any such amendment in the court where such complaint or petition is pending.  The Bankruptcy Court reserves jurisdiction to adjudicate any such claims to the maximum extent provided by the law.

**EXHIBIT 5**

Cover Letter

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

```
------------------------------------------------------------ x
                                            :
In re:                                      :   Chapter 11
                                            :
PINE GATE RENEWABLES, LLC, et al.,          :   Case No. 25-90669 (CML)
                                            :
        Debtors¹                            :   (Jointly Administered)
                                            :
------------------------------------------------------------ x
```

### COVER LETTER AND RECOMMENDATION OF DEBTORS

> **THE DEBTORS STRONGLY URGE YOU TO VOTE IN FAVOR OF THE PLAN.  YOU MAY DO SO BY TIMELY SUBMITTING A BALLOT INDICATING YOUR ACCEPTANCE OF THE PLAN AS EXPLAINED IN THE VOTING INSTRUCTIONS ACCOMPANYING THE BALLOT.  THE VOTING DEADLINE IS <u>JANUARY 26</u>, 2026, AT 4:00 P.M. (PREVAILING CENTRAL TIME).**

**To all holders of Claims in Classes 3(a), 3(b), 3(c) and 4:**

You are receiving this letter because you are, or may be, a holder of a Claim in Classes 3(a) (Brookfield Secured Claims), 3(b) (Carlyle Secured Claims), 3(c) (Fundamental Secured Claims) and 4 (General Unsecured Claims) (collectively, the "***Voting Classes***").  As a holder, or potential holder, of a claim in a Voting Class, you are entitled to vote to accept or reject the *Joint Chapter 11 Plan of Pine Gate Renewables, LLC and Its Debtor Affiliates* [Docket No. [ ● ]] (as it may be amended, modified, or supplemented from time to time, the "***Plan***").[2]  ***Therefore, you should read this letter and the enclosed materials carefully and discuss them with your legal, financial, and tax advisors.  If you do not have an attorney you may wish to consult one.***

The Plan is being proposed by Pine Gate Renewables, LLC and its debtor affiliates (collectively, the "***Debtors***") and is described in greater detail in the *Disclosure Statement for Joint*

---

[1]    A complete list of each of the Debtors in these chapter 11 cases (the "***Chapter 11 Cases***") and the last four digits of each Debtor's taxpayer identification number (if applicable) may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/PGR (the "***Case Website***").  The Debtors' mailing address for the purposes of the Chapter 11 Cases is 130 Roberts Street, Asheville, North Carolina 28801.

[2]    Capitalized terms used but not defined herein have the meanings given to them in the Plan.

*Chapter 11 Plan of Pine Gate Renewables, LLC and Its Debtor Affiliates* [Docket No. [ ● ]] (the "***Disclosure Statement***") and other materials accompanying this letter (collectively, the "***Solicitation Package***").

The Plan and Disclosure Statement are the product of the Debtors' review and analysis of their assets and liabilities, the circumstances leading to the commencement of the Chapter 11 Cases, and other significant events occurring during the Chapter 11 Cases. Among other things, the Plan facilitates the wind-down of the Debtors' estates following the closing of the Sales (which may only occur after entry of an order approving the Sales). The Disclosure Statement describes the Plan in detail, including the distributions to Holders of Claims and Interests contemplated pursuant to the Plan and the effect of the Plan on such Holders. The Disclosure Statement also provides information to assist Holders of Claims and Interests entitled to vote in determining whether to vote to accept or reject the Plan.

The Debtors believe that the implementation of the Plan is in the best interests of the Debtors and their stakeholders, including you. The Debtors believe that the Plan is the best outcome for all interested parties following the Sales and facilitates distributions to creditors and an orderly wind-down of the Debtors' Estates. If a chapter 11 plan of liquidation is not confirmed, the Debtors' alternative options are to convert to a chapter 7 liquidation or pursue a dismissal of the Chapter 11 Cases. The Debtors believe that liquidation under chapter 7 would result in lesser distributions to creditors than those provided for in the Plan because of, among other reasons, the delay resulting from the conversion of the Chapter 11 Cases and the additional administrative expenses associated with the appointment of a trustee and the trustee's retention of professionals (who would be required to become familiar with the many legal and factual issues in the Chapter 11 Cases). Likewise, the Debtors believe that dismissal of the Chapter 11 Cases would result in smaller recoveries for creditors than the recoveries under the Plan because of, among other reasons, delay resulting from the dismissal of the Chapter 11 Cases and expenses associated with exercising remedies under non-bankruptcy law.

The materials in the Solicitation Package are intended to be self-explanatory. If you have any questions, however, please feel free to contact (a) the Debtors' Balloting Agent, Omni Agent Solutions, Inc. by: (i) visiting the Debtors' restructuring website at: https://omniagentsolutions.com/PGR or via the QR Code below; (ii) e-mailing PGRInquiries@OmniAgnt.com and including "PGR Solicitation Inquiry" in the subject line; or (iii) calling (747) 263-0193 (international) or +1(888) 812-2572 (U.S./Canada, toll free); or (b) the Debtors' counsel: (i) Latham & Watkins, LLP, (a) 1271 Avenue of the Americas, New York, New York 10020 (Attn: Ray C. Schrock (ray.schrock@lw.com), Andrew M. Parlen (andrew.parlen@lw.com), and Alexander M. Welch (alex.welch@lw.com)); (b) 330 North Wabash Avenue, Suite 2800, Chicago, IL 60611 (Attn: Jason B. Gott (jason.gott@lw.com) and Jonathan C. Gordon (jonathan.gordon@lw.com)); and (ii) Hunton Andrews Kurth LLP, 600 Travis Street, Suite 4200, Houston, Texas 77002 (Attn: Timothy A. ("Tad") Davidson II (taddavidson@hunton.com), Philip M. Guffy (pguffy@hunton.com), and Brandon Bell (bbell@hunton.com)).

***Please do not direct any inquiries directly to the Debtors***.