IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

--------------------------------------------------------- x
: 
In re: : Chapter 11
: 
PINE GATE RENEWABLES, LLC, *et al.*, : Case No. 25-90669 (CML)
: 
Debtors[1] : (Jointly Administered)
: 
--------------------------------------------------------- x

**MOTION OF DEBTORS FOR ENTRY OF
AN ORDER PURSUANT TO BANKRUPTCY
RULE 9019 (A) APPROVING A SETTLEMENT
BY AND AMONG BLUE RIDGE POWER HOLDING
COMPANY, LLC, THE HANOVER INSURANCE COMPANY, ACT POWER
SERVICES, LLC AND FUNDAMENTAL AND (B) GRANTING RELATED RELIEF**

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

Pine Gate Renewables, LLC ("*PGR*") and its debtor affiliates in the above-captioned cases, as debtors and debtors in possession (collectively, the "*Debtors*"), respectfully state as follows in support of this motion (this "*Motion*"):

**PRELIMINARY STATEMENT**

1. The Debtors move for approval of a proposed settlement (the "*Settlement*") by and among (i) Debtor Blue Ridge Power Holding Company, LLC ("*Blue Ridge Holding*"); (ii) The

---

[1] A complete list of each of the Debtors in these chapter 11 cases (the "*Chapter 11 Cases*") and the last four digits of each Debtor's taxpayer identification number (if applicable) may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/PGR. The Debtors' mailing address for the purposes of the Chapter 11 Cases is 130 Roberts Street, Asheville, North Carolina 28801.

US-DOCS\165919424

Hanover Insurance Company ("**Hanover**"); (iii) ACT Power Services, LLC ("**ACT**"); and (iv) Fundamental.[2]

2. Non-Debtor ACT is an indirect subsidiary of Blue Ridge Holding that provides operations and maintenance services ("**O&M**") to the Debtors and third-party clients. The Debtors' equity interests in ACT's non-Debtor holding company are part of the Debtors' ongoing marketing process and have received substantial interest from bidders.

3. On November 7 and 12, 2025, Hanover made certain collateral demands against ACT in the aggregate amount of approximately $2.9 million, based on indemnification obligations owed by ACT in connection with certain payment and performance surety bonds (the "**BRP Bonds**") for which Debtor Blue Ridge Power, LLC ("**BRP**") is the principal. The collateral demands were issued in response to approximately $2.9 million in claims submitted by BRP's customers against the BRP Bonds. Thereafter, Hanover paid Duke Energy Carolinas LLC ("**Duke Energy**") $2,179,509.10 in connection with Duke Energy's demands under the underlying surety bond, which amount Hanover now asserts against ACT as an indemnification obligation of ACT under a General Agreement of Indemnity signed by ACT and certain of the Debtors (the "**GAI**") in favor of Hanover (collectively with the collateral demands described above, the "**Hanover Obligations**"). There is also another BRP Bond that has not been called yet (nor has Hanover made an indemnification demand against ACT yet), but which ACT has also agreed to indemnify. With BRP in the midst of winding down its operations and unable to perform its construction functions any longer, it is very unlikely that BRP will ever fulfill the obligations that are

---

[2] "**Fundamental**" means the Fundamental Prepetition Secured Parties (as defined in the Interim DIP Order), the Fundamental DIP Secured Parties (as defined in the Interim DIP Order), and FR Acquisition Holdings LLC (the proposed purchaser under Fundamental's stalking horse purchase agreement).

backstopped by the BRP Bonds, meaning ACT likely would have to defend against or satisfy its indemnity liability to Hanover. This situation is untenable for at least two reasons.

4. First, the Hanover Obligations threaten to strain ACT's liquidity and distract the focus of key personnel running that business, which could disrupt ACT's service to the Debtors' portfolio of solar projects. Second, the Debtors are attempting to sell ACT, a non-Debtor business, in an equity sale (the "**Sale Process**"), and there has been robust interest in the process. The Hanover Obligations could potentially dampen that interest and cost the Debtors an opportunity to maximize value.

5. So in an effort to resolve the Hanover Obligations and protect the Sale Process, the Debtors and Hanover engaged in a series of arms'-length, and hard-fought negotiations, which culminated in the proposed Settlement. In connection with the Settlement:

   a. Effective upon Hanover's receipt of $1,725,000, to be paid in cash from proceeds of the sale of ACT, Hanover's claims against ACT as to the Hanover Obligations and all Non-ACT Bonding Exposure[3] will be liquidated at $1,725,000 in full and final satisfaction of all such obligations. For the avoidance of doubt, Hanover's release and compromise shall be effective only once and if Hanover has been paid the $1,725,000, in cash, from proceeds of the sale of ACT;

   b. ACT will remain as an indemnitor, pursuant to the terms of the GAI, for all bonds on which ACT is the bond principal ("**ACT Bonds**");

   c. Effective upon ACT providing $150,000 in cash collateral (the "**California Bond Cash Collateral**"), which California Bond Cash Collateral shall be governed pursuant to the terms of the GAI, Hanover will reinstate California license bonds issued in favor of ACT, identified as Bond Nos. 1110127, 1110128, and 1110129 (the "**California Bonds**") and will not seek cancellation of the California Bonds through December 31, 2026, so long as (i) Hanover does not receive claims on the California Bonds or (ii) ACT holds Hanover harmless in connection with any such claims. For purposes of the Settlement, holding Hanover harmless means that Hanover's collateral position must remain at $150,000; *provided*, that if Hanover is required to utilize all or part of the California Bond Cash Collateral to address claims on account of ACT Bonds, ACT will not have held Hanover harmless. For the avoidance of doubt, the California Bond Cash Collateral shall apply "on account"

---

[3] "**Non-ACT Bonding Exposure**" means all bonds executed by Hanover for principals other than ACT for which ACT is an indemnitor.

3

pursuant to the terms of the GAI for all ACT Bonds and the California Bond Cash Collateral shall not be limited to the California Bonds; *provided*, that the California Bond Cash Collateral shall not apply to, and shall not be available to Hanover, for non-ACT Bonds. For the further avoidance of doubt, Hanover shall have no obligation to return the California Bond Cash Collateral unless and until ACT has provided written evidence satisfactory to Hanover of its discharge from all liability under all ACT Bonds and has paid Hanover all amounts due to Hanover pursuant to the terms of the GAI; and

d. ACT will pay outstanding premiums in the amount of $40,612 owed to Hanover on account of Bond Nos. BM31110138, BM31110139, BM31103446, BM31110127, BL31110128, and BL31110129.

6. Accordingly, the Settlement is eminently reasonable. If approved, this Settlement will resolve the Hanover Obligations, including potential litigation in respect of the same, upon the sale of ACT in connection with the Sale Process. Resolution of the Hanover Obligations through the Settlement also maximizes value of the Debtors' other assets being marketed through the Sale Process by ensuring ACT can continue to deliver O&M services to the Debtors uninterrupted. On the other hand, if the Debtors are unable to proceed with the Settlement, then the Debtors would be forced to engage in value-destructive litigation around the application of the automatic stay to ACT in order to safeguard their Sale Process, and the value the Debtors are able to obtain for ACT could very well be reduced. As a result, the Debtors believe that the Settlement provides a substantial net benefit to the Debtors' estates and certainly falls within the range of reasonable outcomes. This Motion should therefore be granted.

## **RELIEF REQUESTED**

7. By this Motion, the Debtors seek entry of an order (the "***Proposed Order***"), substantially in the form attached hereto: (a) approving the Settlement described herein by and

among (i) Blue Ridge Holding; (ii) Hanover; (iii) ACT; and (iv) Fundamental and (b) granting related relief.[4]

## JURISDICTION AND VENUE

8. The United States Bankruptcy Court for the Southern District of Texas has jurisdiction to consider this Motion under 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Court may enter a final order consistent with Article III of the United States Constitution. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

9. The statutory and legal predicates for the relief requested herein are sections 105(a) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**"); rules 4001 and 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"); rules 2002-1 and 9013-1 of the Bankruptcy Local Rules; and the Procedures for Complex Cases in the Southern District of Texas.

## BACKGROUND

### A. General Case Background

10. On November 6, 2025 (the "**Petition Date**"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee has been appointed in the Chapter 11 Cases. On November 19, 2025, the Office of the United States Trustee appointed an official committee of unsecured creditors. *See* Docket No. 225.

---

[4] The Debtors will offer evidence in support of the relief requested herein through declaration and/or live testimony in connection with the hearing on the Motion.

11. The Chapter 11 Cases are being jointly administered, for procedural purposes only, pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1.

12. The factual background regarding the Debtors, including their business, their capital structure, and the events leading to the commencement of the Chapter 11 Cases, is set forth in the *Declaration of Ray Shem, President and Chief Financial Officer of the Debtors, in Support of the Chapter 11 Petitions and First-Day Relief* [Docket No. 19] (the "**First Day Declaration**").[5]

### B. Debtors' Relationship With ACT Power Services, LLC

13. As described in the Debtors' bidding procedures motion [Docket No. 22], which was approved by the bidding procedures order entered by the Court at Docket No. 128 (the "**Bidding Procedures Order**"), the Debtors' immediate objective in the Chapter 11 Cases is to preserve the value of their enterprise as they conduct their Sale Process to pursue one or more value-maximizing transactions for the benefit of the Debtors, their estates, creditors, and all stakeholders.

14. Through the Sale Process, the Debtors seek to sell, among other assets, the equity in non-Debtor ACT Power Services Holding Company Guarantor, LLC (and its direct and indirect subsidiaries, including ACT) held by Blue Ridge Holding. ACT is the operating entity for the O&M business. The relevant portion of the Company's organizational structure depicting ACT in connection with certain Debtor and non-Debtor affiliates is shown here:

---

[5] Capitalized terms used but not defined herein have the meaning ascribed to them in the First Day Declaration and, as applicable, the Bidding Procedures Order [Docket No. 128] or Interim DIP Order [Docket No. 132]. The Debtors also rely on and incorporate by reference the *Declaration of Mark Rajcevich in Support of (A) Debtors' Motions to Obtain (I) Postpetition Financing and (II) Approval of Bidding Procedures for Sale of Debtors' Assets and (B) Debtors' Other First Day Motions* [Docket No. 52] (the "**Rajcevich Declaration**").



15. In addition, Debtors Pine Gate O&M LLC and BRP (together, the "*O&M Debtors*") are parties to O&M service contracts (the "*O&M Contracts*") with certain project companies within the Debtors' corporate structure, under which the O&M Debtors provide O&M services to the applicable projects. In turn, the O&M Debtors are parties to subcontracts with ACT (the "*O&M Subcontracts*"), which performs the substantive O&M services for the applicable projects. In addition to the O&M Contracts, ACT also provides O&M services to third-party power plants and other energy facilities.

16. As described in the Debtors' DIP financing motion [Docket No. 46], which was approved by the final DIP financing order entered by the Court at Docket No. 646, the DIP Collateral excludes equity or assets of ACT Power Services Holding Company Guarantor, LLC (ACT's parent) but includes the proceeds of the equity in ACT Power Services Holding Company Guarantor, LLC and its direct and indirect subsidiaries (including ACT), subject to the lien priority set forth in the DIP Intercreditor Agreement. Specifically, Fundamental Priority Collateral (as defined in the DIP Intercreditor Agreement) includes, among other things, all assets and property of Blue Ridge Holding (ACT's indirect parent). With respect to any Fundamental Priority

7

Collateral, both the Brookfield Secured Parties and Carlyle Secured Parties are Junior Priority Secured Parties (each as defined in the DIP Intercreditor Agreement). Accordingly, under the DIP Intercreditor, the Brookfield Secured Parties and Carlyle Secured Parties consent, and waive the right to object, to any action taken by Fundamental with respect to the disposition of Fundamental Priority Collateral.

17. As set out in the Debtors' Cash Management Motion,[6] pursuant to the O&M Subcontracts, the O&M Debtors make payments to ACT for such O&M services. Specifically, ACT invoices the O&M Debtors on a quarterly basis for payment of services governed by the O&M Subcontracts and on a monthly basis for certain "non-covered" services provided by ACT. These O&M services are critical to: (i) the value of the Debtors' projects, which projects, in turn, are critical to, and a major component of, the Sale Process; and (ii) enabling the Debtors to develop and negotiate a chapter 11 plan, which the Debtors hope will include a potential reorganization of parts of its enterprise.

### C. Indemnification Obligations and Collateral Demands Between ACT with Hanover

18. ACT is also party to the GAI with Hanover in connection with surety bonds provided by Hanover to Debtor Blue Ridge Power, LLC ("**BRP**") and affiliates (the Company's engineering, procurement, and construction ("**EPC**") business). Debtors Pine Gate Renewables, LLC, BRP, Pine Gate Energy Capital, LLC, Blue Ridge Holding, and PGR Signature Fund 1 Manager, LLC are also party to the GAI with Hanover. The GAI also provides that Hanover can demand collateral to secure the indemnification obligations owed to it.

---

[6] "*Cash Management Motion*" means the *Emergency Motion of Debtors for Entry of Interim and Final Orders (A) Authorizing the Debtors to (I) Continue Operating Their Existing Cash Management System, (II) Honor Certain Related Prepetition Obligations, and (III) Continue Intercompany Transactions; (B) Waiving Certain Deposit Requirements; and (C) Granting Related Relief* [Docket No. 11].

19. On October 29, 2025, following an alleged default by BRP under an EPC contract with Duke Energy, Duke Energy made a demand on Hanover under its surety bond for payment in the amount of the penal sum of the bond ($2,179,509.10)

20. On November 7, 2025, shortly after receiving Duke Energy's demand, Hanover sent its first collateral demand to ACT requesting that ACT make a collateral deposit in the form of an irrevocable letter of credit in the same amount, pursuant to the GAI. The Hanover letter also requested a response from ACT as to its position with respect to this purported indemnity obligation by November 10, 2025, indicating that "if [ACT] does not place Hanover in funds or otherwise resolve the claim on or before November 10, 2025, Hanover intends to adjust the claim as it deems appropriate, in accordance with its obligations under the bond and its rights under the GAI." Thereafter, Hanover paid Duke Energy $2,179,509.10 in connection with Duke Energy's demands under the underlying surety bond.

21. On November 12, 2025, Hanover sent an additional, similar collateral demand to ACT under the GAI in the form of a collateral deposit in the amount of $750,000 for alleged defaults by BRP under its EPC contract with Lone Star Solar, LLC ("**Lone Star**").

D. **Proposed Settlement**

22. Following the collateral demands, the Debtors and Hanover engaged in good-faith, arm's-length, hard-fought negotiations to resolve the Hanover Obligations, which culminated in the following Settlement:

   a. Effective upon Hanover's receipt of $1,725,000, to be paid in cash from proceeds of the sale of ACT, Hanover's claims against ACT as to the Hanover Obligations and all Non-ACT Bonding Exposure will be liquidated at $1,725,000 in full and final satisfaction of all such obligations. For the avoidance of doubt, Hanover's release and compromise shall be effective only once and if Hanover has been paid the $1,725,000, in cash, from proceeds of the sale of ACT;
   b. ACT will remain as an indemnitor, pursuant to the terms of the GAI, for all ACT Bonds;

9

    c. Effective upon ACT providing the California Bond Cash Collateral, which California Bond Cash Collateral shall be governed pursuant to the terms of the GAI, Hanover will reinstate the California Bonds and will not seek cancellation of the California Bonds through December 31, 2026, so long as (i) Hanover does not receive claims on the California Bonds or (ii) ACT holds Hanover harmless in connection with any such claims. For purposes of the Settlement, holding Hanover harmless means that Hanover's collateral position must remain at $150,000; *provided*, that if Hanover is required to utilize all or part of the California Bond Cash Collateral to address claims on account of ACT Bonds, ACT will not have held Hanover harmless. For the avoidance of doubt, the California Bond Cash Collateral shall apply "on account" pursuant to the terms of the GAI for all ACT Bonds and the California Bond Cash Collateral shall not be limited to the California Bonds; *provided*, that the California Bond Cash Collateral shall not apply to, and shall not be available to, Hanover for non-ACT Bonds. For the further avoidance of doubt, Hanover shall have no obligation to return the California Bond Cash Collateral unless and until ACT has provided written evidence satisfactory to Hanover of its discharge from all liability under all ACT Bonds and has paid Hanover all amounts due to Hanover pursuant to the terms of the GAI; and

    d. ACT will pay outstanding premiums in the amount of $40,612 owed to Hanover on account of Bond Nos. BM31110138, BM31110139, BM31103446, BM31110127, BL31110128, and BL31110129.

## BASIS FOR RELIEF

23. The Settlement should be approved in accordance with Bankruptcy Rule 9019(a) because it is fair, reasonable, and in the best interest of the Debtors' estates. *See Off. Comm. of Unsecured Creditors v. Moeller* (*In re Age Refin., Inc.*), 801 F.3d 530, 540 (5th Cir. 2015). Ultimately, approval of a compromise is within the discretion of the bankruptcy court. *See United States v. AWECO, Inc.* (*In re AWECO, Inc.*), 725 F.2d 293, 297 (5th Cir. 1984); *Rivercity v. Herpel* (*In re Jackson Brewing Co.*), 624 F.2d 599, 602 (5th Cir. 1980) (citations omitted) (decided under the Bankruptcy Act). Settlements are considered a "normal part of the process of reorganization" and a "desirable and wise method[] of bringing to a close proceedings otherwise lengthy, complicated, and costly." *Rivercity*, 624 F.2d at 602–03 (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424–25 (1968)).

24. The Fifth Circuit has established a three-factor balancing test under which bankruptcy courts analyze proposed settlements. *Id.* Courts should consider: "(1) the probability of success in litigating the claim subject to settlement, with due consideration for the uncertainty in fact and law; (2) the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay; and (3) all other factors bearing on the wisdom of the compromise." *See Age Refin.*, 801 F.3d at 540 (internal citations omitted).

25. Under the rubric of the third factor, the Fifth Circuit has specified two additional factors that bear on a decision to approve a proposed settlement. First, the Court should consider "the paramount interest of creditors with proper deference to their reasonable views." *Id.*; *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp.* (*In re Foster Mortg. Corp.*), 68 F.3d 914, 917 (5th Cir. 1995). Second, the Court should consider the "extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *Age Refin.*, 801 F.3d at 540; *Foster Mortg.*, 68 F.3d at 918 (citations omitted).

26. Generally, when evaluating a settlement, the role of the bankruptcy court is not to decide the issues in dispute. *See Watts v. Williams*, 154 B.R. 56, 59 (S.D. Tex. 1993). Rather, the Court should determine whether the settlement as a whole is fair and equitable. *See Protective Comm. for Indep. S'holders of TMT Trailer Ferry*, 390 U.S. at 424 (1968).

27. The Debtors bear the burden of establishing that the balance of the above factors leads to a fair and equitable compromise vis-à-vis the Settlement. *In re Allied Props., LLC*, 2007 WL 1849017, at *4 (Bankr. S.D. Tex. June 25, 2007) (citing *In re Lawrence & Erausquin, Inc.*, 124 B.R. 37, 38 (Bankr. N.D. Ohio 1990)); *see also In re GHR Companies, Inc.*, 50 B.R. 925, 931 (Bankr. D. Mass. 1985). "The burden is not high;" rather, the Debtors "***need only show that [their] decision falls within the 'range of reasonable litigation alternatives***.'" *In re Allied Props., LLC*,

11

2007 WL 1849017, at *4 (emphasis added) (citing *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)); *see also Cook v. Waldron*, 2006 WL 1007489, at *4 (S.D. Tex. Apr. 18, 2006).

28. Here, considering the foregoing factors, the Settlement is plainly reasonable and in the best interest of creditors and other stakeholders. The Settlement was the product of good faith, arms'-length, and hard-fought negotiations among the Debtors, Hanover, and Fundamental and produces a far better outcome for the Debtors' estates and all stakeholders than the continued prosecution of Hanover's claims against ACT.

29. <u>First</u>, the Settlement resolves the Hanover Obligations and all Non-ACT Bonding Exposure and facilitates the continued preservation of the Debtors' assets in connection with the Sale Process. The essential O&M services performed by ACT for the Debtors include, among other things, (i) real-time system monitoring (tracking metrics such as panel efficiency, grid load, and system irregularities); (ii) infrastructure maintenance; (iii) technical inspections; (iv) routine cleaning; and (v) rapid response to potential issues. Hanover's pursuit of its claims would otherwise seriously impair ACT's ability to perform O&M services for the Debtors' projects, which in turn would impair the Sale Process associated with such projects.

30. <u>Second</u>, ACT is a signatory to the GAI. Although ACT may have ultimately meritorious arguments or defenses in respect of its indemnity obligations, the Settlement resolves the Hanover Obligations without such costly and potentially protracted litigation.

31. <u>Finally</u>, the Settlement further facilitates the Sale Process through which ACT itself (through its indirect parent ACT Power Services Holding Company Guarantor, LLC and related affiliates) is being marketed. The Debtors have received significant positive interest in ACT to date, and discussions remain ongoing. Absent the Settlement, pursuit of the Hanover Obligations could compromise the market's perception of ACT (and its value) and derail the Debtors' efforts

to capitalize on the substantial value of ACT's equity interest through the Sale Process to the detriment of the Debtors, their estates, creditors, and all stakeholders.

32. In summary, under the Settlement, the Debtors are able to resolve the Hanover Obligations while avoiding value-destructive litigation with Hanover and potential claims against the Debtors, while still facilitating the Sale Process and the preservation of ACT and the Debtors' other assets. Accordingly, the Debtors respectfully submit that the Court should approve the Settlement as a valid exercise of the Debtors' business judgment based upon the factors considered by courts in the Fifth Circuit.

## NOTICE

33. Notice of this Motion will be given to the parties on the Debtors' Master Service List, Hanover, Fundamental, and all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, under the circumstances, no other or further notice is required.

34. A copy of this Motion is available on (a) the Court's website, at www.txs.uscourts.gov and (b) the website maintained by the Debtors' claims and noticing agent, Omni Agent Solutions, Inc., at https://omniagentsolutions.com/PGR.

## DEBTORS' COMPLIANCE WITH BANKRUPTCY RULE 6004(a) AND WAIVER OF BANKRUPTCY RULE 6004(a) AND (h)

35. With respect to any aspect of the relief sought herein that constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtors request that the Court find that notice of this Motion is adequate under Bankruptcy Rule 6004(a) and waive the 14-day stay under Bankruptcy Rule 6004(h). As described above, the relief that the Debtors seek in this Motion is necessary to avoid immediate and irreparable harm to the Debtors. Thus, cause exists for the Court

to find that notice of this Motion satisfies Bankruptcy Rule 6004(a) and waive the 14-day stay under Bankruptcy Rule 6004(h).

*[Remainder of page intentionally left blank.]*

**WHEREFORE**, the Debtors respectfully request that the Court enter the Proposed Order granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated:   December 16, 2025          Respectfully submitted,

*/s/ Timothy A. ("Tad") Davidson II*
**HUNTON ANDREWS KURTH LLP**
Timothy A. ("Tad") Davidson II (Texas Bar No. 24012503)
Philip M. Guffy (Texas Bar No. 24113705)
Brandon Bell (Texas Bar No. 24127019)
600 Travis Street, Suite 4200
Houston, TX 77002
Telephone: (713) 220-4200
Email: taddavidson@Hunton.com
         pguffy@Hunton.com
         bbell@Hunton.com

-and-

**LATHAM & WATKINS LLP**
Ray C. Schrock (NY Bar No. 4860631)
Andrew M. Parlen (NY Bar No. 5370085)
Alexander W. Welch (NY Bar No. 5624861)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Email: ray.schrock@lw.com
         andrew.parlen@lw.com
         alex.welch@lw.com

Jason B. Gott (IL Bar No. 6309114)
Jonathan C. Gordon (IL Bar No. 6329732)
330 N. Wabash Avenue
Suite No. 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email: jason.gott@lw.com
         jonathan.gordon@lw.com

*Attorneys for the Debtors*
*and Debtors in Possession*

**CERTIFICATE OF SERVICE**

      I certify that on December 16, 2025, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on those parties registered to receive electronic notices.

*/s/ Timothy A. ("Tad") Davidson II*
Timothy A. ("Tad") Davidson II

US-DOCS\165919424