**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

------------------------------------------------------------ x
                                                             :
In re:                                                       :   Chapter 11
                                                             :
PINE GATE RENEWABLES, LLC, *et al.*,                         :   Case No. 25-90669 (CML)
                                                             :
Debtors.[1]                                                  :   (Jointly Administered)
                                                             :
------------------------------------------------------------ x

**ORDER (A) AUTHORIZING AND**
**APPROVING THE DEBTORS' ENTRY INTO AN**
**ASSET PURCHASE AGREEMENT WITH BII BID SOLAR II**
**AGGREGATOR, LP, (B) AUTHORIZING THE SALE OF THE**
**PURCHASED ASSETS FREE AND CLEAR OF ALL ENCUMBRANCES,**
**(C) APPROVING THE ASSUMPTION AND ASSIGNMENT OF THE**
**DESIGNATED CONTRACTS, AND (D) GRANTING RELATED RELIEF[1]**

**[Relates to Docket Nos. 22, 128, 205, 694]**

Upon the motion [Docket No. 22] (the "***Motion***"),[2] of the above-captioned debtors and

debtors in possession (collectively, the "***Debtors***") for entry of an order (this "***Order***"), among

other things:  (a) authorizing and approving the Debtors' entry into and performance under the

Purchase Agreement with the Buyer (as defined below), (b) authorizing the Sale Transaction (as

defined below), free and clear of any Encumbrances (as defined below), (c) authorizing and

approving the assumption and assignment of certain executory contracts and unexpired leases in

connection with the Sale Transaction, and (d) granting related relief; and this Court having

---

[1]   A complete list of each of the Debtors in these chapter 11 cases (the "***Chapter 11 Cases***") and the last four digits of each Debtor's taxpayer identification number (if applicable) may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/PGR.  The Debtors' mailing address for the purposes of the Chapter 11 Cases is 130 Roberts Street, Asheville, North Carolina 28801.

[1]   **[NTD: Subject to parties' ongoing review.]**

[2]   Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion or the Purchase Agreement (as defined below), as applicable.

previously entered the *Order (A) Approving Bidding Procedures for Sale of Debtors' Assets, (B) Establishing Procedures for Debtors' Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, (C) Scheduling Dates for an Auction and a Hearing to Consider Approval of Any Resulting Sale, (D) Approving Form and Manner of Notices Related Thereto, and (E) Granting Related Relief* [Docket No. 128] (the "**Bidding Procedures Order**"), authorizing and approving, among other things, Bidding Procedures for the Assets and the *Supplemental Order Approving Initial Stalking Horse Expense Reimbursements* [Docket No. 205] (the "**Expense Reimbursements Order**"), authorizing and approving the Expense Reimbursements; and the Debtors having executed that certain *Asset Purchase Agreement*, dated as of November 13, 2025 **and attached hereto as Exhibit 1A** (as amended, restated, amended and restated, supplemented or otherwise modified from time to time, **including in connection with the form of *First Amendment to Asset Purchase Agreement* attached hereto as Exhibit 1B,** the "**Purchase Agreement**"), by and among certain of the Debtors and BII BID Solar II Aggregator, LP (together with any Buyer Designee, the "**Buyer**"), ~~a copy of which is attached hereto as Exhibit 1,~~ contemplating, among other things, the sale of the Purchased Assets identified therein (the "**Sale Transaction**") free and clear of any Encumbrances and the assumption and assignment to the Buyer of certain executory contracts and unexpired leases in connection with the Sale Transaction; and the Debtors having filed the *Notice of the Debtors' Designation of Brookfield as the Successful Bidder with Respect to the Brookfield Assets* [Docket No. 649] (the "**Notice of Successful Bid**"), announcing that, in accordance with the Bidding Procedures Order and after consultation with the Consultation Parties, the Debtors decided, in their reasonable business judgment, to designate the Buyer's stalking horse bid (the "**Brookfield Stalking Horse Bid**") as the highest or otherwise best bid for

the Purchased Assets; and this Court having conducted a hearing on December 16, 2025, to consider approval of the Sale Transaction (the "***Sale Hearing***") in accordance with the Bidding Procedures Order; and this Court having reviewed and considered (a) the Motion and the exhibits thereto, (b) the Bidding Procedures Order, (c) the Purchase Agreement, (d) the Declaration,[33] (e) the Notice of Successful Bid, (f) the objections and other responses to approval of the Sale Transaction, and (g) the arguments and representations of counsel made, and the evidence proffered or adduced at, the Sale Hearing; and all parties in interest having been heard or having had the opportunity to be heard regarding the Sale Transaction and the relief requested in the Motion and provided in this Order; and due and sufficient notice of the Sale Hearing and the relief sought therein having been given under the particular circumstances of the Chapter 11 Cases and in accordance with the Bidding Procedures Order; and it appearing that no other or further notice need be provided; and it appearing that the relief requested in the Motion and provided in this Order is in the best interests of the Debtors, their estates, their creditors, and all parties in interest; and it appearing that the Court has jurisdiction over this matter; and it further appearing that the legal and factual bases set forth in the Motion, the Declaration, and at the Sale Hearing, establish just cause for the relief granted herein; and after due deliberation thereon,

**THE COURT HEREBY FINDS AND DETERMINES THAT:**

A.    **Jurisdiction and Venue.**  This Court has jurisdiction over this matter and over the property of the Debtors' estates, including the Purchased Assets, pursuant to 28 U.S.C. §§ 157 and 1334, and the *Order of Reference to Bankruptcy Judges* from the United States District Court for the Southern District of Texas, dated as of May 24, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Court may enter a final order hereon under

---

[33] The "***Declaration***" means the *Declaration of Jennifer Wild in Support of the Sale of Certain of the Debtors' Assets to BII BID Solar II Aggregator, LP*, [Docket No. [●701]].

Article III of the United States Constitution.  Venue of these Chapter 11 Cases and approval of the Sale Transaction and the Debtors' entry into, and performance under, the Purchase Agreement is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    **Statutory and Legal Predicates.**  The statutory predicates for the relief granted herein are sections 105, 363 and 365 of the Bankruptcy Code.  The relief granted herein is also authorized under Bankruptcy Rules 2002, 6004, 6006, 9006, 9007, 9008, and 9014, Bankruptcy Local Rules 2002-1 and 4002-1, and the Complex Case Procedures.  The consummation of the transactions contemplated by the Purchase Agreement and this Order is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Bankruptcy Local Rules, and the Debtors and the Buyer have complied with all of the applicable requirements of such sections and rules with respect to such transactions.

C.    **Bankruptcy Rule 7052.**    The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.  All findings of fact and conclusions of law announced by the Court at the Sale Hearing are hereby incorporated herein to the extent not inconsistent herewith.

D.    **Final Order.**  This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  To any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Order,

and authorizes the closing of all transactions contemplated hereby, including, without limitation, the Sale Transaction, without regard to any stay or delay in its implementation.

E.      **Incorporation by Reference.**  Findings of facts and conclusions of law in the Bidding Procedures Order and the Expense Reimbursements Order are incorporated herein by reference.

F.      **Notice.**  On November 6, 2025 (the "***Petition Date***")**,** the Debtors commenced the Chapter 11 Cases in the United States Bankruptcy Court for the Southern District of Texas (this "***Court***").   The Debtors are authorized to continue operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Cases.

G.      On November 19, 2025, the Office of the United States Trustee for the Southern District of Texas (the "***U.S. Trustee***") appointed the official committee of unsecured creditors (the "***UCC***") pursuant to section 1102 of the Bankruptcy Code [Docket No. 225].

H.      The Debtors gave due and proper notice of the proposed Sale, Auction (if any), and Sale Hearing on November 11, 2025 [Docket No. 135] (the "***Sale Notice***").  The Sale Notice constituted good, sufficient, and appropriate notice of the Sale Transaction under the particular circumstances and no further notice need be given with respect to the Sale Transaction.  As provided by the Sale Notice, a reasonable opportunity to object or be heard regarding the requested relief has been afforded to all interested persons and entities.  Other parties interested in bidding on the Purchased Assets were provided, pursuant to the Bidding Procedures Order, sufficient information to make an informed judgment on whether to bid.

I.      As evidenced by the affidavits of service previously filed with this Court, and based on the representations of counsel at the Sale Hearing, due, proper, timely, adequate and

sufficient notice of the Motion, the Bidding Procedures Order, the Expense Reimbursements Order, the Sale Hearing, the Assumption and Assignment Procedures, the Purchase Agreement, this Order, the Notice of Successful Bid, and the Sale Transaction has been provided in accordance with sections 102(1), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 9006, 9007, and 9014, Local Rules 2002-1 and 4002-1, and the Complex Case Procedures. The Debtors have complied with all obligations to provide notice of the Motion, the Bidding Procedures Order, the Sale Hearing, the Assumption and Assignment Procedures, the Purchase Agreement, this Order, the Notice of Successful Bid, and the Sale Transaction as required by the Bidding Procedures Order. The aforementioned notices are good, sufficient and appropriate under the circumstances, and no other or further notice of the Motion, the Bidding Procedures Order, the Assumption and Assignment Procedures, the Sale Hearing, the Purchase Agreement, this Order, the Notice of Successful Bid, or the Sale Transaction is or shall be required.

J.      A reasonable opportunity to object or be heard regarding the relief requested in the Motion and provided in this Order was afforded to all parties in interest.

K.      **Compliance with the Bidding Procedures Order.** As demonstrated by the evidence proffered or adduced at the Sale Hearing and the representations of counsel at the Sale Hearing, the Debtors have complied in all material respects with the Bidding Procedures Order. The Debtors and their professionals have adequately and appropriately marketed the Purchased Assets in compliance with the Bidding Procedures and the Bidding Procedures Order, and in accordance with the Debtors' fiduciary duties. Based upon the record of these proceedings, creditors, other parties in interest, and prospective purchasers were afforded a reasonable and fair opportunity to bid for the Purchased Assets.

L.      The Bidding Procedures were substantively and procedurally fair to all parties and all potential bidders and afforded notice and a full, fair, and reasonable opportunity for any person to make a higher or otherwise better offer to purchase the Purchased Assets.  The Debtors conducted the sale process without collusion and in accordance with the Bidding Procedures.

M.      The Buyer is the designated Successful Bidder, and the Purchase Agreement is designated the Successful Bid for the Purchased Assets enumerated therein in accordance with the Bidding Procedures Order.

N.      The Sale Transaction, including the form and total consideration to be realized by the Debtors under the Purchase Agreement, (a) constitutes the highest or otherwise best offer received by the Debtors for the Purchased Assets; (b) is fair and reasonable, and (c) is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.

O.      **Business Judgment.**  The Debtors' determination that the consideration provided by the Buyer under the Purchase Agreement constitutes the highest or otherwise best offer for the Purchased Assets is reasonable and constitutes a valid and sound exercise of the Debtors' business judgment.

P.      The Debtors have demonstrated good, sufficient, and sound business reasons and justifications for entering into the Sale Transaction and performing their obligations under the Purchase Agreement, including, but not limited to, the fact that (a) the consideration provided by the Buyer under the Purchase Agreement will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative, including a separate liquidation of the Purchased Assets; and (b) unless the Sale Transaction is concluded

expeditiously as provided for in the Motion and pursuant to the Purchase Agreement, creditor recoveries will be diminished.

Q.    **Corporate Authority**.  The Purchased Assets that are owned by the Debtor entities constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541 of the Bankruptcy Code.  The Debtors (a) have full corporate or (if applicable) limited liability company power and authority to execute and deliver the Purchase Agreement and all other documents contemplated thereby, (b) have all of the necessary corporate or (if applicable) limited liability company power and authority to consummate the Sale Transaction, (c) have taken all corporate or (if applicable) limited liability company action necessary to authorize and approve the Purchase Agreement, and the consummation of the Sale Transaction, and (d) subject to entry of this Order, need no consents or approvals, including any consents or approvals from any non-Debtor entities, other than those expressly set forth in the Purchase Agreement or this Order, to consummate the Sale Transaction.

R.    **Good Faith.**  The sale process and negotiation of the Purchase Agreement engaged in by the Debtors and the Buyer was at arm's length, non-collusive, in good faith, and substantively and procedurally fair to all parties in interest.  None of the Debtors, the Buyer, nor any affiliates, members, partners, officers, directors, principals, professionals, or shareholders of the Buyer, nor any other persons has engaged in any conduct that would cause or permit the Purchase Agreement or the Sale Transaction to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

S.    The Debtors and the Buyer have complied, in good faith, in all respects with the Bidding Procedures Order and the Bidding Procedures.  The Debtors, and their management,

boards of managers, employees, agents, advisors, and representatives, and the Buyer, its affiliates, and each of their respective employees, agents, advisors, and representatives, each actively participated in the bidding process, and each acted in good faith and without collusion or fraud of any kind. The Buyer subjected its bid to competitive bidding in accordance with the Bidding Procedures and was designated the Successful Bidder for the Purchased Assets in accordance with the Bidding Procedures and the Bidding Procedures Order.

T.     The Buyer is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, each term of the Purchase Agreement (and any ancillary documents executed in connection therewith) and this Order, and otherwise has proceeded in good faith in all respects in connection with this proceeding, and is therefore entitled to the full protection of section 363(m) of the Bankruptcy Code in respect of the Sale Transaction. Neither the Debtors nor the Buyer has engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code. The Debtors, on behalf of their estates, were free to deal with any other party interested in buying or selling some or all of the Purchased Assets. The protections afforded by Bankruptcy Code section 363(m) are integral to the Sale Transaction and the Buyer and would not consummate the Sale Transaction without such protections.

U.     **Buyer is Not an Insider.** Neither the Buyer nor any of its affiliates, officers, directors, managers, shareholders, members, or any of their respective successors or assigns is an "insider" of the Debtors, as that term is defined under section 101(31) of the Bankruptcy Code. No common identity of directors, managers, controlling shareholders, or members exists between the Debtors and the Buyer.

V.     **No Fraudulent Transfer.** The consideration provided by the Buyer for the Purchased Assets pursuant to the Purchase Agreement (a) is fair and reasonable, (b) is the

highest or otherwise best offer for the Purchased Assets, (c) will provide a greater recovery for the Debtors' creditors and estates than would be provided by any other practical available alternative, and (d) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, and each state, territory, possession, and the District of Columbia.

W.    The Purchase Agreement was not entered into, and neither the Sellers nor the Buyer entered into the Purchase Agreement or propose to consummate the Sale Transaction, with fraudulent intent or for the purpose of (a) escaping liability for any of the Debtors' debts, or (b) hindering, delaying or defrauding the Debtors' present or future creditors, for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

X.    **Free and Clear.**  The transfer of the Purchased Assets to the Buyer will be a legal, valid, and effective transfer of the Purchased Assets, and will vest the Buyer with all right, title, and interest of the applicable Sellers in and to the Purchased Assets free and clear of all Claims (including, without limitation, any and all "claims" as that term is defined and used in the Bankruptcy Code, including section 101(5) thereof), liens (including, without limitation, any statutory, mechanic's, builders, materialmen's or similar lien on real and/or personal property and any and all "liens" as that term is defined and used in the Bankruptcy Code, including section 101(37) thereof), liabilities, interests, rights, and encumbrances relating to, accruing, or arising any time prior to the Closing Date, including, without limitation, the following: all mortgages, restrictions (including, without limitation, any restriction on the use, voting rights, transfer rights,

claims for receipt of income or other exercise of any attributes of ownership), hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, sublicenses, options, deeds of trust, security interests, equity interests, conditional sale rights or other title retention agreements, pledges, judgments, demands, rights of first refusal, consent rights, contract rights, rights of setoff (except for setoffs exercised prior to the Petition Date), rights of recovery, reimbursement rights, contribution claims, indemnity rights, exoneration rights, product liability claims, alter-ego claims, to the greatest degree allowed by applicable law environmental rights and claims (including, without limitation, toxic tort claims), labor rights and claims, employment rights and claims, pension rights and claims, tax claims, regulatory violations by any governmental entity, decrees of any court (other than this Court) or foreign or domestic governmental entity, charges of any kind or nature, debts arising in any way in connection with any agreements, acts, or failures to act, reclamation claims, obligation claims, demands, guaranties, option rights or claims, rights, contractual or other commitment rights and claims, and all other matters of any kind and nature, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, senior or subordinated, whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under any theory, law or doctrine of successor or transferee liability or related theories (all of the foregoing, but excluding Assumed Liabilities and the Permitted Encumbrances, collectively being referred to in this Order as "***Encumbrances***").

Y.      Those holders of Encumbrances who did not object or who withdrew their objections to the Motion, are deemed to have consented to the Sale Transaction pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of Encumbrances who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code.

Z.      The Debtors, to the extent permitted by applicable law, may transfer the Purchased Assets free and clear of all Encumbrances, including, without limitation, rights or claims based on any successor or transferee liability, because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.

AA.     The Buyer would not have entered into the Purchase Agreement and would not consummate the transactions contemplated thereby, including, without limitation, the Sale Transaction, if (a) the transfer of the Purchased Assets were not free and clear of all Encumbrances, or (b) the Buyer would, or in the future could, be liable for or subject to any such Encumbrances.

BB.     The Buyer will not consummate the transactions contemplated by the Purchase Agreement, including, without limitation, the Sale Transaction, unless this Court expressly orders that none of the Buyer, its respective affiliates, its respective present or contemplated members or shareholders, or the Purchased Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff (except for setoffs exercised prior to the Petition Date), or otherwise, directly or indirectly, any Encumbrances.

CC.     Not transferring the Purchased Assets free and clear of all Encumbrances would adversely impact the Debtors' efforts to maximize the value of their estates, and the transfer of

the Purchased Assets other than pursuant to a transfer that is free and clear of all Encumbrances would be of substantially less benefit to the Debtors' estates.

DD. **Equity Sale**. Pursuant to Section 2.01(a)(i) of the Purchase Agreement, the Sale Transaction consists of the purchase of all of the Sellers' equity interests in the Purchased Companies.

EE. **No Successor, Transferee, or Similar Liability**. As a result of any action taken in connection with the Purchase Agreement, the consummation of the transactions contemplated thereby, including, without limitation, the Sale Transaction, or the transfer or operation of the Purchased Assets, (a) neither the Buyer nor any of its affiliates shall be deemed to be a mere continuation of any of Debtors or their estates, nor shall there be deemed to be a continuity or common identity between the Buyer, any of the Debtors, or any of their respective affiliates, or any continuity of enterprise between the Buyer, any of the Debtors, or any of their respective affiliates; (b) neither the Buyer nor any of its affiliates shall be deemed to be holding themselves out to the public as a continuation of any of the Debtors; and (c) neither the Buyer nor any of its affiliates are to be deemed a successor to any of the Debtors or their estates and none of the transactions contemplated by the Purchase Agreement, including, without limitation, the Sale Transaction amounts to a consolidation, merger, or *de facto* merger of the Buyer or any of its affiliates with or into any of the Debtors. There is not substantial continuity between the Buyer on the one hand, and the Debtors and/or their estates, on the other. There is no continuity of enterprise between either the Buyer, on the one hand, and the Debtors and/or their estates, on the other. The Buyer is not (a) a mere continuation of the Debtors or their estates or (b) a successor to the Debtors or their estates.

FF.     Without limiting the generality of the foregoing, and other than as may be set forth in the Purchase Agreement, none of the Buyer, its affiliates, the present or contemplated members or shareholders of the Buyer, and its affiliates, or the Purchased Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff (except for setoffs exercised prior to the Petition Date), or otherwise, directly or indirectly, any Encumbrances relating to any U.S. federal, state or local income tax liabilities, that the Debtors may incur in connection with consummation of the Sale Transaction, or that the Debtors have otherwise incurred prior to the consummation of the Sale Transaction.

GG.     **Validity of Transfer.**  The consummation of the transactions contemplated by the Purchase Agreement, including, without limitation, the Sale Transaction, is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f) thereof, and all of the applicable requirements of such sections have been complied with in respect of the transactions contemplated under the Purchase Agreement, including without limitation, the Sale Transaction.

HH.     The Purchase Agreement has been duly and validly executed and delivered by the Sellers and, subject to the terms of the Purchase Agreement, shall constitute valid and binding obligations of the Sellers, enforceable against the Sellers in accordance with its terms.  The Purchase Agreement, the Sale Transaction, and the consummation thereof shall be specifically enforceable against and binding upon (without posting any bond) the Debtors and any chapter 7 or chapter 11 trustee appointed in these Chapter 11 Cases, and shall not be subject to rejection or avoidance by the foregoing parties or any other person.

II.     **Compelling Circumstances for an Immediate Sale.**   To maximize the value of the Purchased Assets, it is essential that the transactions contemplated by the Purchase Agreement occur within the time constraints set forth therein.   Time is of the essence in consummating the transactions contemplated by the Purchase Agreement, including, without limitation, the Sale Transaction.   Accordingly, there is cause to waive the stays contemplated by Bankruptcy Rules 6004 and 6006.

JJ.     The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the transactions contemplated by the Purchase Agreement and this Order, including, without limitation, the Sale Transaction.   The transactions contemplated by the Purchase Agreement neither impermissibly restructure the rights of the Debtors' creditors nor impermissibly dictate the terms of a chapter 11 plan for the Debtors (any such chapter 11 plan, the "***Plan***"), and therefore, do not constitute a *sub rosa* plan.

KK.     **Assumption, Assignment and/or Transfer of the Designated Contracts**.   The Debtors have demonstrated (a) that it is an exercise of their sound business judgment to assume and assign the Designated Contracts to the Buyer, in connection with the consummation of the Sale Transaction and (b) that the assumption and assignment of the Designated Contracts to the Buyer is in the best interests of the Debtors, their estates, their creditors, and other parties in interest. The Designated Contracts being assigned to the Buyer are an integral part of the Purchased Assets being purchased by the Buyer and, accordingly, such assumption, assignment and cure of any defaults under the Designated Contracts are reasonable and enhance the value of the Debtors' estates.   Each and every provision of the documents governing the Purchased Assets or applicable non-bankruptcy law that purports to prohibit, restrict, or condition, or could

be construed as prohibiting, restricting, or conditioning assignment of any of the Purchased Assets, if any, has been or will be satisfied or are otherwise unenforceable under section 365 of the Bankruptcy Code. Any non-Debtor counterparty to a Designated Contract that has not filed with the Court an objection to such assumption and assignment in accordance with the terms of the Motion is deemed to have consented to such assumption and assignment.

LL.     To the extent necessary or required by applicable law, the Debtors have or will have as of the Closing: (a) cured, or provided adequate assurance of cure, of any default existing prior to the Closing with respect to the Designated Contracts, within the meaning of sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code, and (b) provided compensation, or adequate assurance of compensation, to any party for any actual pecuniary loss to such party resulting from such default, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code.

MM.   The promise of the Buyer to perform the obligations first arising under the Designated Contracts after the assumption and assignment to the Buyer constitutes adequate assurance of future performance within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code to the extent that any such assurance is required and not waived by the counterparty to the Designated Contract.

NN.    The legal and factual bases set forth in the Motion and presented at the Sale Hearing establish just cause for the relief granted herein.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted as provided herein, and entry into and performance under, and in respect of, the Purchase Agreement attached hereto as **Exhibit 1** and the consummation of the transactions contemplated thereby, including, without limitation, the Sale Transaction, is authorized and approved.

2.      Any objections and responses to the Motion or the relief requested therein that have not been withdrawn, waived, settled, or resolved, and all reservation of rights included in such objections and responses, are overruled on the merits and denied with prejudice.   All persons and entities given notice of the Motion that failed to timely object thereto are deemed to consent to the relief granted herein, including for purposes of sections 363(f)(2), 365(c)(1), and 365(e)(2) of the Bankruptcy Code.

### A.      Approval of the Purchase Agreement

3.      The Purchase Agreement, all other ancillary documents related thereto or contemplated thereby, all of the terms and conditions thereof, including, without limitation, the credit bid pursuant to section 363(k) of the Bankruptcy Code in an amount up to the full amount of the Credit Bid Amount, and all of the transactions contemplated therein including, without limitation, any amendment to the Purchase Agreement that the Debtors and the Buyer determine is necessary or desirable in connection with the transactions are hereby approved.   The consummation of the Sale Transaction is hereby authorized under sections 105, 363, and 365 of the Bankruptcy Code.

4.      Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Debtors and their respective officers, employees and agents are authorized and directed to take any and all actions necessary, appropriate or reasonable to perform, consummate, implement and close the Sale Transaction, including, without limitation, the (a) sale to the Buyer of all Purchased Assets, in accordance with the terms and conditions set forth in the Purchase Agreement and this Order, and (b) execution, acknowledgment, and delivery of such deeds, assignments, conveyances and other assurances, documents and instruments of transfer and any action for purposes of assigning, transferring, granting, conveying and confirming to the Buyer, or reducing to possession, the

Purchased Assets, all without further order of this Court.  The Debtors are further authorized to pay, without further order of this Court, whether before, at or after the Closing Date, any expenses or costs that are required to be paid by the Debtors under the Purchase Agreement, this Order, or the Bidding Procedures Order, in order to consummate the Sale Transaction or perform their obligations under the Purchase Agreement.

5.      All persons and entities, including, without limitation, the Debtors, the Debtors' estates, any and all debt security holders, equity security holders, governmental tax and regulatory authorities, lenders, customers, vendors, employees, former employees, litigation claimants, trustees, trade creditors, and any other creditors (or any affiliate, agent, successor, or assign of any of the foregoing) who may or do hold claims or other Encumbrances against the Debtors or the Purchased Assets, arising under or out of, in connection with, or in any way relating to, the Debtors, the Purchased Assets, the operation or ownership of the Purchased Assets by the Debtors prior to the Closing Date, or the Sale Transaction, are hereby prohibited, forever barred and estopped from asserting or pursuing such claims or other Encumbrances against the Buyer, its affiliates, successors, assigns, or property, or the Purchased Assets, including, without limitation, taking any of the following actions with respect to any claims or other Encumbrances: (a) commencing or continuing in any manner any action, whether at law or in equity, in any judicial, administrative, arbitral, or any other proceeding, against the Purchased Assets, Buyer, and/or Buyer's properties, affiliates, successors, and assigns; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Purchased Assets, Buyer, and/or Buyer's properties, affiliates, successors, and assigns; (c) creating, perfecting, or enforcing any claim or other Encumbrance against the Purchased Assets, Buyer, its affiliates, any of their respective successors, assigns, and properties; (d) asserting a claim or other Encumbrance

as a setoff (except for setoffs exercised prior to the Petition Date), or right of subrogation, of any kind against any obligation due against Purchased Assets, Buyer, its affiliates, any of their respective successors, assigns, and properties; or (e) commencing or continuing any action in any manner or place that does not comply, or is inconsistent, with the provisions of this Order, the Purchase Agreement, or the agreements or actions contemplated or taken in respect thereof, including the Debtors' ability to transfer the Purchased Assets to the Buyer in accordance with the terms of this Order and the Purchase Agreement.  No such Person shall assert or pursue any such claim or other Encumbrance against the Buyer or its affiliates, successors or assigns.  **For the avoidance of doubt, nothing in this Order shall be deemed to release any direct claims (if any) of Back Bay Solar, LLC against Buyer and its affiliates (excluding the Purchased Companies).**

6.      The sale of the Purchased Assets to the Buyer under the Purchase Agreement constitutes a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and laws of all applicable jurisdictions, including, without limitation, the laws of each jurisdiction in which the Purchased Assets are located, and the sale of the Purchased Assets to the Buyer may not be avoided under any statutory or common law fraudulent conveyance and fraudulent transfer theories whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

**B.      Transfer of the Purchased Assets Free and Clear**

**7.      For the avoidance of doubt and notwithstanding anything to the contrary in this Sale Order, the Purchase Agreement, or any exhibit or attachment to the Sale Order or Purchase Agreement, (i) only Purchased Assets sold by a Debtor are sold free and clear**

**of Encumbrances, (ii) assets within a Purchased Company (or any subsidiary thereof) are not sold free and clear of any Encumbrances and any Encumbrances within such Purchased Company (or any subsidiary thereof), other than Brookfield Excluded Claims, shall continue in full force and effect, and (iii) notwithstanding the foregoing, the Brookfield Excluded Claims are Purchased Assets that are purchased and/or released in accordance with this Sale Order and Purchase Agreement.**

**8.** 7. Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Purchased Assets shall be sold free and clear of all Encumbrances, with all such Encumbrances to attach to the proceeds of the Sale Transaction to be received by the Debtors with the same validity, force, priority and effect which they now have as against the Purchased Assets, subject to any claims and defenses the Debtors may possess with respect thereto; *provided* that statutory and ad valorem tax liens of all Texas taxing jurisdictions within Bandera County, Tax Appraisal District of Bell County, Denton County, and Guadalupe County that encumber any Assets owned by a Purchased Company or Additional Purchased Entity (other than the Purchased Equity Interests and Brookfield Excluded Claims) shall be unaffected by the Sale Transaction.

**9.** 8. On the Closing Date, all of the Debtors' right, title and interest in and to, and possession of, the Purchased Assets shall be immediately vested in the Buyer pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code free and clear of any and all Encumbrances.  Such transfer shall constitute a legal, valid, binding and effective transfer of, and shall vest the Buyer with, all of the Debtors' right, title and interest in and to, and possession of the Purchased Assets.  All persons or entities, presently or on or after the Closing Date, in possession of some or all of the Purchased Assets are authorized to surrender possession of the

Purchased Assets to the Buyer on the Closing Date or at such time thereafter as the Buyer may request.

**10.** ~~9.~~ This Order is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments; and each of the foregoing persons and entities is hereby authorized to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the Sale Transaction.

**11.** ~~10.~~ Except as otherwise expressly provided in the Purchase Agreement or this Order, all persons and entities (and their respective successors and assigns), including, but not limited to, any and all debt security holders, equity security holders, affiliates, foreign, federal, state and local governmental, tax and regulatory authorities, lenders, customers, vendors, employees, former employees, trade creditors, litigation claimants and other creditors holding claims or other Encumbrances against the Debtors or the Purchased Assets arising under or out of, in connection with, or in any way relating to, the Debtors, the Debtors' predecessors or affiliates, the Purchased Assets, the ownership, sale or operation of the Purchased Assets prior to Closing Date or the transfer of the Purchased Assets to the Buyer, are hereby forever barred and estopped from asserting or prosecuting any cause of action or any process or other act or seeking to collect, offset (except for offsets exercised prior to the Petition Date), or recover on account of any claims or other Encumbrances against the Buyer, its successors or assigns, their property or

the Purchased Assets. Following the Closing Date, no holder of any Claim, lien, or Interest in or against the Sellers or the Purchased Assets (excluding the Assumed Liabilities and Permitted Encumbrances) shall interfere with the Buyer's title to or use and enjoyment of the Purchased Assets based on or related to any such Claim, lien or Interest or based on any action or omission of any Debtor, including any action or omission of any Debtor in these Chapter 11 Cases or any successor cases.  All persons are hereby enjoined from taking action that would interfere with or adversely affect the ability of the Sellers to transfer the Purchased Assets in accordance with the terms of the Purchase Agreement and this Order.

**12.**  ~~11.~~ The Debtors are authorized to execute such documents as may be necessary to release any Encumbrances of any kind against the Purchased Assets as such Encumbrances may have been recorded or may otherwise exist. If any person or entity that has filed financing statements, mechanic's liens, *lis pendens* or other documents or agreements evidencing Encumbrances against or in the Purchased Assets shall not have delivered to the Debtors prior to the Closing Date of the Sale Transaction, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Encumbrances that such person or entity has with respect to the Purchased Assets, (a) the Debtors are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Purchased Assets; (b) the Buyer is hereby authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all such Encumbrances against the Buyer and the applicable Purchased Assets; (c) the Debtors' creditors and the holders of any Encumbrances are authorized to execute such documents and take all other actions as may be necessary to terminate, discharge or release their

Encumbrances in the Purchased Assets; and (d) the Buyer may seek in this Court or any other court to compel appropriate parties to execute termination statements, instruments of satisfaction and releases of all such Encumbrances with respect to the Purchased Assets.  This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department or office, and such agencies, departments and offices are authorized to accept this Order for filing or recording. Notwithstanding the foregoing, **but subject to paragraph 33 of this Order,** the provisions of this Order authorizing the sale and assignment of the Purchased Assets free and clear of Encumbrances shall be self-executing, and neither the Debtors nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents or other instruments in order to effectuate, consummate and implement the provisions of this Order.

**13.**    ~~12.~~ To the maximum extent permitted under applicable law, the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the Debtors with respect to the Purchased Assets, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, authorized to be transferred to the Buyer with respect to the Purchased Assets as of the Closing Date.  To the extent the Buyer cannot operate under any such license, permit, registration and governmental authorization or approval in accordance with the previous sentence, then to the maximum extent permitted under applicable law, such licenses, permits, registrations and governmental authorizations and approvals shall be in effect while the Buyer, with assistance from the Debtors, works promptly and diligently to apply for and secure all necessary government approvals for new issuance of such licenses, permits, registrations and governmental authorizations and approvals to the Buyer.

**14.**   ~~13.~~ No Governmental Unit (as defined in section 101(27) of the Bankruptcy Code) or any representative thereof may deny, revoke, suspend or refuse to renew any permit, license or similar grant relating to the operation of the Purchased Assets on account of the filing or pendency of these Chapter 11 Cases or the consummation of the Sale Transaction to the extent that any such action by a Governmental Unit or any representative thereof would violate section 525 of the Bankruptcy Code.

**15.**   ~~14.~~ The acquisition or release, at the election of the Buyer, of the Brookfield Excluded Claims in connection with and as an integral component of the Sale Transaction authorized hereby is hereby approved with all such Brookfield Excluded Claims being free and clear of all claims and interests to the same extent provided for the Purchased Assets under this Order.  The Brookfield Excluded Claims shall not include the Retained Avoidance Actions.

### C.   No Successor Liability

**16.**   ~~15.~~ Upon the Closing Date, except as provided in the Purchase Agreement, the entry of this Order and the approval of the terms of the Purchase Agreement shall mean that the Buyer (and any of its affiliates, successors, or assigns), as a result of any action taken in connection with the Purchase Agreement, the consummation of the transactions contemplated thereby, including, without limitation, the Sale Transaction, or the transfer or operation of the Purchased Assets, shall not be deemed to: (a) be a legal successor or successor employer to any Debtor (including with respect to any health or benefit plans), or otherwise be deemed a successor to any Debtor, and shall instead be, and be deemed to be, a new employer with respect to all federal or state unemployment laws, including any unemployment compensation or tax laws, or any other similar federal or state laws; (b) have, *de facto*, or otherwise, merged or consolidated with or into any Debtor; or (c) be an alter ego or a mere continuation or substantial continuation of any Debtor

or the enterprise of any Debtor, including, in the case of each of (a)-(c), without limitation, (i) within the meaning of any foreign, federal, state or local revenue law, pension law, the Employee Retirement Income Security Act, the Consolidated Omnibus Budget Reconciliation Act, the WARN Act (29 U.S.C. §§ 2101 et seq.) ("**WARN**"), to the greatest degree allowed by applicable law, the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (as amended) ("**CERCLA**"), the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964 (as amended), the Age Discrimination and Employment Act of 1967 (as amended), the Federal Rehabilitation Act of 1973 (as amended), the National Labor Relations Act, 29 U.S.C. § 151, et seq. or (ii) in respect of (1) to the greatest degree allowed by applicable law, any environmental liabilities, debts, claims or obligations arising from conditions first occurring or first existing on or prior to the Closing Date (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis, including, without limitation, under CERCLA, (2) any liabilities, penalties, costs, debts or obligations of or required to be paid by the Debtors for any taxes of any kind for any period, labor, employment, or other law, rule or regulation (including, without limitation, filing requirements under any such laws, rules or regulations), or (3) any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine.

17.    16. Without limiting the generality of the foregoing, and except as otherwise provided in the Purchase Agreement and this Order, neither the Buyer nor any of its affiliates shall have any responsibility for any (a) liability or other obligation of the Debtors related to the sale and transfer of the Purchased Assets to the Buyer or with respect to the Excluded Liabilities, other than the Assumed Liabilities, or (b) claims against the Debtors or any of their predecessors or affiliates.  By virtue of the Buyer's purchase of the Purchased Assets, neither the Buyer nor

any of its affiliates shall have any liability whatsoever with respect to the Debtors' (or their predecessors' or affiliates') respective businesses or operations or any of the Debtors' (or its predecessors' or affiliates') obligations based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, to the greatest degree allowed by applicable law environmental (including, but not limited to, CERCLA), successor or transferee liability, de facto merger or substantial continuity, labor and employment (including, but not limited to, WARN) or products liability law, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including any liabilities or non-monetary obligations on account of the Debtors' employment agreements or health or benefit plans, any settlement or injunction or any liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Purchased Assets prior to the Closing Date (collectively, with the potential claims set forth in paragraph ~~15~~16, "***Successor Liability***").  The Buyer would not have acquired the Purchased Assets but for the foregoing protections against Successor or Transferee Liability.

D.    **Assumption and Assignment of Designated Contracts**

**18.**    ~~17.~~Notwithstanding any provision of any contract governing the Purchased Assets, including any Designated Contract to be assumed and assigned to the Buyer as of the Closing, pursuant to section 365(f) of the Bankruptcy Code or applicable non-bankruptcy law that prohibits, restricts, or conditions the assignment of the Purchased Assets, including any Designated Contracts, at the Closing, the Debtors shall, in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code, (i) assign the Purchased Assets to the Buyer and (ii) assume and assign the Designated Contracts to the Buyer as of the Closing, in each case, which

assignments shall take place on and be effective as of the Closing or such other date after the Closing Date, subject to the terms of the Purchase Agreement, this Order, the Bidding Procedures Order, or as otherwise provided by a separate order of this Court.**; *provided, however*, that the foregoing is subject to paragraph 33 of this Order.   Notwithstanding anything to the contrary herein or in the Purchase Agreement, the Final DIP Order shall apply to and govern with respect to the payment of Cure Costs and nothing herein or in the Purchase Agreement is, or is intended to, modify the terms in of the Final DIP Order.**

**19.**    ~~18.~~ To the fullest extent permitted by the Bankruptcy Code, pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, the counterparty to Designated Contract is forever barred from raising or asserting against Buyer any assignment fee, rent acceleration, rent increase on account of assignment, default, breach, claim, pecuniary loss, or condition to assignment, arising under or related to a Designated Contract, existing as of the date that such Designated Contract is assumed, assigned and sold or arising by reason of the Closing. Notwithstanding any term of any Designated Contract to the contrary, any extension or renewal options or other rights contained in such Designated Contract that purport to be personal only to, or exercisable only by, the Debtors, a named entity, or an entity operating under a specific trade name, may, in each case, be freely exercised to their full extent by the Buyer subject to the other applicable terms of the Designated Contract.

**E.    Good Faith; Arm's Length Sale**

**20.**    ~~19.~~ The Purchase Agreement was negotiated and executed by the Sellers and the Buyer, and the transactions contemplated thereby, including, without limitation, the Sale Transaction, are and have been undertaken, by the Debtors, the Buyer and their respective representatives at arm's length, without collusion and in "good faith," as such term is defined in

section 363(m) of the Bankruptcy Code. Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction shall not affect the validity of the Sale Transaction or any term of the Purchase Agreement (including the assumption and assignment by the Debtors of any Designated Contracts), and shall not permit the unwinding of the Sale Transaction. The Buyer is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections under section 363(m) of the Bankruptcy Code.

21. ~~20.~~ Neither the Debtors nor the Buyer has engaged in any conduct that would cause or permit the Purchase Agreement or the transactions contemplated thereby, including, without limitation, the Sale Transaction, to be avoided, or for costs, or damages or costs, to be imposed, under section 363(n) of the Bankruptcy Code. The consideration provided by the Buyer for the Purchased Assets under the Purchase Agreement is fair and reasonable, and the Sale Transaction may not be avoided under section 363(n) of the Bankruptcy Code.

**F.      Credit Bid**

22. ~~21.~~ Pursuant to the Bidding Procedures and applicable law, including sections 363(b) and 363(k) of the Bankruptcy Code, and in accordance with the Final DIP Order,[44] the Buyer is validly authorized and directed to credit bid the Credit Bid Amount.  The credit bid is valid and proper consideration pursuant to sections 363(b) and 363(k) of the Bankruptcy Code, the Bidding Procedures Order, the Bidding Procedures, and the Final DIP Order.  There is no cause to limit the amount of the credit bid pursuant to section 363(k) of the Bankruptcy Code.

23. ~~22.~~ Nothing herein shall prevent the Credit Bid Amount from being adjusted by the Sellers and Buyer in a mutually agreed manner for purposes of the Purchase Price; provided

---

[44] Capitalized terms used in this Credit Bid section but not otherwise defined shall have their respective meanings ascribed to such terms in the Final DIP Order.

that, regardless of any such adjustments, upon the Closing of the Sale Transaction, (a) the full amount of the DIP Obligations outstanding as of the Closing and (b) any Encumbrances or Claims granted by the Sellers to the DIP Lenders as adequate protection for any diminution in value of the interests of the DIP Lenders in their collateral resulting from the use of cash collateral or otherwise shall be deemed fully and finally satisfied.

### G.    UCC Settlement

**24.**    ~~23.~~ On the later of (a) the Closing, (b) the Effective Date of the Plan, and (c) if no Plan is confirmed in these Chapter 11 Cases, such other date as the Debtors, Brookfield and the UCC may agree, each in their respective reasonable discretion, Brookfield shall fund $3.75 million in cash consideration (the "***Cash Consideration***") (i) to a trust (the "***GUC Trust***"), or as otherwise directed by the Debtors in accordance with the Plan (with the consent of the UCC) or (ii) if no Plan is confirmed, to  such other distribution vehicle as may be directed by the Debtors, with the consent of the UCC and consistent with the terms of the Brookfield Settlement Term Sheet (as defined in the Final DIP Order) approved by the Final DIP Order.   The Cash Consideration may be paid by Brookfield or any Purchased Company; *provided that* such Cash Consideration shall not be paid with funds that are assets of the Debtors' estates after the Closing and the dismissal of the Chapter 11 Cases of any Debtor acquired in the Sale Transaction.   The Debtors and the UCC agree that the Plan will not necessarily include any GUC Trust, and the final structure under the Plan is to be determined and subject to agreement between the Debtors and UCC.   Subject to the foregoing, one or more individuals shall serve as post-confirmation fiduciaries to administer and/or oversee distributions to general unsecured creditors. The UCC shall have the exclusive right to select the individual(s) who will serve as such fiduciary.

**25.** ~~24.~~ Upon, and effective as of, the Closing in accordance with the Purchase Agreement and the acquisition of the Purchased Assets by the Buyer, the Brookfield DIP Facility shall be deemed mutually terminated and the Brookfield DIP Secured Parties and Brookfield Prepetition Secured Parties (as each is defined in the Final DIP Order) shall permanently waive any right to assert any claim against the Debtors, their estates or the GUC Trust on account of the Brookfield DIP Obligations and the Brookfield Prepetition Secured Obligations (as each is defined in the Final DIP Order), whether such claims are entitled to administrative priority, unsecured or otherwise, and the Debtors acknowledge and agree that (x) they shall not be permitted to draw on the Brookfield DIP Facility (as defined in the Final DIP Order) following the Closing and (y) the Brookfield DIP Secured Parties shall not be required to fund any amounts before or after the Closing in connection with any winddown of the Debtors' estates (other than the Cash Consideration); *provided*, that the Brookfield DIP Facility shall not be terminated and no such Brookfield DIP Obligations shall be waived if (1) the claim is on account of a purchase price adjustment for any Purchased Assets that are not sold to the Buyer, including a Purchase Price Adjustment (as defined in the Purchase Agreement) made in accordance with Section 2.07 of the Purchase Agreement as a result of a Remedies Event occurring, at any time on or prior to the Closing, in respect of a Project or (2) the Debtors or the UCC breach the Brookfield Settlement Term Sheet (as defined in the Final DIP Order).

**26.** ~~25.~~ Subject to diligence and agreement among the Debtors, the UCC, and Brookfield on the amount and scope of critical vendor claims to be paid, Brookfield shall not object to the Debtors' determinations concerning the payment of critical vendor claims as authorized and directed by the *Final Order (A) Authorizing the Debtors to Pay Certain*

*Prepetition Claims of Critical Project Vendors; (B) Confirming Administrative Expense Priority; and (C) Granting Related Relief* [Docket No. 635].

27. ~~26.~~ For the avoidance of doubt, and as provided in the Purchase Agreement, (a) the Purchased Assets expressly exclude any non-ordinary-course trade Avoidance Actions[55] and any proceeds thereof solely to the extent such Avoidance Actions are against persons or entities other than the Purchased Companies, the Additional Purchased Entities, and their respective stakeholders (including vendors and service providers) (the "***Retained Avoidance Actions***"), and such Retained Avoidance Actions and any proceeds thereof shall remain with the Sellers' estates; and (b) the Buyer shall acquire all commercial tort claims, the Brookfield Pledged Intercompany Claims (as defined in the Final DIP Order), and Avoidance Actions against the Purchased Companies, the Additional Purchased Entities, and their respective stakeholders (including vendors and service providers) (the "***Acquired Avoidance Actions***"), in each case as provided in the Purchased Agreement and Final DIP Order; *provided*, however, that the Buyer shall not use any Acquired Avoidance Actions (including any such Avoidance Actions against ordinary-course trade vendors) in an offensive manner.  Nothing in this Order shall impair or diminish any rights of the Debtors' estates with respect to any Avoidance Actions or proceeds thereof retained by the estates.

28. ~~27.~~ Effective as of the Closing, each Seller, for itself and on behalf of its past, present and future controlled Affiliates and its and such Affiliates' respective current or former directors, officers, members, partners, managers, employees, agents, lenders, investment bankers, attorneys, accountants, advisors and other representatives (collectively, "***Representatives***"), and each of its and their respective successors, assigns, heirs and executors

---

[55] "Avoidance Actions" means, collectively, any and all claims or causes of action arising under or pursuant to chapter 5 of the Bankruptcy Code or any other similar provision of applicable law.

(each, a "**Seller Releasor**"), hereby irrevocably, knowingly, and voluntarily releases, discharges, and forever waives and relinquishes all Claims, demands, Liabilities, losses, debts, costs, fees, expenses, penalties, Actions, covenants, suits, judgments, damages, defenses, affirmative defenses, setoffs, counterclaims, actions, obligations, and causes of action of whatever kind, character or nature, whether known or unknown, suspected or unsuspected, in contract, contingent or absolute, matured or unmatured, liquidated or unliquidated, direct or indirect, at Law or in equity, derivative or otherwise, which any Seller Releasor has, may have, or may assert now or in the future against (i) Buyer or any Buyer Designee, (ii) any Affiliates of Buyer or any Buyer Designee, (iii) any Representatives of Buyer or any Buyer Designee or their respective Affiliates, (iv) any current (as of the Closing Date) or former direct or indirect equity holder in Buyer or any Buyer Designee or any of their respective Affiliates, (v) any Purchased Entity or its Subsidiaries, (vi) current or future direct or indirect equityholder of Buyer and its Affiliates and Representatives, (vii) any lenders of Buyer, any Buyer Designee or their respective Affiliates and (viii) with respect to (i)-(vii) each of their Representatives (collectively, the "**Buyer Released Parties**"), in each case solely in its capacity as such, arising out of, based upon, or resulting from any Contract, transaction, event, circumstance, action, failure to act, occurrence, or omission of any sort or type, whether known or unknown, and which occurred, existed, was taken, permitted or begun prior to the Closing or otherwise.  In addition, notwithstanding the foregoing, nothing in this paragraph shall be deemed to release, waive or otherwise diminish in any respect any (i) rights or remedies of any Seller Releasor under this Agreement (including with respect to ITC recapture and obligations under the Tax Equity Documents), (ii) claims for willful misconduct or fraud, (iii) rights and remedies under the

Surviving Post-Closing Covenants, or (iv) obligations of any party to a Tax Equity Document or under any Tax Equity Document.

**29.** ~~28.~~ Effective as of the Closing, Buyer, for itself and on behalf of its past, present and future controlled Affiliates (including the Purchased Entities) and its and such Affiliates' respective Representatives, and each of its and their respective successors, assigns, heirs, and executors (each, a "***Buyer Releasor***" and, together with the Seller Releasors, the "***Releasors***"), hereby irrevocably, knowingly, and voluntarily releases, discharges, and forever waives and relinquishes all Claims, demands, Liabilities, losses, debts, costs, fees, expenses, penalties, Actions, covenants, suits, judgments, damages, defenses, affirmative defenses, setoffs, counterclaims, actions, obligations, and causes of action of whatever kind, character or nature, whether known or unknown, suspected or unsuspected, in contract, contingent or absolute, matured or unmatured, liquidated or unliquidated, direct or indirect, at Law or in equity, derivative or otherwise, which any Buyer Releasor has, may have, or may assert now or in the future against (i) each Seller, (ii) any Affiliates of Sellers and (iii) any Representatives of Sellers or their respective Affiliates (collectively, the "***Seller Released Parties***" and, together with the Buyer Released Parties, the "***Released Parties***"), in each case solely in its capacity as such, arising out of, based upon, or resulting from any Contract, transaction, event, circumstance, action, failure to act, occurrence, or omission of any sort or type, whether known or unknown, and which occurred, existed, was taken, permitted or begun prior to the Closing or otherwise.  In addition, notwithstanding the foregoing, nothing in this paragraph shall be deemed to release, waive or otherwise diminish in any respect any (i) rights or remedies of any Buyer Releasor under this Agreement (including with respect to ITC recapture and obligations under the Tax Equity Documents), the TSA, if applicable, or any ancillary agreements, (ii) claims for willful

misconduct or fraud, (iii) rights and remedies under the Surviving Post-Closing Covenants, or (iv) obligations of any party to a Tax Equity Document or under any Tax Equity Document.

**30.** ~~29.~~ Solely in the event that Brookfield modifies or amends the acquisition structure of a Specified Development Project (as defined in the Purchase Agreement) in accordance with Section 7.17 of the Purchase Agreement, and as a result of such Restructuring the aggregate amount of non-priority general unsecured claims asserted against the Debtors' estates is increased (as compared to the amount of such claims that would have existed had the acquisition structure for such Specified Development Project taken the form of an equity sale) (the "***Baseline GUC Pool***"), then Brookfield shall increase the Cash Consideration (the "***True-Up Amount***") in an amount sufficient such that the Restructuring results in no net dilution to expected recoveries of general unsecured creditors on account of allowed general unsecured claims.  The True-Up Amount, if any, shall be calculated by the Debtors, the UCC (or, after the Effective Date, the fiduciary appointed to administer / oversee distributions to holders of allowed general unsecured claims) and Brookfield in good faith, taking into account the Baseline GUC Pool, the actual allowed general unsecured claims, any disallowances or reductions by order of the Court, and any payments, setoffs, or recoveries from non-Debtor sources, and shall be implemented and funded pursuant to, and on the Effective Date of, the Plan (or on such other date as the Debtors, the UCC, and Brookfield may agree).

**31.     The Debtors shall file a notice with the Court stating their intent to modify or amend the acquisition structure of any Specified Development Project pursuant to Section 7.17 of the Purchase Agreement (the "*Modification Notice*") upon any such determination by Buyer, and in all events no later than five business days prior to consummating any such modification or amendment.  Such notice, which may be filed in separate documents,**

**shall include a list of the contracts and leases that Seller and/or its Affiliates may assume and/or assign to Buyer or any Purchased Entity in connection with such modification or amendment, and the related proposed cure amounts.  Parties in interest (including but not limited to the UCC, LPL Solar LLC, Hypower LLC and Nextpower LLC) shall have five business days to object to any such modification or amendment and any and all objections related to the Modification Notice, and all aspects of the acquisition noticed thereby, are expressly preserved.**

32.    ~~30.~~ The Buyer shall not have consent rights over the Plan after the Closing as long as the Plan is consistent with the Brookfield Term Sheet; *provided* that the Plan shall provide the Buyer and its related parties, including all members of the boards of managers of the Brookfield Silo Entities in their capacity as such, with a full release in all capacities in relation to the Debtors, their affiliates, and their estates, subject to exclusions for claims based on fraud or willful misconduct.

### H.    Special Provision Related to the United States of America

33.    ~~31.~~ Notwithstanding anything in this ~~Sale~~ Order, the ~~Asset~~ Purchase Agreement or any related sale document (collectively, the "Documents"), nothing in the Documents shall: (1) affect the United States' rights and defenses of setoff and recoupment; (2) release, nullify, preclude or enjoin the enforcement of any police or regulatory liability to a governmental unit (as defined in section 101(27) of the Bankruptcy Code) ("*Governmental Unit*") that any entity would be subject to as the post-sale owner or operator of property after the date of entry of this ~~Sale~~ Order; (3) confer exclusive jurisdiction to the Bankruptcy Court  except to the extent set forth in 28 U.S.C. § 1334 (as limited by any other provisions of the United States Code); (4) divest any tribunal of any jurisdiction it may have under police or regulatory law to interpret

the Documents or to adjudicate any defense asserted under the Documents, or limit any Governmental Unit in the exercise of its police or regulatory powers in accordance with 11 U.S.C. § 362(b)(4) or 28 U.S.C. § 959; provided that the Bankruptcy Court shall retain jurisdiction regarding the interpretation or enforcement of the Documents or any other order entered by the Bankruptcy Court in the Chapter 11 Cases; (5) authorize the assumption, sale, assignment or other transfer of any federal (i) grants, (ii) grant funds, (iii) contracts, including, without limitation, any contract between a Debtor and a counterparty that is regulated by the Federal Energy Regulatory Commission ("*FERC*"), (iv) property, including but not limited to, intellectual property, data and patents, (v) leases, (vi) rights-of-way, (vii) agreements, (viii) applications, (ix) licenses, (x) permits, (xi) registrations, (xii) authorizations, or (xiii) approvals (collectively, "Federal Interests"), or the discontinuation of any obligations thereunder, without compliance with all terms of the Federal Interests and with all applicable non-bankruptcy law; (6) be interpreted to set cure amounts with respect to any Federal Interests or to require the United States to novate, approve or otherwise consent to the assumption, sale, assignment or transfer of any Federal Interests; (7) authorize any transaction pursuant to section 203 of the Federal Power Act, 16 U.S.C. §§ 791 et seq., and any FERC regulations or orders; (8) waive, alter or otherwise limit the United States' property rights; or (9) expand the scope of 11 U.S.C. § 525.  In the event of an inconsistency or conflict between any provision of the ~~Asset~~ Purchase Agreement and any provision of this ~~Sale~~ Order, as to the United States, the provisions of this ~~Sale~~ Order and federal law shall govern.

## I.    All-Surety Provisions

**34.**   ~~32.~~ Sureties. Certain commercial surety companies (collectively, the "***Sureties***" and each, individually, a "***Surety***")[66] issued certain surety bonds (collectively, the "***Existing***

[66] The "Sureties" are: (i) RLI Insurance Company, (ii) Philadelphia Indemnity Insurance Company, (iii) Atlantic Specialty Insurance Company, (iv) Siriuspoint America Insurance Company, (v) Continental

*Surety Bonds*" and each individually, an "*Existing Surety Bond*") and/or issued surety backed letters of credit (collectively the "*Existing SBLCs*" and each individually, an "*Existing SBLC*") on behalf of the Debtors and certain non-Debtor affiliates (and, together with the Debtors, the "*Pine Gate Entities*").  Certain of the Pine Gate Entities have entered into, or are potentially otherwise liable under, certain indemnity agreements, amendments thereto, riders and/or related agreements with the Sureties (collectively, the "*Existing Indemnity Agreements*" and, each, an "*Existing Indemnity Agreement*").

35. ~~33.~~ Release of Intercompany Claims.  All rights, claims and defenses of a Surety with respect to the release of any intercompany claim are expressly preserved, and in no circumstance shall any Surety be deemed to have consented or waived any rights, claims or defenses with respect to any actions taken or not taken in accordance with any asset purchase agreement, related documents, or this ~~Sale~~ Order, all of which are expressly preserved.

**J.      Surety Provisions Where Only Assets of a Pine Gate Entity Are Sold**

36. ~~34.~~ No Transfers or Assignments.  Nothing in this ~~Sale~~ Order shall be deemed to be a sale, transfer, assumption or assumption and assignment of any Existing Surety Bond, Existing SBLC or any Existing Indemnity Agreement, or any documents or rights related to any Existing Surety Bond, Existing SBLC or any Existing Indemnity Agreement.

37. ~~35.~~ Debtors' Bonded Obligations. Nothing in this ~~Sale~~ Order shall alter, limit, modify, release, discharge, preclude or enjoin any obligation of the Pine Gate Entities or any

---

(iii) Atlantic Specialty Insurance Company, (iv) Siriuspoint America Insurance Company, (v) Continental Insurance Company, (vi) Argonaut Insurance Company, (vii) Swiss RE Corporate Solutions America Insurance Company, (viii) Arch Insurance Company, (ix) Markel Insurance Company/SureTec Insurance Company, (x) Axis Insurance Company, (xi) The Hanover Insurance Company, (xii) United States Fire Insurance Company, (xiii) XL Specialty Insurance Company; and (xiv) Ascot Casualty and Surety Company.

other third party to the Sureties pursuant to the Existing Surety Bonds, Existing Indemnity Agreements, and obligations under the applicable non-bankruptcy law, including the common law of suretyship (as may be applicable under the circumstances) and any statutory law, and such obligations to Sureties shall not be released, discharged, precluded or enjoined by this ~~Sale~~ Order.

38.    ~~36.~~ Existing Collateral and Related Agreements. All collateral upon which any Surety had a perfected security interest as of the Petition Date, and all control agreements, trust agreements, deposit accounts, letters of credit and/or proceeds therefrom issued to a Surety as security for any Debtor's obligations under the Existing Surety Bonds (collectively, the "**Existing Surety Collateral**") shall remain in place to secure all of the Pine Gate Entities' payment and performance obligations under the Existing Surety Bonds or obligations arising under the Existing Indemnity Agreements. Nothing in this paragraph is intended to affect, and shall not affect, the obligation of any Surety, if any, under the Existing Surety Bonds.  Nothing in this ~~Sale~~ Order shall be deemed to apply to the Sureties' rights  to pursue the Existing Surety Collateral, nor shall these provisions be interpreted to bar, impair, prevent or otherwise limit the Sureties from exercising their valid rights under or with respect to any of the Existing Surety Bonds, the Existing SBLCs, the Existing Indemnity Agreements, or any related indemnity agreements, deposit agreements, control agreements, trust agreements, deposit accounts, letters of credit or applicable non-bankruptcy law, including but not limited to the common law of suretyship (as may be applicable under the circumstances) and any statutory law.

39.    ~~37.~~ Substitution of Principal. Nothing herein shall be deemed to provide a Surety's consent to the involuntary substitution of any principal under any Existing Surety Bond.

**40.** ~~38.~~ Debtors' Affiliates. Nothing contained herein relieves any non-Debtor affiliate of any obligations under the Existing Indemnity Agreements or with regard to any Existing SBLC.

**41.** ~~39.~~ Surety Rights as to Third Parties Unaffected; No Waiver. Nothing in this ~~Sale~~ Order shall be interpreted to alter, diminish or enlarge the rights or obligations of the Sureties or Issuing SBLC Banks (defined below) in regard to state and federal agencies, third parties or otherwise under any Existing Surety Bonds, any Existing Indemnity Agreements or applicable law nor shall any of the foregoing be deemed to enjoin any Surety or Issuing SBLC Bank from asserting any rights, claims or defenses, in regard to or against any state and federal agencies, third parties including, without limitation, any of the Sureties' indemnitors, insurers, or otherwise under any Existing Surety Bonds, Existing Indemnity Agreements, Existing Surety Collateral, Existing SBLCs or applicable non-bankruptcy law, including but not limited to the common law of suretyship (as may be applicable under the circumstances) and statutory law.

**K.    Surety Provisions Where Equity of a Debtor is Sold**

**42.** ~~40.~~ Equity Sale Provisions. The provisions of this paragraph shall apply to any Surety, Existing Surety Bond, Existing SBLC, Existing Surety, and Existing Surety Collateral where the equity of any Pine Gate Entity is transferred to any Buyer or Buyer's designee or assigns under this ~~Sale~~ Order. Notwithstanding any other provisions of this ~~Sale~~ Order or any other order of this Court, on the Closing Date, all rights and obligations related to (a) Existing Surety Bonds issued by a Surety and maintained in the ordinary course of business; (b) any Surety payment and Existing Indemnity Agreement(s), if any, setting forth the Surety's rights against the Pine Gate Entities, and the Pine Gate Entities' obligations, if any, to pay, indemnify and hold the Surety harmless from any loss, cost, or expense that the Surety may incur, in each case, on account of the

issuance of any Existing Surety Bonds on behalf of the Debtors; (c) any Existing Surety Collateral; (d) any Surety collateral agreements governing Existing Surety Collateral, if any, in connection with the Debtors' Existing Surety Bonds; and/or (e) any ordinary course premium payments to a Surety for the Debtors' Existing Surety Bonds and/or Existing SBLCs (collectively, the "***Surety Bond Program***" and the Debtors' obligations arising therefrom, the "***Surety Bond Obligations***") shall be reaffirmed and ratified by the applicable Pine Gate Entities, continue in full force and effect, and not be discharged, enjoined, impaired or released by ~~the Sale~~**this** Order in any way. For the avoidance of doubt, nothing in this ~~Sale~~ Order, including, without limitation, any release, injunction, exclusions and discharge provision, shall bar, alter, limit, impair, release, modify, enlarge, or enjoin any Surety Bond Obligations.

### L.      Additional All-Surety Provisions for Non-Debtor Affiliates

**43.**      ~~41.~~ For the avoidance of doubt, any provision of this ~~Sale~~ Order, any applicable ~~Asset~~ Purchase Agreement, or any exhibits or schedules to any ~~Asset~~ Purchase Agreement, including, but not limited to any sale deemed to be "free and clear of any liens, claims or encumbrances" within the meaning of section 363 of the Bankruptcy Code, shall not apply to the assets or equity of any non-Debtor affiliate, including non-Debtor subsidiaries, or to the rights of any Surety under any Existing Surety Bond, Existing Indemnity Agreement, Existing Surety Collateral, Existing SBLC, and applicable non-bankruptcy law, including but not limited to the common law of suretyship (as may be applicable under the circumstances) and any statutory law.

### M.      Banks Issuing Surety Backed Letters of Credit

**44.**      ~~42.~~ Surety Backed Letters of Credit.  Nothing in this ~~Sale~~ Order shall alter, limit, modify, release, discharge, preclude or enjoin any obligation of the Pine Gate Entities to a bank issuing an SLBC ("***Issuing SBLC Bank***") under applicable non-bankruptcy law, and such

obligations to the Issuing SBLC Bank shall not be released, discharged, precluded or enjoined by this ~~Sale~~ Order.  Nothing in the asset purchase agreements, related agreements, or this ~~Sale~~ Order shall be deemed to waive any Surety's right to seek the return of any surplus bond proceeds, surety backed letter of credit proceeds or other surety proceeds.  All parties' rights to challenge any such rights or interests are expressly preserved.

### N.      United States Fire Insurance Company (USFIC)

**45.**      ~~43.~~ USFIC's rights, claims and defenses with respect to Bond Nos. ended 8731 and 8716 are fully preserved, including but not limited to with regard to the timeliness and adequacy of notice, whether Catalina Solar, LLC is in default of the March 8, 2024 Engineering, Procurement and Construction Agreement (the "***Catalina EPC Contract***"), any change orders, amendments or modifications of the Catalina EPC Contract, the engagement of the "Catalina Independent Engineer" and "adjudication" of claims, any project accounting, the treatment of "Identified BRP Claims" and "Specified BRP Claims", the "Catalina Direct Payment Agreement," rights to trust funds if any, "DIP Intercreditor Agreement," intercompany releases, subrogation to any "adjudicated" claims, and payment of any "adjudicated" amounts.

### O.      Related Relief

**46.**      ~~44.~~ In connection with the Sale Transaction and pursuant to the Purchase Agreement, the Buyer and the Debtors may enter into a transition services agreement pursuant to which, effective as of the Closing, the Debtors may provide certain services to the Buyer for a transitional period following the Closing (the "***Transition Services Agreement***").  The Buyer and the Debtors are hereby authorized to execute and deliver the Transition Services Agreement and any additional documentation contemplated by the Purchase Agreement or in furtherance of the Sale, and to perform all such other and further acts as may be required in connection with the

negotiation, execution, and performance of the Purchase Agreement, any ancillary documents or the Transaction Services Agreement, including providing transition services and making any applicable payments without further order of the Court.

47. 45. Each and every federal, state and governmental agency or department, and any other person or entity, is hereby authorized to accept any and all documents and instruments in connection with or necessary to consummate the Sale Transaction contemplated by the Purchase Agreement.

48. 46. No Governmental Unit may revoke or suspend any right, license, copyright, patent, trademark or other permission relating to the use of the Purchased Assets sold, transferred or conveyed to the Buyer on account of the filing or pendency of these Chapter 11 Cases or the consummation of the sale of the Purchased Assets.

49. 47. Except as expressly provided in the Purchase Agreement, nothing in this Order shall be deemed to waive, release, extinguish or estop the Debtors or their estates from asserting, or otherwise impair or diminish, any right (including, without limitation, any right of recoupment), claim, cause of action, defense, offset or counterclaim in respect of any Purchased Assets or liabilities not constituting an Excluded Asset.

50. 48. No bulk sales law or similar law of any state or other jurisdiction shall apply in any way to the transactions with the Debtors that are approved by this Order, including, without limitation, the Purchase Agreement and the Sale Transaction.

51. 49. The automatic stay provisions of section 362 of the Bankruptcy Code are modified to the extent necessary to implement the terms and conditions of the Purchase Agreement and the provisions of this Order.

52.   ~~50.~~ This Order and the Purchase Agreement shall be binding in all respects upon all pre-petition and post-petition creditors of the Debtors, all interest holders of the Debtors, the UCC, any Court-appointed committee, all successors and assigns of the Debtors and their affiliates and subsidiaries, and any trustees, examiners, "responsible persons" or other fiduciaries appointed in these Chapter 11 Cases or upon a conversion of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, including a chapter 7 trustee, and the Purchase Agreement and Sale Transaction shall not be subject to rejection or avoidance under any circumstances by any party.

53.   ~~51.~~ This Court retains jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Purchase Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to the Buyer, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale Transaction.

54.   ~~52.~~ The Purchase Agreement, the Transition Services Agreement, and any related agreements, documents, or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of this Court; *provided*, that any such modification, amendment, or supplement that has a material adverse effect on the Debtors' estates shall require the consent of all persons or entities affected thereby or be approved by this Court upon further notice and hearing.

55.   ~~53.~~ This Order is intended to constitute a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding any provision in the Bankruptcy Rules to the contrary, including but not limited to Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds

there is no reason for delay in the implementation of this Order and, accordingly: (a) the terms of this Order shall be immediately effective and enforceable upon its entry and the 14-day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply; (b) the Debtors are not subject to any stay of this Order or in the implementation, enforcement or realization of the relief granted in this Order; and (c) the Debtors and the Buyer may, each in its discretion and without further delay, take any action and perform any act authorized under this Order.

**56.** ~~54.~~ In the event of any inconsistency between this Order and the Purchase Agreement, and solely to the extent of such inconsistency, the terms of this Order shall control.

**57.** ~~55.~~ The provisions of this Order are non-severable and mutually dependent.

**58.** ~~56.~~ The provisions of this Order and any actions taken pursuant hereto shall survive and remain effective notwithstanding any order that may be entered (a) confirming any Plan in these Chapter 11 Cases; (b) converting any of these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code; or (c) dismissing any of these Chapter 11 Cases.

**59.** ~~57.~~ All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

**Exhibit ~~1~~1A**

**Purchase Agreement**

**Exhibit 1B**

**First Amendment**

US-DOCS\165778643

| Summary report: Litera Compare for Word 11.10.1.2 Document comparison done on 12/16/2025 9:14:29 AM | |
|---|---|
| **Style name:** L&W with Moves | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://usdocs.lw.com/US-DOCS/165778643/4 | |
| **Modified DMS:** iw://usdocs.lw.com/US-DOCS/165778643/5 | |
| **Changes:** | |
| **Add** | 77 |
| **Delete** | 93 |
| *Move From* | 0 |
| *Move To* | 0 |
| **Table Insert** | 0 |
| **Table Delete** | 0 |
| *Table moves to* | 0 |
| *Table moves from* | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 170 |